Sonal N. Mehta (SBN: 222086)
sonal.mehta@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: (650) 858-6000
Fax: (650) 858-6100

Christopher T. Casamassima (SBN: 211280)
chris.casamassima@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Tel: (213) 443-5300
Fax: (213) 443-5400

*Attorneys for Defendant*
*Facebook, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| CHRISTOPHER CALISE and ANASTASIA GROSCHEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC,<br><br>Defendant. | Case No. 4:21-cv-06186-JSW<br><br>**NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES ON BEHALF OF DEFENDANT FACEBOOK, INC.**<br><br>HEARING DATE: January 28, 2022<br>TIME: 9:00 AM<br>COURTROOM: 5 – 2nd Floor<br>JUDGE: Hon. Jeffrey S. White |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................. 1

II.    PLAINTIFFS' ALLEGATIONS ......................................................................... 2

       A.    Facebook And The Terms of Service ..................................................... 2

       B.    Plaintiffs' Interaction With Facebook And Purchases From Third
             Parties ...................................................................................................... 3

III.   ARGUMENT ....................................................................................................... 4

       A.    Plaintiffs' Claims Are Barred By Section 230 ....................................... 4

             1.    Facebook Is Not Liable For Claims Arising From Third-
                   Party Content .............................................................................. 5

             2.    Plaintiffs Seek To Hold Facebook Liable As A "Publisher
                   Or Speaker" ................................................................................. 6

             3.    Plaintiffs Do Not Allege That Facebook Is A Content
                   Developer .................................................................................... 7

       B.    Plaintiffs Fail To Allege A Viable Claim .............................................. 8

             1.    Plaintiffs' Negligence Claim Fails Under The Economic
                   Loss Rule And Because Plaintiffs Fail To Allege A Breach
                   of Any Duty Owed To Plaintiffs ................................................ 8

             2.    Plaintiffs Do Not Identify An Alleged Breach And The
                   TOS Preclude Liability ............................................................. 10

                   a)    Plaintiffs do not allege a breach of the TOS ............... 10

                   b)    The TOS limit Facebook's liability to Plaintiffs ......... 11

             3.    Plaintiffs' Breach Of The Covenant Claim Fails Because It
                   Is Duplicative Of The Breach Of Contract Claim And Is
                   Precluded By The TOS .............................................................. 12

             4.    Plaintiffs' UCL And Unjust Enrichment Claims Fail
                   Because Plaintiffs Do Not Allege They Have No Adequate
                   Remedy At Law ......................................................................... 12

                   a)    Plaintiffs have not—and cannot—plead inadequate
                         remedies at law ............................................................ 12

                   b)    Plaintiffs lack standing under the UCL ........................ 13

                   c)    Plaintiffs have not—and cannot—plead the right to
                         restitution ..................................................................... 14

             5.    Plaintiffs' purported "unjust enrichment" claim fails as a
                   matter of law ............................................................................ 14

IV.    CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abuelhawa v. Santa Clara Univ.*,
2021 WL 1176689 (N.D. Cal. Mar. 29, 2021)............................................................14

*Baldino's Lock & Key Serv., Inc. v. Google LLC*,
285 F. Supp. 3d 276 (D.D.C. 2018)...........................................................................5

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ...............................................................................6, 8

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ....................................................................12

*Berk v. Coinbase, Inc.*,
840 F. App'x 914 (9th Cir. 2020) ...............................................................................9

*Blumenthal v. Drudge*,
992 F. Supp. 44 (D.D.C. 1998)...................................................................................7

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*,
241 F. Supp. 3d 1084 (C.D. Cal. 2017) .....................................................................9

*Brodie v. Green Spot Foods, LLC*,
503 F. Supp. 3d 1 (S.D.N.Y. 2020) ...........................................................................5

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016) ...................................................................10

*Caraccioli v. Facebook, Inc.*,
700 F. App'x 588 (9th Cir. 2017) ..........................................................................5, 6

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (Cal. 1999)......................................................................................14

*Coffee v. Google, LLC*,
2021 WL 493387 (N.D. Cal. Feb. 10, 2021) .............................................................6

*Corker v. Costco Wholesale Corp.*,
2019 WL 5895430 (W.D. Wa. Nov. 12, 2019)..........................................................5

*Cross v. Facebook, Inc.*,
14 Cal. App. 5th 190 (2017) ....................................................................................10

*Dyroff v. Ultimate Software Grp., Inc.*,
   934 F.3d 1093 (9th Cir. 2019) ...................................................................5, 7, 8

*Ebeid v. Facebook, Inc.*,
   2019 WL 2059662 (N.D. Cal. May 9, 2019) ...............................................5, 6

*Epic Games, Inc. v. Apple Inc.*,
   2021 WL 4128925 (N.D. Cal. Sept. 10, 2021) ................................................15

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) ............................................................... *passim*

*Fyk v. Facebook, Inc.*,
   2019 WL 11288576 (N.D. Cal. June 18, 2019) ............................................5, 6

*Gardiner v. Walmart Inc.*,
   2021 WL 2520103 (N.D. Cal. Mar. 5, 2021)...............................................9, 13

*Goddard v. Google, Inc.*,
   2008 WL 5245490 (N.D. Cal. Dec. 17, 2008)............................................5, 6, 8

*Gonzalez v. Google LLC*,
   2 F.4th 871 (9th Cir. 2021) ...............................................................4, 5, 6, 7

*Hernandez v. Lopez*,
   180 Cal. App. 4th 932 (2009) .....................................................................15

*Jones v. Dirty World Ent. Recordings LLC*,
   755 F.3d 398 (6th Cir. 2014) ........................................................................8

