**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
aapton@zlk.com
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: 415-373-1671
Facsimile: 212-363-7171

Mark S. Reich (admitted *pro hac vice*)
mreich@zlk.com
Courtney E. Maccarone (admitted *pro hac vice*)
cmaccarone@zlk.com
55 Broadway, 10th Floor
New York, NY 10006
Telephone: 212-363-7500
Facsimile: 212-363-7171

*Attorneys for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER CALISE and ANASTASIA GROSCHEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No.  4:21-cv-06186-JSW<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: February 25, 2022<br>Time: 9:00 a.m.<br>Courtroom: 5 – 2nd Floor<br>Hon: Jeffrey S. White |

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................................... 1

II.   LEGAL STANDARD................................................................................................ 1

III.  ARGUMENT ............................................................................................................. 2

      A.    Section 230 Does Not Immunize Websites From Liability for Actionable Content for Which They Are Responsible in Part ........................................................... 2

      B.    All of Plaintiffs' Claims Are Viable ................................................................ 6

           1.    Plaintiffs Adequately Allege a Negligence Claim ............................... 6

           2.    Plaintiffs Adequately Allege a Breach of Contract Claim ................... 7

           3.    The LOL Clause Does Not Bar Plaintiffs' Claims .............................. 8

           4.    Plaintiffs Adequately Allege a Breach of the Covenant of Good Faith and Fair Dealing ....................................................................... 10

           5.    Plaintiffs' UCL Claim for Injunctive Relief Against Future Harm is Viable ................................................................................................ 11

           6.    Plaintiffs Adequately Allege An Unjust Enrichment Claim.............. 13

IV.  CONCLUSION....................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. v. Shawa*,
  2016 WL 245458 (Cal. Ct. App. Jan. 20, 2016)................................................................................13

*Ass'n for Los Angeles Deputy Sheriffs v. Cty. of Los Angeles*,
  648 F.3d 986 (9th Cir. 2011).................................................................................................................2

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009)..........................................................................................................2, 5

*Bass v. Facebook, Inc.*,
  394 F. Supp. 3d 1024 (N.D. Cal. 2019).........................................................................................7, 10

*Brooks v. Thomson Reuters Corp.*,
  2021 WL 3621837 (N.D. Cal. Aug. 16, 2021)..............................................................................11, 14

*Bruton v. Gerber Prod. Co.*,
  703 F. App'x 468 (9th Cir. 2017)........................................................................................................14

*Calhoun v. Google LLC*,
  526 F. Supp. 3d 605 (N.D. Cal. 2021)..................................................................................................8

*Coremetrics, Inc. v. Atomic Park.com, LLC*,
  2005 WL 3310093 (N.D. Cal. Dec. 7, 2005) .......................................................................................8

*Daniels v. Alphabet Inc.*,
  2021 WL 1222166 (N.D. Cal. Mar. 31, 2021) .....................................................................................6

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018)..............................................................................................................13

*Depot, Inc. v. Caring for Montanans, Inc.*,
  915 F.3d 643 (9th Cir.), *cert. denied*, 140 S. Ct. 223 (2019)......................................................14, 15

*Dyroff v. Ultimate Software Grp., Inc.*,
  934 F.3d 1093 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761, 206 L. Ed. 2d 936 (2020).....................4

*F.T.C. v. Accusearch Inc.*,
  570 F.3d 1187 (10th Cir. 2009) .......................................................................................................2, 3

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) .....................................................................................................1, 2, 3

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
  209 Cal. App. 4th 1118, 147 Cal. Rptr. 3d 634 (2012) ......................................................................10

*Fyk v. Facebook, Inc.*,
  808 F. App'x 597 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1067, 208 L. Ed. 2d 530 (2021)................5

*Galope v. Deutsche Bank Nat'l Tr. Co.*,
    566 F. App'x 552 (9th Cir. 2014) ......................................................................................13

*Goddard v. Google, Inc.*,
    2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) .....................................................................5

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002) ..........................................................................................................15

*Huynh v. Quora, Inc.*,
    508 F. Supp. 3d 633 (N.D. Cal. 2020)...............................................................................6, 7

*In re Cty. of Orange*,
    784 F.3d 520 (9th Cir. 2015) .............................................................................................15

*In re Facebook Privacy Litig.*,
    192 F. Supp. 3d 1053 (N.D. Cal. 2016)................................................................................6

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021) ....................................14

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019).....................................................................7, 10, 14

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    313 F. Supp. 3d 1113 (N.D. Cal. 2018).........................................................................6, 7, 12

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
    525 F. Supp. 3d 1017 (N.D. Cal. 2021)................................................................................5

*IntegrityMessageBoards.com v. Facebook, Inc.*,
    2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) .....................................................................12

*J'Aire Corp. v. Gregory*,
    24 Cal.3d 799, 157 Cal.Rptr. 407, 598 P.2d 60 (1979) ........................................................6

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) .............................................................................................4

*King v. Facebook, Inc.*,
    2019 WL 6493968 (N.D. Cal. Dec. 3, 2019) .......................................................................7

*Kowal v. Day*,
    20 Cal. App. 3d 720, 98 Cal. Rptr. 118 (Ct. App. 1971).......................................................7

*Kwikset Corp. v. Superior Ct.*,
    51 Cal. 4th 310, 246 P.3d 877 (2011)................................................................................13

*Lantis Laser, Inc. v. Ice Cold Stocks, LLC*,
    2008 WL 11338191 (C.D. Cal. Sept. 23, 2008) ...................................................................7

*Lundy v. Facebook, Inc.*,
    2021 WL 4503071 (N.D. Cal. Sept. 30, 2021)...................................................................14

iii

*Opperman v. Path, Inc.*,
  87 F. Supp. 3d 1018 (N.D. Cal. 2014).........................................................................................2