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) ....................................................................5, 6

*King v. Facebook, Inc.*,
   2019 WL 6493968 (N.D. Cal. Dec. 3, 2019) ...............................................10

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (Cal. 2003).......................................................................14

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (Cal. 2011).....................................................................13, 14

*Lewis v. Google LLC*,
   461 F. Supp. 3d 938 (N.D. Cal. 2020) ...........................................................6

*Lewis v. YouTube LLC*,
   244 Cal. App. 4th 118 (2015) ......................................................................11

*Lindner v. Occidental Coll.*,
  2020 WL 7350212 (C.D. Cal. Dec. 11, 2020) ........................................................................14

*In re MacBook Keyboard Litig.*,
  2020 WL 6047253 (N.D. Cal. Oct. 13, 2020).........................................................................13

*Markborough California, Inc. v. Superior Court of Riverside Cnty.*,
  227 Cal. App. 3d 705 (1991) ..................................................................................................11

*Martin Constr., Inc. v. Roscoe Steel & Culvert Co.*,
  542 F. App'x 695 (9th Cir. 2013) ..........................................................................................12

*In re Napster, Inc. Copyright Litig.*,
  354 F. Supp. 2d 1113 (N.D. Cal. 2005) .................................................................................14

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009) ...................................................................................................7

*Nguyen v. Nissan N. Am., Inc.*,
  2017 WL 1330602 (N.D. Cal. Apr. 11, 2017) ........................................................................12

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
  96 F.3d 1151 (9th Cir. 1996) ..................................................................................................15

*Phillips v. Apple Inc.*,
  725 F. App'x 496 (9th Cir. 2018) ..........................................................................................14

*Prescott v. Rady Children's Hosp.-San Diego*,
  265 F. Supp. 3d 1090 (S.D. Cal. 2017)..................................................................................13

*Quelimane Co. v. Stewart Title Guar. Co.*,
  19 Cal. 4th 26 (1998) ...............................................................................................................8

*Resnick v. Hyundai Motor Am., Inc.*,
  2017 WL 1531192 (C.D. Cal. Apr. 13, 2017) ..........................................................................9

*Ripple Labs Inc. v. YouTube LLC*,
  2020 WL 6822891 (N.D. Cal. Nov. 20, 2020) .........................................................................5

*Robie v. Trader Joe's Co.*,
  2021 WL 2548960 (N.D. Cal. June 14, 2021) ........................................................................13

*Robinson v. C.R. Bard, Inc.*,
  2016 WL 3361825 (N.D. Cal. June 17, 2016) ........................................................................14

*S. California Gas Leak Cases v. Superior Court of L.A. Cnty.*,
  7 Cal. 5th 391 (2019) ...............................................................................................................8

*St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*,
    101 Cal. App. 4th 1038 (2002) ........................................................................11

*Saroya v. Univ. of the Pac.*,
    503 F. Supp. 3d 986 (N.D. Cal. 2020) ............................................................15

*Schroeder v. United States*,
    569 F.3d 956 (9th Cir. 2009) ..........................................................................12

*Sharp v. Nationstar Mortg., LLC*,
    701 F. App'x 596 (9th Cir. 2017) ....................................................................12

*Shaterian v. Wells Fargo Bank, N.A.*,
    829 F. Supp. 2d 873 (N.D. Cal. 2011) ............................................................12

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ..................................................................2, 12, 13

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*,
    100 Cal. App. 4th 44 (2002) ............................................................................12

*Third Story Music, Inc. v. Waits*,
    41 Cal. App. 4th 798 (1995) ............................................................................12

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ....................................................................................14

*Vargas v. Facebook, Inc.*,
    2021 WL 3709083 (N.D. Cal. Aug. 20, 2021) ..............................................6, 7

*Worldwide Media, Inc. v. Twitter, Inc.*,
    2018 WL 5304852 (N.D. Cal. Oct. 24, 2018) ..................................................9

*Wright v. Charles Schwab & Co.*,
    2020 WL 6822887 (N.D. Cal. Nov. 20, 2020) ..................................................9

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (1997) ..........................................................................................8

## STATUTES

47 U.S.C. § 230(c)(1) .................................................................................... *passim*

Cal. Bus. & Prof. Code § 17200 ................................................................... *passim*

Federal Rules of Civil Procedure 12(b)(6) ..............................................................1

1

## OTHER AUTHORITIES

2

*What are the Facebook Products?*, FACEBOOK,
   https://www.facebook.com/help/1561485474074139?ref=tos, (last visisted
   Oct. 8, 2021) ...........................................................................................................................3

4

*Self-Serve Ad Terms*, FACEBOOK,
   https://www.facebook.com/legal/self_service_ads_terms, (last visited Oct. 8,
   2021) ........................................................................................................................................3

6

*Terms of Service*, FACEBOOK, https://www.facebook.com/terms.php, (last visited
   Oct. 8, 2021) ............................................................................................................................2

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on January 28, 2022, at 9:00 a.m. in Courtroom 5 of the United States District Court located at 1301 Clay Street, Oakland, CA 94612, before the Honorable Jeffrey S. White, Defendant Facebook, Inc. ("Facebook") will and hereby does respectfully move to dismiss the Complaint filed by Plaintiffs pursuant to Federal Rule of Civil Procedure 12(b)(6). This motion is based on the accompanying Memorandum of Points and Authorities and such other authorities and argument as may be submitted in any reply at or before the hearing.