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
  96 F.3d 1151 (9th Cir. 1996)....................................................................................................14

*Professor Brainstorm, LLC v. Aronowitz*,
  2009 WL 10675891 (C.D. Cal. Dec. 8, 2009)..........................................................................14

*Rodman v. Safeway Inc.*,
  125 F. Supp. 3d 922 (N.D. Cal. 2015), *aff'd*, 694 F. App'x 612 (9th Cir. 2017)..............8, 10

*Shaterian v. Wells Fargo Bank, N.A.*,
  829 F. Supp. 2d 873 (N.D. Cal. 2011)......................................................................................11

*Simler v. Conner*,
  372 U.S. 221 (1963) .................................................................................................................15

*Simulados Software, Ltd. v. Photon Infotech Priv., Ltd.*,
  771 F. App'x 732 (9th Cir. 2019) ..............................................................................................9

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020).............................................................................................11, 15

*Swift v. Zynga Game Network, Inc.*,
  2010 WL 4569889 (N.D. Cal. Nov. 3, 2010) .............................................................................2

*TSI USA LLC v. Uber Techs., Inc.*,
  2020 WL 5257873 (N.D. Cal. Sept. 3, 2020)...........................................................................10

*Tunkl v. Regents of Univ. of Cal.*,
  60 Cal. 2d 92, 383 P.2d 441 (1963)...........................................................................................9

*Tyler Barnett PR, LLC v. Facebook Inc.*,
  2018 WL 2974695 (N.D. Cal. June 1, 2018).............................................................................13

*United States ex rel. Begole v. Trenkle*,
  2010 WL 11596170 (C.D. Cal. July 16, 2010) .........................................................................14

*Vargas v. Facebook, Inc.*,
  2021 WL 3709083 (N.D. Cal. Aug. 20, 2021)............................................................................5

*Young v. Facebook, Inc.*,
  2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ............................................................................7

*Zeiger v. WellPet LLC*,
  526 F. Supp. 3d 652 (N.D. Cal. 2021).......................................................................................11

**Rules**

F.R.C.P 8(a)(3).................................................................................................................................14

F.R.C.P. 8(d)(2)-(3) .......................................................................................................................14

iv

## I.      INTRODUCTION

The Complaint alleges with particularity how Facebook continues to actively solicit, encourage, and assist scammers that it knows or should know are showing deceptive ads to Facebook users. Facebook's misconduct includes: (i) undertaking marketing (e.g., conferences, tradeshows, meetups) to encourage known scammers to buy more Facebook ads; (ii) soliciting and training advertisers in China despite knowing that a material percentage of the Facebook ads placed by China-based advertisers violate one or more of Facebook's Ad Policies; and (iii) laxly enforcing its Ad Policies, including directing the individuals monitoring Facebook's platform for Deceptive Facebook Ads to ignore violations of Facebook's Ad Policies in order to maximize revenue. Compl. ¶¶ 32-60.[1] This misconduct materially contributes to the placement of fraudulent ads and Facebook is, therefore, not entitled to immunity under Section 230 of the Communications Decency Act ("Section 230"). *See Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162, 1168-74 (9th Cir. 2008); *see also infra*, § III.A.

Plaintiffs assert several viable claims for monetary relief in the form of damages and/or disgorgement of profits unjustly earned by Facebook from Deceptive Facebook Ads. *See* Compl. ¶ 9; *see also infra* § III.B.1-6. Plaintiffs also seek injunctive relief directing Facebook to implement changes to Facebook's processes, practices, and policies to substantially reduce the display of Deceptive Facebook Ads and protect Facebook users from being victimized by such ads.  Compl. ¶ 8(a)-(h).  Injunctive relief is particularly necessary here because while Facebook has the resources to substantially reduce the volume of scam ads appearing on its website, it has no incentive to deploy those resources because it is generating billions of dollars a year in sales from scam ads, and Facebook's culture prioritizes revenue growth over the safety of its users.  *Id*. ¶¶ 61-90; *see also infra* § III.B.5.a below.

## II.     LEGAL STANDARD

On a motion to dismiss, a district court must accept all factual allegations in the complaint as true, construe the pleadings in the light most favorable to the plaintiff, and draw all reasonable inferences in

---

[1] All capitalized terms not otherwise defined in this Memorandum shall have the same meaning ascribed to them in the Complaint. All emphasis added unless otherwise noted.

1

favor of the plaintiff. *Ass'n for Los Angeles Deputy Sheriffs v. Cty. of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011).

## III.    ARGUMENT

### A.    Section 230 Does Not Immunize Websites From Liability for Actionable Content for Which They Are Responsible in Part

Facebook mistakenly argues that it enjoys broad immunity under Section 230. Facebook Brief ("Br.") at 4. But Section 230 does *not* declare "a general immunity from liability deriving from third-party content." *Barnes v. Yahoo!, Inc*., 570 F.3d 1096, 1100 (9th Cir. 2009). Rather—under the "information content provider" exception in Section 230(f)(3) of the CDA— immunity does *not* extend to websites that are "***responsible***, in whole or ***in part***" for the creation or development of actionable content. *Roommates*, 521 F.3d at 1162; *see also F.T.C. v. Accusearch Inc*., 570 F.3d 1187, 1197 (10th Cir. 2009) ("information content provider" not immune from liability). Thus, in the Ninth Circuit, Section 230 immunizes websites *only* where the actionable content is posted "***without prompting or help*** from the website operator," and the website does "***absolutely nothing to encourage***" the posting of actionable content and serves "merely [as] a ***passive conduit***" for such content. *Roommates*, 521 F.3d at 1171-72. But "***immunity will be lost***" (*id.* at 1174) where a website "***materially contribut[es]***" to actionable content (*id.* at 1168) because it is "***directly involved with*** developing and enforcing a system that subjects subscribers to [actionable content]" (*id.* at 1172), and "***directly participates*** in developing the [actionable content]." *Id.* at 1174; *accord Opperman v. Path, Inc*., 87 F. Supp. 3d 1018, 1043-45 (N.D. Cal. 2014); *Swift v. Zynga Game Network, Inc*., 2010 WL 4569889, at *4–6 (N.D. Cal. Nov. 3, 2010).