## STATEMENT OF RELIEF REQUESTED

Facebook hereby moves to dismiss the Complaint in its entirety with prejudice.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiffs claim to have been defrauded by third-party merchants who advertised their products on Facebook. One Plaintiff alleges he did not receive what he purchased, while the other alleges she received a different product from the one she ordered. Rather than suing the merchants who allegedly defrauded them, or the creators of the allegedly fraudulent advertisements, Plaintiffs seek to hold Facebook liable. But Plaintiffs do not allege that Facebook created the ads that allegedly led Plaintiffs to third-party websites to make their purchases, that Plaintiffs purchased any product through Facebook, or that Plaintiffs ever paid any money to Facebook. Nor do they allege that Facebook was involved in the relevant purchase transactions. To the contrary, Plaintiffs expressly concede that Facebook's advertising policies "strictly prohibit[]" (Compl. ¶ 3) the posting of false and misleading ads, and that Facebook took down the merchants' pages after Plaintiffs notified Facebook of the potentially fraudulent conduct (Compl. ¶¶ 76 n. 48, 85).

It is little surprise then that Plaintiffs' claims against Facebook fail at multiple levels. First, as a threshold matter, the Court should dismiss all of Plaintiffs' claims with prejudice because the Communications Decency Act, 47 U.S.C. § 230 ("Section 230"), shields interactive computer service providers such as Facebook from liability arising from content created by third parties. Plaintiffs have not—and could not—allege any facts that take their claims outside a plain and straightforward application of that statutory immunity. The case should be dismissed with

prejudice on this basis alone.

Separate and apart from Section 230 immunity, the Court should dismiss Plaintiffs' Complaint because Plaintiffs have failed to plausibly allege one or more critical elements of each of their causes of action. Plaintiffs fail to allege any causal connection between Facebook's purported conduct and their alleged harm. This fundamental flaw is fatal to all their claims. Beyond that, Plaintiffs' contract and tort claims do not allege a contractual obligation or tort duty that Facebook breached, and the Facebook Terms of Service ("TOS")[1] bar their claims in any event. Plaintiffs also do not allege that they lack an adequate remedy at law, which precludes their equitable claims under the Unfair Competition Law ("UCL") and for unjust enrichment. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). And, in any event, there is no basis for restitution here under any theory of law.

The breadth and depth of the defects in Plaintiffs' claims reflect the fundamental mismatch between their claimed injuries and their allegations against Facebook. Because that mismatch cannot be cured by amendment, the Court should dismiss Plaintiffs' Complaint with prejudice.[2]

## II.   PLAINTIFFS' ALLEGATIONS

### A.   Facebook And The Terms of Service

Facebook provides a social networking service that allows people to connect and communicate with friends, colleagues, family, and others. Compl. ¶ 19. Facebook connects people throughout the world—as of March 2021 Facebook reported 1.88 billion daily active users, and 2.85 billion monthly active users. There is no charge for having a Facebook account. Instead, Facebook generates revenue from a variety of other products and services, including, as relevant here, ads that are displayed to Facebook accounts. One of Facebook's advertising services allows advertisers to target audiences and create and run targeted ad campaigns on the Facebook platform. *Id.* ¶¶ 20-21.

All advertisers must comply with Facebook's TOS, which prohibit conduct that is violent,

---

[1] *Terms of Service*, FACEBOOK, https://www.facebook.com/terms.php.

[2] Prior to filing this motion, Facebook advised Plaintiffs of the defects in their claims and requested that Plaintiffs drop this lawsuit or, if they believe these defects could somehow be cured, come forward with proposed amendments that would address them. Plaintiffs have not responded, apparently choosing instead to stand on their original Complaint.

criminal, fraudulent, or deceptive. *Id.* ¶ 30.[3] Facebook also has certain policies that specifically apply to advertisers ("Ad Policies"). *Id.* ¶ 31. These Ad Policies prohibit advertisements that contain deceptive, false, or misleading claims or "promote products, services, schemes or offers using deceptive or misleading practices." *Id*. Plaintiffs do not allege—nor could they—that Facebook's policies endorse the posting of deceptive or fraudulent advertisements. To the contrary, Facebook's "Self-Service Ad Terms," which are incorporated by reference into the TOS (*see* TOS § 5) and which an advertiser must affirm **each time** it places an ad on Facebook, explicitly require that "ads must comply with all applicable laws, regulations, and guidelines."[4]

To protect the integrity of its site for all who use it, Facebook employs teams around the world tasked with detecting misuse of Facebook products. Compl. ¶ 28. It also uses automated and advanced technical systems to detect and remove abusive or dangerous activity on the platform. *Id*. Although no system is perfect (and Facebook's TOS do not promise perfection), these systems enable Facebook to remove false or fraudulent content. But Facebook—explicitly—also relies on users to report potentially fraudulent activity to assist its fraud-detection efforts. *See* TOS § 3.2 ("To help support our community, we encourage you to report content or conduct that you believe violates your rights . . . or our terms and policies.").

**B.      Plaintiffs' Interaction With Facebook And Purchases From Third Parties**

Plaintiffs are two Facebook users who claim to have seen third-party advertisements on Facebook and subsequently purchased products from third-party websites. Compl. ¶¶ 66-68, 81-83. Plaintiffs allege that they were defrauded by these third parties, and admit that neither of their purchases took place on Facebook. *Id*. ¶¶ 66-75, 80, 81-84.

Plaintiff Christopher Calise alleges that he saw a third-party advertisement for a "car engine assembly kit" on Facebook and purchased this kit via the merchant's website, miuxo.com (not a Facebook website), for $48.97. *Id*. ¶¶ 81-82. Mr. Calise alleges he never received this kit. Mr.