Here, Section 230 does not confer immunity on Facebook under Ninth Circuit precedent because Facebook cannot credibly claim that it does nothing to "help" deceptive advertisers. Nor can Facebook credibly maintain that it does "absolutely nothing to encourage" the display of deceptive ads. To the contrary, by affirmatively soliciting, assisting and encouraging advertisers whom it knows or should know are scammers (Compl. ¶¶ 32-60), Facebook is clearly responsible in part for the deceptive ads displayed to Class members and is "much more than a passive transmitter of information provided by

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 4:21-cv-06186 JSW

others." *Roommates*, 521 F.3d at 1166; *see also Accusearch*, 570 F.3d at 1201 (immunity lost where website knew third parties "were likely to use improper methods").

Facebook's responsibility in part for the development of Deceptive Facebook Ads is particularly evident in China. Absent Facebook's collaboration with Chinese ad resellers (Compl. ¶¶ 41-45), deceptive Chinese advertisers would be unable to display deceptive ads to Facebook users due to China's firewall. *Id.* ¶¶ 41, 43. Moreover, despite (i) internal studies showing that "*nearly thirty percent (30%)* of ads placed by Chinese advertising clients violated at least one Facebook ad policy" (*id.* ¶ 46), and (ii) Facebook having "been aware of an epidemic of violative ads and scammers operating out of China for years" (*id.* ¶ 53), Facebook has invested substantial sums into recruiting and training China-based advertisers. *See id.* ¶¶ 42-45. Facebook's current policy of aggressively recruiting China-based advertisers even though it knows a material percentage of their ads are deceptive continues Facebook's longstanding policy of courting advertisers it knows or should know are scammers. *Id.* ¶¶ 33-37.

Facebook mistakenly argues that Plaintiffs seek to hold Facebook liable based on its algorithm. Br. at 6. Rather, Section 230 immunity does not apply here because the conduct of Facebook detailed in the Complaint makes Facebook "responsible in part" for Deceptive Facebook Ads, and thus triggers the "information content provider" exception under *Roommates*. *See* Compl. ¶ 4 ("Facebook has done *much more* than passively create and maintain a platform on which scammers can brazenly target users with scams . . . Facebook actively solicits, encourages, and assists scammers in numerous ways.").

Citing *Roommates*, Facebook incorrectly argues that the "information content provider" exception does not apply because Facebook does not expressly "require" advertisers to post fraudulent ads and in fact prohibits them from doing so under its ad policies. Br. at 7. But "requiring" actionable content is not the only way to lose immunity under *Roommates*; "encouraging" actionable content (as Facebook does) also deprives a website of immunity. 521 F.3d at 1175 ("The message to website operators is clear. If you *don't encourage* illegal content *or* design your website to *require* users to input illegal content, you will be immune.").

Most critically, Facebook has never taken enforcement of its ad policies seriously—to the extent that (i) Facebook's ad enforcement mechanisms have long been a running joke among the scammers that

3

regularly circumvent them (Compl. ¶¶ 38, 54), and (ii) multiple ad transparency professionals have concluded that Facebook prioritizes revenue over user safety.  Compl. ¶ 52. As per internal Facebook documents, Facebook's agents instruct workers tasked with ad enforcement "to ***ignore hacked accounts and other violations as long as 'Facebook gets paid' for ads through a valid payment method***." *Id.* ¶ 51 (emphasis in original). Likewise, sources inside Facebook with knowledge of its ad enforcement policies have indicated that the sense among individuals monitoring China-based ads is to "***look the other way***" because "***We want China revenue***." *Id.* ¶ 53 (emphasis in original). And even as Facebook banned certain accounts, its salespeople encouraged the scammers that opened them to "come to their meetups and parties and . . . buy more ads." *Id.*  ¶ 39.

The experience of Plaintiff Christopher Calise is illustrative. Compl. ¶¶ 85-86. In November 2020, Mr. Calise told Facebook about a deceptive ad published by an entity known as Miuxo. Facebook agreed that the ad violated its Ad Policies and claimed to have removed it. Yet, according to Facebook's online ad library, Miuxo was able to launch a new Facebook ad promoting another engine assembly kit in December 2020—*just a month later*—under the name "Miuxo-shop" that scammed additional Facebook users. *Id.* ¶ 85. If evading Facebook's detection systems is as simple as changing an account name from "Miuxo" to "Miuxo-shop," then Facebook cannot credibly claim it strictly enforces its ad policies.

All the Ninth Circuit cases cited by Facebook are distinguishable since none involved plaintiffs that (like here) alleged with particularity how the defendant was responsible in part for illegal content:

- In *Kimzey v. Yelp! Inc.*, a plaintiff upset about negative reviews on Yelp's website *failed* to plead any facts plausibly suggesting that Yelp was responsible, *even in part*, for the actionable content. *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269 (9th Cir. 2016).

- In *Caraccioli v. Facebook, Inc.,* the Ninth Circuit held that the "information content provider" exception was *not* triggered when plaintiff alleged *only* that Facebook reviewed private images and videos that the plaintiff found personally offensive and declined to remove them. *Caraccioli v. Facebook, Inc.,* 700 F. App'x 588, 590 (9th Cir. 2017).

- In *Dyroff v. Ultimate Software Grp., Inc.*, a plaintiff seeking to hold the defendant liable for the death of her son from drugs sold on defendant's website did *not* adequately plead that the defendant colluded with the drug dealers. *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1099 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761, 206 L. Ed. 2d 936 (2020).