---

[3] The TOS refer to "Facebook Products" or the "Products." These Products as defined in the TOS include Facebook, Instagram, and a variety of other "features, apps, technologies, software, or services offered by Facebook Inc. or Facebook Ireland Limited." *See What are the Facebook Products?*, FACEBOOK, https://www.facebook.com/help/1561485474074139?ref=tos. They do **not** refer to the products Plaintiffs allege they purchased, which were purchased from third parties. *See* Compl. ¶¶ 67-68, 82.

[4] *See Self-Serve Ad Terms*, FACEBOOK, https://www.facebook.com/legal/self_service_ads_terms.

Calise alleges he subsequently reported the ad to Facebook, which removed the miuxo Facebook page. *Id*. ¶ 85.

Plaintiff Anastasia Groschen alleges she saw a third-party Facebook advertisement for an activity board for her toddler. *Id*. ¶ 66. She alleges that she clicked the ad, which linked to a website with the domain kidspunza.com (not a Facebook website), and subsequently purchased the activity board from this website for $24.98, plus $5.99 shipping. She alleges that instead of receiving the activity board she purchased, she received a wooden "ABC" puzzle. *Id*. ¶¶ 67-70. Ms. Groschen acknowledges that the ad she viewed "is no longer available" on Facebook and that the Kidspunza Facebook page was subsequently taken down by Facebook. *Id*. ¶ 66, 76 n.48.

Notably, Plaintiffs do not allege that Facebook created the ads that they complain about, or that Facebook had any relationship with the creators that was in any way different from the relationship that Facebook has with millions of other advertisers. *See* Compl. ¶ 22. Plaintiffs do not allege that Facebook had anything to do with the allegedly injurious content of the ads—such as what the ads said about the products advertised, their cost, or other terms of sale. And Plaintiffs do not allege that Facebook knew that the ads at issue were allegedly deceptive prior to the receipt of Plaintiffs' complaints. Instead, Plaintiffs make various allegations summarizing articles reporting on purported events and statements made—largely in China—about Facebook's efforts to increase advertisement sales with the alleged knowledge that some Chinese businesses may engage in fraudulent business practices. Nowhere in the Complaint do Plaintiffs tie the events and statements cited in these stories with their purchases or the advertisements that allegedly led to their injuries.

Plaintiffs seek to represent a putative class of all current Facebook users, as well as a subclass of plaintiffs who "clicked on a Deceptive Facebook Ad and suffered harm." *Id*. ¶ 91.

## III.   ARGUMENT

### A.   Plaintiffs' Claims Are Barred By Section 230

Congress enacted Section 230 to broadly "immunize[] providers of interactive computer services against liability arising from content created by third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008); *accord Gonzalez*

*v. Google LLC*, 2 F.4th 871, 886 (9th Cir. 2021). Consistent with Congress's intent, courts routinely apply Section 230 to dismiss claims against internet platforms based on their alleged failure to block third-party advertisements. *See, e.g.*, *Ripple Labs Inc. v. YouTube LLC*, 2020 WL 6822891, at *6 (N.D. Cal. Nov. 20, 2020); *Goddard v. Google, Inc.*, 2008 WL 5245490, at *4 (N.D. Cal. Dec. 17, 2008); *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 12 (S.D.N.Y. 2020); *Baldino's Lock & Key Serv., Inc. v. Google LLC*, 285 F. Supp. 3d 276, 284 (D.D.C. 2018); *Corker v. Costco Wholesale Corp.*, 2019 WL 5895430, at *6 (W.D. Wa. Nov. 12, 2019). Under this well-established body of case law, all of Plaintiffs' claims should be dismissed.

**1.  Facebook Is Not Liable For Claims Arising From Third-Party Content**

Section 230(c)(1) provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230 applies if three conditions are satisfied: (1) the defendant is a "provider or user of an interactive computer service," (2) the information for which plaintiffs seek to hold the defendant liable is "information provided by another information content provider," and (3) plaintiffs seek to hold the defendant liable as the "publisher or speaker" of that information. *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019). Each is met here.

As numerous courts—including this Court—have held, Facebook is an interactive computer service provider. *See, e.g.*, *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017); *Fyk v. Facebook, Inc.*, 2019 WL 11288576, at *2 (N.D. Cal. June 18, 2019) (White, J.), *aff'd*, 808 F. App'x 597 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1067 (2021); *Fed. Agency of News LLC ("FAN") v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1120 (N.D. Cal. 2020); *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *3 (N.D. Cal. May 9, 2019).

And this suit seeks to hold Facebook liable as a result of content provided not by Facebook, but by various advertisers who allegedly created and posted on the Facebook platform "deceptive, false, and/or misleading ads viewed by Facebook users." Compl. ¶ 2. Plaintiffs' claims are therefore based on information posted by another information content provider—the advertisers. Section 230 applies to precisely these types of claims. *See, e.g., Kimzey v. Yelp! Inc.*, 836 F.3d

1263, 1270 (9th Cir. 2016) (affirming dismissal based on user-generated ratings, even if such ratings were construed as "advertisements"); *Vargas v. Facebook, Inc.*, 2021 WL 3709083, at *1, *5 (N.D. Cal. Aug. 20, 2021) (dismissing claims based on ads posted by third parties); *Goddard*, 2008 WL 5245490, at *4 (same); *Ebeid*, 2019 WL 2059662, at *4-5 (dismissing claims based on the removal of ads posted by plaintiff and third parties). "[T]he fact that a website elicits [ads] for profit is immaterial" to the Section 230 analysis. *Goddard*, 2008 WL 5245490, at *3.