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 4:21-cv-06186 JSW

- In *Fyk v. Facebook*, *Inc*., a plaintiff upset that Facebook had blocked or removed content from his Facebook pages did *not* identify how Facebook materially contributed to *any* content. *Fyk v. Facebook*, *Inc*., 808 F. App'x 597, 598 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1067, 208 L. Ed. 2d 530 (2021).

- In *Gonzalez v. Google LLC*, the families of victims of ISIS terrorist attacks did *not* adequately plead that Google encouraged ISIS and instead based their allegations solely on the operation of Google's algorithm. *Gonzalez v. Google LLC,* 2 F.4th 871, 895-96 (9th Cir. 2021).[2]

Plaintiffs' particularized allegations that Facebook knowingly solicits, encourages, and assists advertisers it knows or should know are scammers go far beyond the allegations in these cases. This Court should also consider that many of the cases that previously granted immunity under Section 230 are under criticism for being decided incorrectly. *See* Exhibits 1 and 2 to the Declaration of Mark S. Reich ("Reich Decl.") (Amicus Briefs filed in *Jane Doe, Petitioner v. Facebook, Inc*., No. 21-459 (Oct. 15, 2021) and *Henderson, et al., Plaintiffs-Appellants, v. The Source For Public Data, L.P., et al., Defendants-Appellees*, No. 21-1678 (4th Cir. Oct. 14, 2021)). Part of the issue caused by decisions that sustain Section 230 immunity beyond Congress's original intent is the increased boldness by companies like Facebook to use Section 230 to shield themselves from all manner of misconduct occurring on their platforms, *see* Reich Decl. Exhs. 5.5, 5.8, or act brazenly believing that they are immune, *see id.* Exhs. 5.1-5.4, 5.6-5.7, 5.9-5.10, a perverse dynamic that has prompted Congress to consider action. *Id.* Exhs. 3-4.

At a minimum, Section 230 does not immunize defendants that breach enforceable promises since contract liability derives not from publishing conduct, but from "manifest[ing] an intention" to be legally obligated to do something. *Barnes*, 570 F.3d at 1107; *see also In re Zoom Video Commc'ns Inc. Priv. Litig*., 525 F. Supp. 3d 1017, 1034 (N.D. Cal. 2021); *Daniels v. Alphabet Inc*., 2021 WL 1222166, at *12

---

[2] The Circuit Court decisions cited by Facebook that are outside the Ninth Circuit do not control here, and none involve analogous fact patterns that would make them at all persuasive. Further, Facebook's reliance on various lower court decisions in this District is also misplaced. For example, in *Goddard v. Google, Inc*., the plaintiff, unlike here, provided "*no details*" to substantiate its allegation that Google assisted third parties engaged in misconduct. *Goddard v. Google, Inc*., 2008 WL 5245490, at *4 n.3 (N.D. Cal. Dec. 17, 2008). Similarly, unlike the Plaintiffs here, the plaintiffs in *Vargas v. Facebook, Inc*., did not allege anything more than Facebook's deployment of an ad targeting tool. *Vargas v. Facebook, Inc*., 2021 WL 3709083, at *4-5 (N.D. Cal. Aug. 20, 2021).

(N.D. Cal. Mar. 31, 2021). As discussed below in Sections B.2 and B.3, Plaintiffs have viable breach of contract claims.

### B.    All of Plaintiffs' Claims Are Viable

#### 1.    Plaintiffs Adequately Allege a Negligence Claim

The economic loss rule does not bar Plaintiffs' negligence claim because the economic loss rule does not apply where a "special relationship" exists between the parties. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1131 (N.D. Cal. 2018) (citing *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 157 Cal.Rptr. 407, 598 P.2d 60 (1979)).  Facebook argues "that a special relationship cannot be found" when the parties are in "privity of contract." Br. at 9. However, California courts have held that the *J'aire* exception applies if a contract is for services. *Yahoo*, 313 F. Supp. 3d at 1131–32; *see also Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 654-58 (N.D. Cal. 2020).

Here, Plaintiffs allege a contract for services and a special relationship. Compl. ¶¶ 105, 111. Facebook's contract is designated "Terms of Service," as Facebook concedes. Br. at 2 & n.1; *see also In re Facebook Privacy Litig.*, 192 F. Supp. 3d 1053, 1055 (N.D. Cal. 2016) ("Facebook provides social networking services"). Plaintiffs also meet the six factors identified in *J'Aire* to create a "special relationship." *Yahoo*, 313 F. Supp. 3d at 1132.

*First*, the challenged transactions (i.e., deceptive ads) were intended to affect Class members since Facebook displayed those ads to them and a significant portion of all its revenue is derived from ad sales. Compl. ¶ 21 (*J'Aire* Factor #1). *Second*, the harm to Plaintiffs from deceptive ads was a foreseeable result of the placement of deceptive ads for which Facebook was responsible in part. Compl. ¶ 105 (*J'Aire* Factors #2 and #3). *Third*, there is a close, if not direct, connection between Facebook's responsibility in part for Deceptive Facebook Ads and the harm inflicted on Facebook users by those ads (*i.e.*, Facebook's breach directly led to the harm suffered by users). Compl. ¶¶ 106-109 (*J'Aire* Factor #4). *Fourth*, Facebook's conduct is morally blameworthy.  It has the investigative, technical, and financial resources to effectively end, or sharply diminish, the volume of Deceptive Facebook Ads but refuses to do so due to the negative impact that would have on revenue. Compl. ¶¶ 61-65 (*J'Aire* Factor #5). *Fifth*, from a policy standpoint, shielding Facebook from its duty to Class members to protect them from Deceptive

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 4:21-cv-06186 JSW

Facebook Advertisers would permit Facebook to continue prioritizing the revenue it collects from Deceptive Facebook Ads over preventing the harm such ads cause Class members. Compl. ¶¶ 63-65 (*J'Aire* Factor #6); *see Yahoo*, 313 F. Supp. 3d at 1132; *Huynh*, 508 F. Supp. 3d at 654-658.