### 2. Plaintiffs Seek To Hold Facebook Liable As A "Publisher Or Speaker"

Plaintiffs' suit seeks to impose on Facebook liability for acting as the "publisher or speaker" of content created by another. Plaintiffs allege Facebook allowed advertisers to post "fraudulent" content on Facebook's platform, and did not locate and remove that content, notwithstanding Facebook's policies prohibiting it. *See, e.g.,* Compl. ¶¶ 106, 109, 117, 122, 128. But "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Roommates.com*, 521 F.3d at 1170-71; *accord Gonzalez*, 2 F.4th at 892; *Caraccioli*, 700 F. App'x at 590; *see also Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009) ("[P]ublication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content."). Here, the activity for which Plaintiffs seek to hold Facebook liable is failing to remove third-party ads—conduct that falls squarely within the realm of "publishing" activity.

For purposes of Section 230, "what matters is not the name of the cause of action . . . what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1101-02. Courts have therefore applied Section 230 to each of Plaintiffs' five causes of action. *See, e.g.*, *id.* at 1102-03 (negligence); *FAN*, 432 F. Supp. 3d at 1120 (breach of contract); *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 955 (N.D. Cal. 2020) (breach of the covenant of good faith and fair dealing); *Fyk*, 2019 WL 11288576, at *1, *3 (Cal. Bus. & Prof. Code § 17200); *Coffee v. Google, LLC*, 2021 WL 493387, at *8 (N.D. Cal. Feb. 10, 2021) (unjust enrichment); *Goddard*, 2008 WL 5245490, at *1-6 (breach of contract, negligence, Cal. Bus. & Prof. Code § 17200).

### 3.   Plaintiffs Do Not Allege That Facebook Is A Content Developer

Courts have routinely applied Section 230 to claims based on content created by third parties and identified only limited circumstances where it does not apply. As the Ninth Circuit explained, where "[a] website directly participates in developing" third-party content that is illegal, then Section 230 immunity does not apply. *Roommates.com*, 521 F.3d at 1174. But a provider only qualifies as a content "developer" if it directly and "materially" contributed to what made the third-party content itself "unlawful," such as by requiring the content as a condition for using its platform. *Id.* at 1166-68, 1175. Here, Plaintiffs do not allege that Facebook "required" advertisers to post fraudulent ads or that Facebook created or suggested the content complained of; to the contrary, Plaintiffs allege that Facebook ***prohibits advertisers from posting*** such content. *See supra* p. 3.

While Plaintiffs claim that Facebook supplies algorithms that "leverage" user data to "predict" which users will be interested in which ads and to then show users the ads that they will likely be interested in (*see*, *e.g.*, Compl. ¶¶ 2, 23, 24, 26, 35), the Ninth Circuit has found similar allegations insufficient to defeat Section 230 immunity. As the Court explained in *Dyroff*, allegations that a platform "used features and functions, including algorithms," to "analyze user posts" and then "recommend[]" content, do not override Section 230 immunity. *Dyroff*, 934 F.3d at 1098; *see also Gonzalez*, 2 F.4th at 881.

Similarly, even accepting as true (for purposes of a motion to dismiss) the allegations that Facebook "solicite[d]" and "encourag[ed]" scammers (Compl. ¶ 1), those allegations cannot undermine the immunity offered by Section 230. Courts routinely apply Section 230 in cases where a service provider actively sought or promoted the content because "Congress . . . made a . . . policy choice . . . [to provide] immunity even where the . . . provider has an active, even aggressive role in making available content prepared by others." *Blumenthal v. Drudge*, 992 F. Supp. 44, 52 (D.D.C. 1998); *see also Vargas*, 2021 WL 3709083, at *4 (applying Section 230 where Facebook allegedly "create[ed], promot[ed] use of, and profit[ed] from" a tool used by advertisers to post allegedly injurious content); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (same where defendant "solicit[ed]" consumer complaints and "steered" them

into "specific category[ies] designed to attract attention by consumer class action lawyers"); *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398 (6th Cir. 2014) (same where defendant invited and encouraged users to post gossip, and selected specific posts to publish).

Likewise, it is well-established that allegations that Facebook "knew" that scammers were using its platform to post deceptive ads (*e.g.*, Compl. ¶¶ 51, 135) do not defeat Section 230 immunity. *E.g.*, *Dyroff*, 934 F.3d at 1099; *Barnes*, 570 F.3d at 1098; *Jones*, 755 F.3d at 404. Section 230 applies "even if a service provider knows that third parties are using [its] tools to create illegal content." *Goddard*, 2008 WL 5245490, at *3. As the Fourth Circuit explained in its seminal decision *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 333 (1997), "[l]iability upon notice would defeat the . . . purposes advanced by § 230 of the CDA . . . [because it] reinforces service providers' incentives to restrict speech and abstain from self-regulation."

Ultimately, Plaintiffs' claims in this case seek to hold Facebook liable for publishing third-party advertisements. These are precisely the type of claims that courts routinely dismiss at the pleadings stage under Section 230. Plaintiffs' Complaint should be dismissed in its entirety with prejudice on this basis alone. *See Roommates.com*, 521 F.3d at 1175 (Section 230 "must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles.").

### B.  Plaintiffs Fail To Allege A Viable Claim

Even apart from Section 230, the Complaint should also be dismissed because Plaintiffs do not plead facts sufficient to state a viable state law claim for negligence, breach of contract/implied covenant, unfair competition, or "unjust enrichment."