Facebook also argues, without citing any authority, that Plaintiffs have failed to allege that Facebook breached any duty owed to Plaintiffs. Br. at 9-10. That is incorrect. *See* Compl. ¶ 105 (alleging why Facebook owes Class members a duty of care); *see also Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019) (plaintiffs adequately alleged Facebook owed them a duty of care).

## 2.    Plaintiffs Adequately Allege a Breach of Contract Claim

Judge Chhabria of this District has held that Facebook's online terms may give rise to a breach of contract claim. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 801 (N.D. Cal. 2019). Yet Facebook argues here that its online terms do not create affirmative obligations on Facebook. Br. at 10. The cases cited by Facebook all rely on *Young v. Facebook, Inc.*, 2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) for that proposition. *See, e.g., King v. Facebook, Inc.*, 2019 WL 6493968, at *2 (N.D. Cal. Dec. 3, 2019) (citing *Young* and *Caraccioli*, which cites *Young*).

*Young*, however, does not stand for such a sweeping proposition. Rather, *Young* merely observed that the plaintiff in that case had failed to identify a provision that Facebook breached. 2010 WL 4269304, at *3. The Court further held that the provisions the plaintiff had cited only placed restrictions on users' behavior but did not create affirmative obligations on Facebook. *Id.* But *Young* never held that the Terms of Service ("TOS") imposes no obligations on Facebook whatsoever. Indeed, were it the case that the TOS does not impose any obligations on Facebook, the entire TOS—including the Limitation of Liability ("LOL") clause (*see* discussion in Section B.3 below)—would be void for lack of mutuality of obligation. *See Lantis Laser, Inc. v. Ice Cold Stocks, LLC*, 2008 WL 11338191, at *2 (C.D. Cal. Sept. 23, 2008); *Kowal v. Day*, 20 Cal. App. 3d 720, 724, 98 Cal. Rptr. 118, 120 (Ct. App. 1971).

Here, Plaintiffs have identified the provisions in the TOS that Facebook has breached. Facebook promised "we ***will*** take appropriate action" where we "detect misuse of our Products [or] harmful conducts towards others." Compl. ¶¶ 28, 113.  It also told users that it takes proactive steps – "advanced technical systems" and "automated systems" – to detect misuse and protects its users. *Id.*  ¶¶ 28, 113-14.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 4:21-cv-06186 JSW

It further assured users that in "an effort to prevent fraudulent activity that can harm people or businesses, *we remove* content that purposefully deceives, willfully misrepresents or otherwise defrauds or exploits others for money or property." *Id.* ¶¶ 30, 115. Facebook breached those commitments when it instructed workers tasked with ad enforcement "to *ignore hacked accounts* and other violations" (*id.* ¶ 51) and created the sense among individuals tasked with monitoring China-based ads to "*look the other way*" because "*We want China revenue.*" *Id.* ¶ 53. And as the experience of Mr. Calise illustrates (Compl. ¶¶ 85-86), even when Facebook bans certain Chinese advertisers, they "return to the platform by setting up new companies and creating new Facebook ads accounts." *Id.* ¶ 54. Thus, while Facebook may have "dedicated teams" (Br. at 11), they are—contrary to what Facebook promises—utterly ineffective. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 633 (N.D. Cal. 2021) (a website breaches its online terms when it makes commitments and then breaks them).

Finally, Facebook mistakenly contends that Plaintiffs fail to allege how Facebook's breaches caused their damages. Br. at 11. As set forth above, Facebook breached provisions of the TOS when it failed to adequately enforce its Ad Policies against China-based scammers. These breaches caused Plaintiffs to be victimized by deceptive ads that would not have been displayed to them but for Facebook's breaches. Compl. ¶¶ 78 (alleging Ms. Groschen was defrauded by a China-based scammer); 87 (alleging Mr. Calise was defrauded by a Hong Kong-based scammer); *see also infra* § III.B.5.b.

### 3.    The LOL Clause Does Not Bar Plaintiffs' Claims[3]

As noted, if the Court accepts Facebook's argument that the TOS does not impose any obligations on Facebook, then the entire TOS, including the LOL Clause, would be unenforceable for lack of mutuality of obligation. Assuming the LOL Clause is enforceable, its plain language governs. *Coremetrics, Inc. v. Atomic Park.com, LLC*, 2005 WL 3310093, at \*4 (N.D. Cal. Dec. 7, 2005). If there are any ambiguities in the LOL Clause, however, they must be resolved against Facebook as the party seeking to limit its liability. *Rodman v. Safeway Inc.*, 125 F. Supp. 3d 922, 928 (N.D. Cal. 2015), *aff'd*, 694 F. App'x 612 (9th Cir. 2017).

---

[3] Facebook does not argue that the LOL Clause bars Plaintiff's UCL claim, which seeks only injunctive relief, and not restitution (*see* Section 5 below). Facebook also does not argue that the LOL Clause bars disgorgement as a remedy for Plaintiff's unjust enrichment claim.

### a.    Negligence Claim

As per Judge Alsup's ruling in *Bass*, *supra*, the LOL Clause in the TOS cannot exculpate Facebook from damages for negligence since (i) it does not mention negligence at all, let alone unequivocally preclude liability for negligence, and (ii) in paragraph 106(a)-(f) of the Complaint, Plaintiffs allege an active breach of Facebook's duty of care to its users through affirmative conduct. 394 F. Supp. 3d at 1038 (exculpation clause that does not mention negligence does not shield a party for active negligence such as an affirmative acts or failure to perform specific duties).