#### 1.  Plaintiffs' Negligence Claim Fails Under The Economic Loss Rule And Because Plaintiffs Fail To Allege A Breach Of Any Duty Owed To Plaintiffs

Under California law, the general rule is that there is no tort duty to guard against negligently causing pure economic loss. *S. California Gas Leak Cases v. Superior Court of L.A. Cnty.*, 7 Cal. 5th 391, 400 (2019); *see also Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 59 (1998) ("With rare exceptions, a business entity has no duty to prevent financial loss to others with whom it deals directly."). Because Plaintiffs allege only economic losses, their

1  negligence claim is barred. *See Wright v. Charles Schwab & Co.*, 2020 WL 6822887, at \*4 (N.D.

2  Cal. Nov. 20, 2020); *Gardiner v. Walmart Inc.*, 2021 WL 2520103, at \*8 (N.D. Cal. Mar. 5, 2021).

3      The primary exception to the economic loss rule is the existence of a "special relationship"

4  between plaintiff and defendant. *Gas Leak Cases*, 7 Cal. 5th at 400. Plaintiffs do not aver facts that

5  would demonstrate any special relationship with Facebook under the law. Instead, they plead that

6  it is foreseeable that deceptive advertisements will harm putative class members, it would be bad

7  "policy" to hold otherwise, and that Facebook's conduct is "morally blameworthy." Compl. ¶ 105.

8  But these are just legal (or, perhaps more accurately, policy or moral) conclusions. Plaintiffs do

9  not aver any facts that would make these conclusions plausible, let alone cognizable under the

10  applicable standards for establishing a special relationship. *See, e.g., Resnick v. Hyundai Motor*

11  *Am., Inc.*, 2017 WL 1531192, at \*11 (C.D. Cal. Apr. 13, 2017) (setting forth test under California

12  law). This alone requires dismissal. *See Gardiner*, 2021 WL 2520103, at \*8-9; *Worldwide Media,*

13  *Inc. v. Twitter, Inc.*, 2018 WL 5304852, at \*10-11 (N.D. Cal. Oct. 24, 2018).

14      Even if Plaintiffs had alleged facts designed to support the finding of a "special

15  relationship" (they have not), courts have made clear that a special relationship cannot be found

16  when the plaintiff and defendant are in privity of contract. *See, e.g., Berk v. Coinbase, Inc.*, 840 F.

17  App'x 914, 916 (9th Cir. 2020) (no special duty between cryptocurrency exchange and its users

18  when parties were "in privity via [a] User Agreement"); *Body Jewelz, Inc. v. Valley Forge Ins.*

19  *Co.*, 241 F. Supp. 3d 1084, 1092-93 (C.D. Cal. 2017) (special relationship exception does not apply

20  when plaintiff and defendant are in privity of contract); *Resnick*, 2017 WL 1531192, at \*11 (same);

21  *Elsayed v. Maserati N. Am., Inc.*, 215 F. Supp. 3d 949, 963 (C.D. Cal. 2016) (same). Plaintiffs

22  allege they were in a direct contractual relationship with Facebook and even attempt to invoke the

23  contract to support their claims. Compl. ¶ 111. Thus, based on their own allegations, the special

24  relationship exception cannot apply.

25      Plaintiffs' negligence claim also fails for an additional reason: because the Complaint does

26  not allege that Facebook breached any duty owed to Plaintiffs. As discussed in greater detail *infra*,

27  Facebook's TOS plainly disclaim all warranties and explain that Facebook "do[es] not control or

28  direct what people and others do or say, and [Facebook is] not responsible for their actions or

---

conduct (whether online or offline)." TOS § 4. While Plaintiffs seek to rely on generalized allegations about Chinese advertisers and Facebook's China-based business, Compl. ¶¶ 4, 46, Plaintiffs do not even attempt to connect these allegations to any duty on behalf of Facebook to control the conduct of third parties (a duty Facebook explicitly disclaims).

### 2.  Plaintiffs Do Not Identify An Alleged Breach And The TOS Preclude Liability

#### a)  Plaintiffs do not allege a breach of the TOS

Plaintiffs allege that Facebook breached its TOS by "soliciting, encouraging, and assisting Deceptive Facebook Advertisers . . . ." Compl. ¶¶ 113-115. The specific terms Plaintiffs allege that Facebook breached are:

> We employ dedicated teams around the world and develop advanced technical systems to detect misuse of our Products, harmful conduct towards others, and situations where we may be able to help support or protect our community. If we learn of content or conduct like this, we will take appropriate action - for example, offering help, removing content, removing or restricting access to certain features, disabling an account, or contacting law enforcement. . .

> And we develop automated systems to improve our ability to detect and remove abusive and dangerous activity that may harm our community and the integrity of our Products.

*See id.*; TOS § 1. Plaintiffs' breach of contract argument fails for multiple reasons.

***First***, as they make clear, the TOS govern ***users'*** interaction with Facebook, "mak[ing] up the entire agreement between you and Facebook, Inc. regarding your use of [Facebook]." TOS § 4.5.1. The TOS do not obligate Facebook to take any particular affirmative action as relevant to Plaintiffs' case. Indeed, courts in this District have noted that Facebook's Terms "do not create affirmative obligations'" on Facebook. *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (*quoting Young v. Facebook, Inc.*, 2010 WL 4269304, at *3 (N.D. Cal. Oct. 25, 2010)); *King v. Facebook, Inc.*, 2019 WL 6493968, at *2 (N.D. Cal. Dec. 3, 2019); *accord Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 201 (2017). And that is likewise true here with respect to the TOS on which Plaintiffs rely.

Plaintiffs also refer to the Facebook "Community Standards" and allege they are incorporated by reference in the TOS. Compl. ¶ 115. However, the only references to the "Community Standards" in the TOS comes under the headings "[w]hat you can share and do on

Facebook," and "[a]ccount suspension or termination" which confer obligations, rather than rights, on Facebooks users. Plaintiffs therefore do not identify a contractual obligation that Facebook allegedly breached.