To the extent it purports to exculpate negligence, the LOL Clause would also be invalid under Section 1668 of the California Civil Code and *Tunkl v. Regents of Univ. of Cal.*, 60 Cal. 2d 92, 383 P.2d 441 (1963).  In *Tunkl*, the California Supreme Court held that exculpatory clauses relieving a party of its own negligence are invalid under Section 1668 where the contract "affects the public interest." 383 P.2d at 442-44. Here, Facebook's service meets all of the factors itemized in *Tunkl* for characterizing a business as affecting the public interest (*id.* at 444-47), which renders the LOL Clause unenforceable under Section 1668 to the extent it purports to exculpate Facebook's negligence.[4]

### b.    Breach of Contract Claims

When an enforceable limitation of liability clause specifies a cap on damages, courts enforce the cap; they do *not* extinguish liability for breach of contract altogether. *See, e.g., Simulados Software, Ltd. v. Photon Infotech Priv., Ltd.*, 771 F. App'x 732, 734 (9th Cir. 2019) (capping recovery at $18,848); *TSI*

---

[4] *First*, many politicians and academics—as well as Mark Zuckerberg himself— have characterized Facebook as a public utility (Compl. ¶ 20), rendering it suitable for public regulation. *Second*, Facebook is performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. *Id*. *Third*, Facebook holds itself out as willing to perform its service for any members of the public who seek it; to that end, Facebook does not charge for its services. *Id.* ¶ 21. *Fourth*, as a result of the essential nature of Facebook's service, Facebook possesses a decisive advantage of bargaining strength against any member of the public who seeks to use its service. *Id.* ¶¶ 20-21 (Facebook is a corporate behemoth, reporting 2.85 billion monthly active users and over $85 billion in annual revenue in 2020). *Fifth*, in exercising superior bargaining power, Facebook confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a user may pay additional reasonable fees and obtain protection against negligence. *See Bass*, 394 F. Supp. 3d at 1038 (Facebook's TOS are an adhesion contract). *Sixth*, because of the LOL Clause, when using Facebook's service, users subject themselves to the risk of carelessness of Facebook or its agents. Compl. ¶ 105.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 4:21-cv-06186 JSW

*USA LLC v. Uber Techs., Inc.*, 2020 WL 5257873, at *5 (N.D. Cal. Sept. 3, 2020) (capping at $200,000). Here, if the Court construes the LOL Clause as applicable to damages for breach of contract, that would not extinguish Facebook's liability for breach of contract, but cap all damages for its breach of contract liability at $100 per user per breach (i.e., the "*greater of* $100 *or* the amount you have paid us in the past twelve months" (https://www.facebook.com/terms.php; Section 4.3, ¶ 2), which is $100 since Facebook users do not pay anything for the service). *See Rodman*, 125 F. Supp. 3d at 930 ("…class members who used Safeway.com multiple times during the class period have *multiple claims for breach of contract*.").

Judge Alsup's decision in *Bass*, *supra* is not to the contrary. In *Bass*, Judge Alsup held that "the only way the breach of contract claims may move forward is if the limitation-of-liability clause is deemed unconscionable." *Bass*, 394 F. Supp. 3d at 1037. In support of that proposition, Judge Alsup cited *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 147 Cal. Rptr. 3d 634 (2012). *Id.* But Judge Alsup misread *Food Safety* since that decision did not *extinguish* the breach of contract claim under an enforceable limitation of liability clause. Rather, that decision held that the party could not recover because the limitation of liability clause *capped* liability at "*the lesser of*" (a) direct damages arising out of a certain study performed for the party, or (b) the total amount paid by the party for the study. *Food Safety*, 209 Cal. App. 4th at 1127, 147 Cal. Rptr. 3d at 643. Since the party had not paid anything for the study, the "lesser of" was $0, and the party was not entitled to any recovery. *Id.* Here, in contrast, the LOL Clause provides that each Class Member may recover up to $100 per breach, and therefore the breach of contract claim may proceed subject to that cap.

### 4. Plaintiffs Adequately Allege a Breach of the Covenant of Good Faith and Fair Dealing

Plaintiffs' claim for breach of the covenant of good faith and fair dealing is not duplicative. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 802 (N.D. Cal. 2019) ("Indeed, the case for breach of the implied covenant is stronger [than breach of contract claims], because even if Facebook were, at a later stage in the litigation, able to identify a technical argument for why it did not *quite* violate the literal terms of its contract with its users, it would be difficult to conclude (if the

factual allegations in the complaint are true) that Facebook did not frustrate the purposes of the contract, and intentionally so.").[5]

### 5.    Plaintiffs' UCL Claim for Injunctive Relief Against Future Harm is Viable[6]

#### a.    *Sonner* Does Not Bar UCL Claims for Injunctive Relief

Facebook asks the Court to dismiss Plaintiffs' UCL claim for injunctive relief on the ground that Plaintiffs have an adequate remedy at law. Br. at 12-13 (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020)). But having *any* remedy at law does not foreclose equitable relief in federal court. *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021). Instead, the alternative legal remedy must be "plain, adequate and complete." *Sonner*, 971 F.3d at 840.

Plaintiffs' UCL claim is the only claim seeking injunctive relief. The legal remedies sought for Plaintiffs' other claims are not adequate alternatives to injunctive relief because they only address *past* harm, not *future* harm, and thus cannot stop Facebook from continuing to actively solicit, assist and encourage scammers that publish deceptive ads; only an injunction can accomplish that. *See Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021); *Zeiger*, 526 F. Supp. 3d at 687.