*Second*, Plaintiffs do not allege that Facebook failed to "employ dedicated teams," or "develop automated systems," designed to address misuse of Facebook or address "abusive or dangerous" activity. To the contrary, Plaintiffs acknowledge that Facebook ***does*** have "teams charged with combatting Deceptive Ads" and ***did*** remove pages and advertisements related to their purchases. *See id.* ¶¶ 38, 66, 30 n.48, 33 n.49. Plaintiffs therefore do not allege a breach of those portions of the TOS identified in the Complaint.

And ***third***, Plaintiffs fail to plead that their alleged damages resulted from the conduct they allege constitutes the purported breach of the TOS. Although Plaintiffs allege that Facebook breached the TOS by "soliciting, encouraging, and assisting Deceptive Facebook Advertisers . . ." (Compl. ¶¶ 113, 115), Plaintiffs do not allege that this purported conduct was connected to the merchants from whom Plaintiffs made their purchases; that it caused them to make their purchases from these merchants' websites; or that the alleged conduct had any nexus whatsoever to the advertisements Plaintiffs allegedly saw. *See. e.g.*, *St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.,* 101 Cal. App. 4th 1038, 1060 (2002) ("Causation of damages in contract cases requires that the damages be proximately caused by the defendant's breach.")

### b)  The TOS limit Facebook's liability to Plaintiffs

The "Limits on Liability" in the TOS also preclude Plaintiffs' contract claims. TOS § 4.3 (providing Facebook products "as is," disclaiming all warranties, and stating that Facebook "does not control or direct what people and others do or say, and we are not responsible for their actions or conduct (whether online or offline) or any content they share."). Limitation-of-liability clauses are valid and enforceable, and are especially appropriate when one party is offering a free service to the public, as here. *See, e.g., Markborough California, Inc. v. Superior Court of Riverside Cnty.*, 227 Cal. App. 3d 705, 714 (1991); *Lewis v. YouTube LLC*, 244 Cal. App. 4th 118, 125 (2015).

Facebook also expressly disclaims all "consequential, special, indirect, exemplary, punitive, or incidental damages." TOS § 3. Because Plaintiffs' purchases were from third parties,

any damages Plaintiffs seek from Facebook could only be indirect or consequential. *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037-38 (N.D. Cal. 2019) (dismissing claims based on Facebook's limitation-of-liability clause); *Martin Constr., Inc. v. Roscoe Steel & Culvert Co.*, 542 F. App'x 695, 696 (9th Cir. 2013) (holding damages are "consequential because they were 'incurred by the nonbreaching party in its dealings . . . with third parties.'") (citation omitted).

### 3. Plaintiffs' Breach Of The Covenant Claim Fails Because It Is Duplicative Of The Breach Of Contract Claim And Is Precluded By The TOS

The only unique allegation in Plaintiffs' breach of the covenant of good faith and fair dealing claim is the conclusory statement that Facebook "engaged in conduct that frustrated and interfered with the rights of Plaintiffs and other members of the Classes to the benefits of the TOS (including without limitation, the right to a safe environment while using Facebook and right to be protected against being scammed by Deceptive Facebook Ads)." Compl. ¶ 122. This allegation is too vague and conclusory to form the basis of a breach of covenant claim that is distinct from a breach of contract claim, and therefore must be dismissed. *Sharp v. Nationstar Mortg., LLC*, 701 F. App'x 596, 598 (9th Cir. 2017); *Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 884 (N.D. Cal. 2011) (dismissing breach of covenant claim as superfluous to breach of contract claim).

In addition, as noted above, Facebook's TOS expressly disclaim any warranty or guarantee that Facebook will be "safe" for all users at all times, and make clear Facebook is not responsible for what others say or do on the platform. It is well-established that any implied duty of good faith and fair dealing cannot contradict the express terms of the contract. *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 55 (2002); *see also Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808 (1995) (absent rare circumstances, a court is "not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power.").

### 4. Plaintiffs' UCL And Unjust Enrichment Claims Fail Because Plaintiffs Do Not Allege They Have No Adequate Remedy At Law

#### a) Plaintiffs have not—and cannot—plead inadequate remedies at law

"[E]quitable relief is not appropriate where an adequate remedy exists at law." *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009); *see also Nguyen v. Nissan N. Am., Inc.*, 2017 WL 1330602, at *4 (N.D. Cal. Apr. 11, 2017). Thus, in *Sonner v. Premier Nutrition Corp.*, 971

F.3d 834, 844 (9th Cir. 2020), the Ninth Circuit affirmed the dismissal of claims for equitable restitution under the UCL and the CLRA based on the plaintiff's failure to show she lacked an adequate remedy at law. Applying *Sonner*, courts in this District, including this Court, have held that a plaintiff must plead the inadequacy of legal remedies to state a claim for injunctive relief or restitution. *See In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) (collecting cases); *see also Robie v. Trader Joe's Co.*, 2021 WL 2548960, at *6 (N.D. Cal. June 14, 2021) (dismissing equitable and injunctive relief claims where plaintiff did not allege inadequate remedy at law); *Gardiner*, 2021 WL 2520103, at *7 (same for UCL injunctive claim).

Here, Plaintiffs have not only failed to plead that they lack an adequate remedy at law; they have brought claims seeking legal remedies alongside claims seeking equitable remedies that are premised on the same course of conduct and the same operative facts for the same alleged injuries. Plaintiffs' claims under the UCL and for unjust enrichment—which seek equitable remedies of injunctive relief and restitution—must therefore be dismissed. *Sonner*, 971 F.3d at 844.