The distinction between remedies addressing *past* harm and injunctive relief addressing *future* harm is validated by *Sonner* itself, which limited its holding to "*securing equitable restitution* for *past harm* under the UCL and CLRA" (971 F.3d. at 844) and noted that "injunctive relief is *not* at issue." *Id*. at 842. Other courts in this District that have dismissed UCL claims for injunctive relief under *Sonner* have often failed to analyze "the adequacy of monetary damages with respect to only future harm," and instead "lump their analyses of the adequacy of such legal remedy as it pertains to all harm (past and

---

[5] The cases relied on by Defendant do not support the dismissal of a covenant claim where the complaint alleges more than a "mere contract breach" in support of the breach of covenant count. Br. at 12, *Shaterian v. Wells Fargo Bank, N.A.,* 829 F. Supp. 2d 873, 884 (N.D. Cal. 2011).  Plaintiffs have independently alleged the covenant breach, *see* Compl. ¶¶ 118-142, which included that "Facebook engaged in conduct that frustrated and interfered with the rights" of its users. Compl ¶ 122; *see also Shaterian*, 829 F. Supp. 2d at 884 (the covenant breach is not superfluous "where a plaintiff alleges that the defendant acted in bad faith to frustrate the contract's actual benefits").

[6] Facebook recasts Plaintiffs' UCL claim as seeking restitution. (Br. at 13). The UCL claim, however, only seeks injunctive relief. (Compl. ¶ 132).  Facebook's argument as to restitution under the UCL is therefore irrelevant. Br. at 14.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 4:21-cv-06186 JSW

future) without differentiation." *IntegrityMessageBoards.com v. Facebook, Inc.*, 2020 WL 6544411, at *8 (N.D. Cal. Nov. 6, 2020).

Defendant seeks to rely on *Gardiner v. Walmart Inc.*, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) (Br. at 13) which dismissed plaintiff's UCL claim for injunctive relief because it found, *inter alia*, the plaintiff did not demonstrate that the potential harm caused by a failure to adopt industry-standard safeguards could not be remedied by monetary damages. *Gardiner*, 2021 WL 2520103 at *7 (addressing the prevention of future harm in the context of the facts before it); *see also Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 662 (N.D. Cal. 2020) (potential harm might be remedied by money damages). *Gardiner and Hyunh*, however, are distinguishable. Here, Plaintiffs allege with particularity why future harm cannot be remedied with money damages, which is that Facebook remains economically motivated to continue soliciting, encouraging, and assisting scammers at the expense of its users because cracking down on scammers would jeopardize the billions of dollars per year in revenue that Facebook collects from scam ads. Compl. ¶¶ 7, 61-65. As Tim Hwang, the author of a book on ad fraud, told Buzzfeed, "I think the profit motive definitely makes it harder for Facebook to take real steps here." *Id.* at ¶ 7. Indeed, based on Facebook's own internal study, Facebook generated nearly $2.6 billion in revenue from Chinese ads that violated its ad policies in 2020 alone. *Id.* at ¶ 46. Therefore, unlike in *Gardiner* and *Huynh*, Plaintiffs here adequately plead that, absent injunctive relief, money damages cannot remedy Facebook's ongoing misconduct.

Finally, Facebook faults Plaintiffs for not pleading the phrase "inadequate remedy at law." Br. at 13. There is no need to do so here where, as noted, the Complaint shows damages will not be adequate to deter Facebook's continued misconduct. But if the Court disagrees, Plaintiffs should be allowed to amend to add that phrase.

### b.    Plaintiffs Have Standing to Assert a UCL Claim for Injunctive Relief

To establish standing under the UCL, a plaintiff must demonstrate that the alleged misconduct caused her to personally lose money. *Yahoo*, 313 F. Supp. 3d at 1129. As Facebook concedes (Br. at 13), the phrase "as a result of" in Section 17204 of the UCL should be interpreted in its "*plain and ordinary*

*sense*" to mean "caused by," and thus requires showing a causal connection between the misconduct and the harm suffered. *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326, 246 P.3d 877, 887 (2011).

Here, Plaintiffs have alleged a causal connection between Facebook's wrongdoing and the harm they suffered. That is, "but for" Facebook's collaboration with Chinese ad resellers to work around China's firewall, and Facebook's ineffective enforcement of its Ad Policies, China-based scammers would have been unable to display their fraudulent ads to Plaintiffs and millions of other Facebook users. Compl. ¶¶ 41-43, 53-54, 72-75, 78 (alleging Ms. Groschen was defrauded by a China-based scammer); 87 (alleging Mr. Calise was defrauded by a Hong Kong-based scammer). *See Kwikset*, 246 P.3d at 890 (plaintiff pleads causation where alleged it would not have suffered harm but for defendant's misconduct).

Facebook argues that it did not sell products to Plaintiffs or process the transactions that harmed Plaintiffs (Br. at 13) and does "not control what the third-parties [scammers] do or say." Br. at 13-14. First, Facebook clearly controlled scammers' ability to access Facebook's advertising platform. Second, under California law, a plaintiff may recover against a party under the UCL even though the plaintiff did not directly transact with that party. *See Galope v. Deutsche Bank Nat'l Tr. Co.,* 566 F. App'x 552, 553 (9th Cir. 2014) ("Galope has statutory standing to pursue these claims because she alleged that she purchased a loan [from a *third*-party] that she would not have otherwise purchased but for the Barclays Defendants' alleged misconduct."); *Allstate Ins. v. Shawa,* 2016 WL 245458, at *5 (Cal. Ct. App. Jan. 20, 2016) ("Numerous courts have permitted recovery under the UCL despite the absence of direct dealings between the parties.") (collecting cases).

Finally, Plaintiffs have standing to pursue injunctive relief under the UCL since they allege that they continue to regularly use Facebook and see Facebook ads, and are, therefore, vulnerable to future scams. Compl. ¶¶ 79, 88; *see Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018); *Tyler Barnett PR, LLC v. Facebook Inc.*, 2018 WL 2974695, at *2 (N.D. Cal. June 1, 2018).