### b) Plaintiffs lack standing under the UCL

To satisfy the standing requirements of the UCL, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (Cal. 2011). Standing under the UCL is "substantially narrower than federal standing under Article III." *Prescott v. Rady Children's Hosp.-San Diego*, 265 F. Supp. 3d 1090, 1103 (S.D. Cal. 2017). "[O]nly a plaintiff who has suffered an injury in fact and has lost money or property as a result of unfair competition has standing to bring an action for relief." *Id.*

"The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." *Kwikset*, 51 Cal. 4th at 326 (citations omitted). Plaintiffs do not show the causal connection the UCL requires. It is undisputed that Facebook did not sell any product to Plaintiffs; nor did Facebook process the transactions that led to Plaintiffs' alleged harm. And the very document Plaintiffs seek to invoke in support of their claims (the TOS) provides notice to users that Facebook does not control what

1   third parties do or say. Accordingly, Plaintiffs fail to adequately allege that Plaintiffs suffered any

2   cognizable harm "as a result of" the alleged unfair conduct, as required by the UCL. *Id.*; *see also*

3   *In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009) (requiring reliance on misstatements to show

4   causation). Plaintiffs' UCL claim must therefore be dismissed.

### c)   Plaintiffs have not—and cannot—plead the right to restitution

6   The UCL "is equitable in nature" and its available remedies are carefully proscribed. *Korea*

7   *Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (Cal. 2003). The UCL "provides for

8   only equitable relief" in the form of injunctive relief and restitution. *Robinson v. C.R. Bard, Inc.*,

9   2016 WL 3361825, at *3 (N.D. Cal. June 17, 2016); *see also Cel-Tech Commc'ns, Inc. v. Los*

10   *Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (Cal. 1999) ("Prevailing plaintiffs are generally

11   limited to injunctive relief and restitution."). Plaintiffs are not entitled to restitution.

12   "A restitution order against a defendant . . . requires both that money or property have been

13   lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other."

14   *Kwikset*, 51 Cal. 4th at 336; *accord Korea Supply Co.*, 29 Cal. 4th at 1144. Thus, monetary relief

15   under UCL is unavailable where the defendant is not "in possession of funds in which [plaintiffs

16   have] an ownership interest." *In re Napster, Inc. Copyright Litig.*, 354 F. Supp. 2d 1113, 1127

17   (N.D. Cal. 2005). Here, Plaintiffs have failed to show that the money they purportedly lost was

18   "acquired by" or is in the possession of Facebook. To the contrary, they allege that the money they

19   seek to recover was paid to third-party merchants. *See* Compl. ¶¶ 67-68, ¶ 82. Accordingly, there

20   is no basis for a restitutionary award. *See Phillips v. Apple Inc.*, 725 F. App'x 496, 498 (9th Cir.

21   2018) (dismissing UCL claim when "plaintiffs lost money in the form of data overuse charges, but

22   that money was acquired by their wireless carriers—not by Apple.").

### 5.   Plaintiffs' Purported "Unjust Enrichment" Claim Fails As A Matter Of Law

24   Many courts do not recognize a stand-alone claim for unjust enrichment at all. *See, e.g.*,

25   *Abuelhawa v. Santa Clara Univ.*, 2021 WL 1176689, at *10 (N.D. Cal. Mar. 29, 2021) ("Because

26   '[u]njust enrichment is not a cause of action[,] Plaintiffs' unjust enrichment claim cannot proceed."

27   (citation omitted)); *Lindner v. Occidental Coll.*, 2020 WL 7350212, at *10 (C.D. Cal. Dec. 11,

28   2020) ("'[U]njust enrichment' is not an independent cause of action under California law."). Other

1    courts have recognized plaintiffs' pursuit of "unjust enrichment," but have treated it as a quasi-

2    contract claim seeking restitution. *See Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 998 (N.D.

3    Cal. 2020); *Epic Games, Inc. v. Apple Inc.*, 2021 WL 4128925, at *125 (N.D. Cal. Sept. 10, 2021).

4    However courts may label the theory of recovery, it is clear that there is no unjust enrichment

5    claim for disgorgement in California—the remedy is limited to restitution. But as discussed above,

6    Plaintiffs cannot plead a basis for restitution from Facebook here, (*see supra* p. 14). Moreover,

7    because California's unjust enrichment theory, to the extent recognized at all, is based on quasi-

8    contract, it "does not lie when an enforceable, binding agreement exists defining the rights of the

9    parties." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). "The

10   doctrine applies where plaintiffs, while having no enforceable contract, nonetheless have conferred

11   a benefit on defendant which defendant has knowingly accepted under circumstances that make it

12   inequitable for the defendant to retain the benefit without paying for its value." *Hernandez v.*

13   *Lopez*, 180 Cal. App. 4th 932, 938 (2009). Here, the TOS define Facebook's rights and Plaintiffs'

14   obligations, and therefore, Plaintiffs' unjust enrichment claim is foreclosed.

15   **IV.    CONCLUSION**

16        All of Plaintiffs' claims are barred under Section 230, and each claim has legal defects that

17   cannot be cured by amendment. The Complaint should be dismissed in its entirety with prejudice.

18

19   DATED: October 8, 2021                    Respectfully submitted,

20                                             WILMER CUTLER PICKERING HALE
21                                             AND DORR LLP

22                                             By: */s/ Christopher T. Casamassima*
                                               Sonal N. Mehta
23                                             Christopher T. Casamassima

24                                             *Attorneys for Defendant Facebook, Inc.*

25

26

27

28