### 6.    Plaintiffs Adequately Allege An Unjust Enrichment Claim

The Ninth Circuit has recognized that, under California law, a plaintiff may pursue a claim for unjust enrichment as an independent, standalone cause of action. *Bruton v. Gerber Prod. Co.*, 703 F.

App'x 468 (9th Cir. 2017); *see also Brooks*, 2021 WL 3621837, at *11. California law also permits the Plaintiffs to plead claims for breach of contract and unjust enrichment in the alternative. *Facebook*, 402 F. Supp. 3d at 803.

In opposition to the latter principle, Facebook cites *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151 (9th Cir. 1996) (Br. at 15), but as subsequent decisions have noted, *Paracor* was decided at the summary judgment stage, and at the pleading stage—when a court has yet to determine what remedies are available—it would be improper to exclude the quasi contract claim of unjust enrichment on the basis that it cannot co-exist alongside a contract remedy. *Professor Brainstorm, LLC v. Aronowitz*, 2009 WL 10675891, at *3 (C.D. Cal. Dec. 8, 2009); *accord United States ex rel. Begole v. Trenkle*, 2010 WL 11596170, at *11 (C.D. Cal. July 16, 2010). That principle is especially apropos here where, as noted, Facebook's position that the TOS does not create any affirmative obligations on Facebook may render the TOS unenforceable due to lack of mutuality. Moreover, Rules 8(a)(3) and 8(d)(2)-(3) of the Federal Rules of Civil Procedure permit parties to plead in the alternative (even if the alternatives are inconsistent). *Begole*, 2010 WL 11596170, at *11.

Disgorgement is available as a remedy for unjust enrichment under California law since, as Facebook concedes (Br. at 15), restitution is available as a remedy for unjust enrichment, and "'[d]isgorgement' is simply a form of '[r]estitution measured by the defendant's wrongful gain' rather than by the plaintiff's loss..." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 663 (9th Cir.), *cert. denied*, 140 S. Ct. 223 (2019) (cleaned up)); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021) ("California law recognizes a right to disgorgement of profits resulting from unjust enrichment…"); *accord Lundy v. Facebook, Inc.*, 2021 WL 4503071, at *2 (N.D. Cal. Sept. 30, 2021).

Facebook asks the Court to dismiss Plaintiffs' unjust enrichment claim under *Sonner* because the disgorgement remedy they seek for that claim is purportedly equitable, and Plaintiffs allege adequate remedies at law. Br. at 12-13. That argument fails because the disgorgement remedy that Plaintiffs seek for their unjust enrichment claim is legal (not equitable) in nature, and therefore *Sonner* does not apply.

When a litigant demands a jury trial in federal court, federal law controls the characterization of

14

the remedy sought as legal or equitable when determining the litigant's Constitutional right to a jury trial. *See Simler v. Conner*, 372 U.S. 221, 222 (1963); *accord In re Cty. of Orange*, 784 F.3d 520, 528, 530–31 (9th Cir. 2015). When determining whether a remedy is legal or equitable, federal courts consider the "substance of the remedy sought rather than the label placed on that remedy." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 663 (9th Cir.), *cert. denied*, 140 S. Ct. 223 (2019)).

The Supreme Court has held that restitution is a *legal* remedy under federal law where a plaintiff seeks a judgment imposing liability upon a defendant to pay a sum of money and is *not* an *equitable* remedy unless the plaintiff seeks to recover money that can "*clearly* be traced to particular funds or property in the defendant's possession." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002); *see also Depot*, 915 F.3d at 661 ("A plaintiff seeks 'restitution *at law*' when the plaintiff… seeks to 'impose personal liability on the defendant' as a means of 'recovering money to pay for some benefit the defendant… received from [the plaintiff]'").

The Ninth Circuit has held that "[d]isgorgement is simply a form of [r]estitution measured by the defendant's wrongful gain rather than by the plaintiff's loss." *Depot*, 915 F.3d at 663 (internal quotations omitted). Therefore, disgorgement is a *legal* remedy when it seeks a "money judgment equivalent in value to ill-gotten assets that were dissipated on non-traceable items." *Id*. Here, Plaintiffs' unjust enrichment claim does not seek to recover money that can be clearly traced to specific funds in Facebook's possession nor do Plaintiffs claim an ownership interest in those funds. Therefore, under the Ninth Circuit's decision in *Depot*, the nonrestitutionary disgorgement remedy that Plaintiffs seek on their unjust enrichment claim is legal in nature, and *Sonner* does not apply.[7]

## IV.    CONCLUSION

For all the foregoing reasons, Facebook's motion to dismiss should be denied. In the event that the Court believes that any of Plaintiffs' claims are inadequately pled, Plaintiffs respectfully seek leave to amend the complaint.

---

[7] In contrast, in *Sonner*, the plaintiff conceded that her UCL claim for restitution was equitable in order to try her case before a judge rather than a jury. 971 F.3d at 839, n.2. Plaintiffs make no such concession here, but instead contend their unjust enrichment claim is a legal claim entitled to be tried by a jury.

15

DATED: December 6, 2021                    Respectfully submitted,

By: */s/ Mark S. Reich*
LEVI & KORSINSKY, LLP
Mark S. Reich (admitted *pro hac vice*)
mreich@zlk.com
Courtney E. Maccarone (admitted *pro hac vice*)
cmaccarone@zlk.com
55 Broadway, 10th Floor
New York, NY 10006
Telephone: 212-363-7500
Facsimile: 212-363-7171

Adam M. Apton (SBN 316506)
aapton@zlk.com
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: 415-373-1671
Facsimile: 212-363-7171

16