GIBSON, DUNN & CRUTCHER LLP
ROSEMARIE RING, SBN 220769
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:     415.393.8247
Facsimile:     415.374.8527
rring@gibsondunn.com

CHRISTOPHER CHORBA, SBN 216692
SAMUEL ECKMAN, SBN 308923
JEREMY WEESE, SBN 336180
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:     213.229.7000
Facsimile:     213.229.7520
cchorba@gibsondunn.com
seckman@gibsondunn.com
jweese@gibsondunn.com

*Attorneys for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| CHRISTOPHER CALISE and ANASTASIA GROSCHEN,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | CASE NO. 4:21-CV-06186-JSW<br><br>**REPLY OF DEFENDANT META PLATFORMS, INC. (F/K/A FACEBOOK, INC.) IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Judge: Hon. Jeffrey S. White<br><br>Hearing Date: February 25, 2021 |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1

II.   ARGUMENT ..................................................................................................................... 2

      A.    Section 230 Bars All Of Plaintiffs' Claims.................................................... 2

      B.    Plaintiffs Fail To State A Viable Claim For Relief........................................ 7

            1.    Plaintiffs Cannot Allege A Viable Negligence Claim. .................................... 7

            2.    Plaintiffs' Allegations Do Not Establish A Breach Of Contract....................... 9

            3.    There Is No Basis For Plaintiffs' Claim For Breach Of The Implied
                  Covenant Of Good Faith And Fair Dealing. .................................................. 12

            4.    The UCL Claim Fails As A Matter Of Law..................................................... 13

            5.    Plaintiffs Cannot Pursue The Equitable Remedy Of Unjust Enrichment. ...... 14

III.  CONCLUSION ................................................................................................................ 15

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aas v. Super. Ct.*,
24 Cal. 4th 627 (2000) .........................................................................................................7, 8

*Allstate Ins. v. Shawa*,
2016 WL 245458 (Cal. Ct. App. Jan. 20, 2016) (unpublished) ......................................................14

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009).........................................................2, 6

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ....................................................................................9, 10

*Benefiel v. Exxon Corp.*,
959 F.2d 805 (9th Cir. 1992)..............................................................................................................9

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*,
241 F. Supp. 3d 1084 (C.D. Cal. 2017)............................................................................................8

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016), *aff'd*,
700 F. App'x 588 (9th Cir. 2017) ...................................................................................................10

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
222 Cal. App. 3d 1371 (1990)........................................................................................................13

*Daniels v. Alphabet Inc.*,
20-cv-04687-VKD, 2021 WL 1222166 (N.D. Cal. Mar. 31, 2021) .................................................6

*Doe v. Internet Brands, Inc.*,
824 F.3d 846 (9th Cir. 2016)............................................................................................................2

*Drake v. Toyota Motor Corp.*,
2021 WL 2024860 (C.D. Cal. May 17, 2021) ...............................................................................15

*Dyroff v. Ultimate Software Grp., Inc.*,
934 F.3d 1093 (9th Cir. 2019)......................................................................................................2, 4

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
No. 18-MD-2843-VC, 402 F. Supp. 3d 767 (N.D. Cal. 2019) .......................................................11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)..........................................................................................................13

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
521 F.3d 1157 (9th Cir. 2008)...................................................................................2, 3, 4, 5, 6, 7

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

*Fed. Agency of News LLC v. Facebook, Inc.*,
  432 F. Supp. 3d 1107 (N.D. Cal. 2020) ...................................................................................6

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
  209 Cal. App. 4th 1118 (2012).............................................................................................10

*Force v. Facebook, Inc.*,
  934 F.3d 53 (2d Cir. 2019).....................................................................................................7

*Galope v. Deutsche Bank Nat'l Trust Co.*,
  2012 WL 12887642 (C.D. Cal. Oct. 11, 2012) ....................................................................14

*Galope v. Deutsche Bank Nat'l Trust Co.*,
  566 F. App'x 552 (9th Cir. 2014) .........................................................................................14

*Gardiner v. Walmart Inc.*,
  No. 20-4618-JSW, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021)....................................8, 10, 14

*Goddard v. Google, Inc.*,
  No. 08-2738-JF, 2008 WL 5245490 (N.D. Cal. 2008) .................................................5, 6, 7

*Gonzalez v. Google LLC*,
  2 F.4th 871 (9th Cir. 2021).....................................................................................................4

*In re Google Assistant Priv. Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) ..................................................................................11

*In re Hard Drive Suspension Assemblies Antitrust Litig.*,
  No. 19-MD-2918-MMC, 2020 WL 5074041 (N.D. Cal. 2020) ...........................................12

*Huynh v. Quora*,
  508 F. Supp. 3d 633 (N.D. Cal. 2020) ..................................................................................13

*Huynh v. Quora*,
  No. 18-CV-07597-BLF, 2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ...........................15

*J'Aire Corp. v. Gregory*,
  24 Cal. 3d 799 (1979) ....................................................................................................7, 8, 9

*Kerkorian v. Samsung Elecs. Am., Inc.*,
  2019 WL 6918293 (E.D. Cal. Dec. 19, 2019).......................................................................15

*Kimzey v. Yelp! Inc.*,
  836 F.3d 1263 (9th Cir. 2016)...............................................................................................6

*King v. Facebook, Inc.*,
  No. 19-1987-WHO, 2019 WL 6493968 (N.D. Cal. 2019) ...................................................10

iii

Gibson, Dunn & Crutcher LLP

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

*Lewis v. Google LLC*,
  461 F. Supp. 3d 938 (N.D. Cal. 2020) ..............................................................................6

*In re MacBook Keyboard Litig.*,
  No. 18-2813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) .................................14

*Nam Nguyen v. Ford Motor Co.*,
  No. 19-5541-EMC, 2020 WL 416841 (N.D. Cal. Jan. 27, 2020)...............................8, 9

*North Am. Chem. Co. v. Super. Ct.*,
  59 Cal. App. 4th 764 (1997)............................................................................................7

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
  96 F.3d 1151 (9th Cir. 1996).....................................................................................14, 15

*Ray v. BlueHippo Funding, LLC*,
  No. 06-1807-JSW, 2008 WL 1995113 (N.D. Cal. May 6, 2008) ....................................8

*Rejects Skate Magazine, Inc. v. Acutrack, Inc.*,
  No. 06-2590-CW, 2006 WL 2458759 (N.D. Cal. Aug. 22, 2006)...................................8

*Ripple Labs Inc. v. YouTube LLC*,
  No. 20-2747-LB, 2020 WL 6822891 (N.D. Cal. 2020)...................................................5

*Shaterian v. Wells Fargo Bank, N.A.*,
  829 F. Supp. 2d 873 (N.D. Cal. 2011) ..........................................................................13

*Simler v. Conner*,
  372 U.S. 221 (1963)........................................................................................................15

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020)....................................................................................13, 15

*Tunkl v. Regents of Univ. of Cal.*,
  60 Cal. 2d 92 (1963) .......................................................................................................10

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
  No. 16-MD-2752-LHK, 313 F. Supp. 3d 1113 (N.D. Cal. 2018).....................................7

*Young v. Facebook, Inc.*,
  No. 10-3579-JF, 2010 WL 4269304 (N.D. Cal. 2010) .............................................10, 11

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
  525 F. Supp. 3d 1017 (N.D. Cal. 2021) ..................................................................6, 8, 9

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 4:21-CV-06186-JSW

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

**STATUTES**

47 U.S.C. § 230(c)(1) ............................................................................................................................2

Gibson, Dunn &
Crutcher LLP

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs seek to impose liability on Defendant Meta Platforms, Inc. ("Meta") (formerly Facebook, Inc.) based on allegedly deceptive advertising that third parties posted on Facebook.  But established Ninth Circuit precedent squarely bars all of Plaintiffs' claims.  Decades ago, in an effort to facilitate the free flow of information across the burgeoning Internet, Congress enacted Section 230 of the Communications Decency Act to prevent interactive computer service providers from being hauled into court and held liable for content that third parties post on their sites.

Plaintiffs attempt to evade Section 230 by suggesting the advertising at issue here is not really third-party content but Meta's own content, because Meta has allegedly marketed itself and solicited businesses to advertise on its platform.  But the Ninth Circuit has squarely rejected Plaintiffs' theory.  This binding precedent holds that encouraging businesses to place ads on the Facebook platform does not transform Meta into a content creator with respect to that third-party content, and therefore any claims against Meta based on that third-party content are barred by Section 230.

Section 230 aside, Plaintiffs' claims must be dismissed on other grounds as well, and Plaintiffs have not addressed the deficiencies Meta identified in its Motion:  The economic loss rule bars the negligence claim, because Plaintiffs do not allege any physical injury or harm to property, nor do they allege any actionable duty or causation.  The Terms of Service include a limitation on liability that prohibits Plaintiffs' breach-of-contract claim, despite Plaintiffs' attempts to argue it away, and, in any event, Plaintiffs do not identify a single promise that Meta plausibly breached.  The claim for breach of the implied covenant of good faith and fair dealing impermissibly seeks to impose obligations on Meta that not only go beyond the Terms of Service, but expressly contradict them.  The UCL claim fails for lack of standing and the availability of an adequate legal remedy, among other flaws—and Plaintiffs' attempts to argue otherwise contravene binding Ninth Circuit precedent.  And finally, the "unjust enrichment" claim fails for failure to plead lack of an adequate legal remedy and because Plaintiffs have an express contract with Meta that forecloses any quasi-contractual theory or remedy.

Because all of Plaintiffs' claims fail as a matter of law, this Court should dismiss the Complaint.

## II.    ARGUMENT

### A.    Section 230 Bars All Of Plaintiffs' Claims

Section 230 of the Communications Decency Act provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Under this provision, "[i]mmunity from liability exists for '(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.'" *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009)). Congress created this immunity to "protect[ ] websites from liability for material posted on the website by someone else," *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 850 (9th Cir. 2016), and for this reason "close cases … must be resolved in favor of immunity," *Fair Hous. Council of San Fernando Valley v. Roommates.Com*, LLC, 521 F.3d 1157, 1174 (9th Cir. 2008).

Plaintiffs do not dispute that Meta satisfies the first two criteria for Section 230 immunity, or that the ads that form the basis for Plaintiffs' claims were created and posted by third parties. The central dispute is thus whether Meta should be treated as the "information content provider" for the allegedly deceptive ads—even though those ads were created, paid for, and posted by third parties. Plaintiffs argue it should because Meta allegedly solicits business from companies that it has reason to suspect will post deceptive ads and fails to effectively remove deceptive ads once they are posted. Opp. at 2. But this theory is foreclosed by binding Ninth Circuit precedent.

Plaintiffs' contrary argument rests on a mischaracterization of *Roommates*. They argue that, under *Roommates*, an "interactive computer service" like Meta becomes an "information content provider," not by creating or requiring the illegal content, but whenever it solicits third parties such as advertisers to post content. Opp. at 2. Plaintiffs argue that immunity is lost whenever a site "directly participates in developing the *[actionable content]*"—and define "participat[ion]" to include soliciting third-party postings. *Id*. (altered quotation from *Roommates*, 521 F.3d at 1174, emphasis added); *see also id.* (asserting that immunity will be lost where a website "is 'directly involved with developing and enforcing a system that subjects subscribers to *[actionable content]*'" (alteration in original,

2

Gibson, Dunn & Crutcher LLP

emphasis added)).  But Plaintiffs misstate and distort *Roommates*' actual holding:  liability attaches only when the platform contributes to the *illegality* of third party content.  Plaintiffs' interpretation would essentially wipe out Section 230 immunity for any platform that invites third-party postings.

But *Roommates* is not so broad.  That case addressed two theories of liability for third-party content.  The first related to the defendant website providing an empty comment box in which users seeking roommates could freely post descriptions of what they were seeking—allegedly with knowledge that some of those user-created postings would be discriminatory (i.e., by specifying race, gender, family status, etc.).  521 F.3d at 1161.  In this way, the complaint alleged, the website "encourage[d]" those "discriminatory preferences when it g[ave] subscribers a chance to describe themselves." *Id.* at 1174.  The Ninth Circuit held that the platform was protected by Section 230 from liability for any such illegal third-party content, because it came "entirely from subscribers" and was "passively displayed by [Defendant]." *Id.*

The second theory related to the platform's requirement (through use of a drop-down menu) that users actually answer questions using illegal categories to describe their preferences.  The court held that this conduct was not protected, because the website required users to post the illegal content and thus materially contributed to its discriminatory nature.  Under the *Roommates* rule, a service like Meta is not liable simply because it invites or welcomes third-party content that may turn out to be "actionable" as against the poster, but rather loses Section 230 immunity only when it *requires*, or otherwise *contributes directly to*, the illegal nature of the challenged content itself—that is, it materially contributes to *what makes that content illegal*.  In fact, the unaltered text of *Roommates* makes this point clear:

> "[W]e believe that both the immunity for passive conduits and the exception for co-developers must be given their proper scope and, to that end, we interpret the term 'development' as referring not merely to augmenting the content generally, but to materially contributing *to its alleged unlawfulness*.  In other words, a website helps to develop unlawful content, and thus falls within the exception to section 230, if it contributes materially *to the alleged illegality of the conduct*."

*Id.* at 1167–68 (emphases added); *see also id.* at 1174 ("Where it is very clear that the website directly participates in developing *the alleged illegality* … immunity will be lost." (emphasis added)).  In short, "[a] website operator who edits user-created content—such as by correcting spelling, removing

3

Gibson, Dunn &
Crutcher LLP

obscenity or trimming for length—retains his immunity for any illegality in the user-created content, *provided that the edits are unrelated to the illegality*." *Id.* at 1169 (emphasis added).

Applying the proper standard, none of the conduct alleged transforms Meta into a content creator. *First*, Plaintiffs assert that Meta is not entitled to immunity under Section 230 because it "affirmatively solicit[s], assist[s] and encourag[es] advertisers whom it knows or should know are scammers." Opp. at 2. But even if this accusation were true (it is not), Plaintiffs do not explain how this conduct "contributes materially to the alleged illegality of the" content of specific ads in question (*Roommates*, 521 F.3d at 1168)—as opposed to simply hosting a platform where advertisers create and post ads that are served to users and where some ads might turn out to be misleading and others might not. And it is established that simply encouraging engagement with a website (as *all* websites do) cannot take one outside Section 230's protection. *See, e.g.*, *Gonzalez v. Google LLC*, 2 F.4th 871, 895 (9th Cir. 2021) (algorithm that encouraged engagement by mining users' historical actions to send them targeted third-party content did not deprive defendant of Section 230 immunity).

*Dyroff* is directly on point. There, the plaintiff sued the operator of a social networking website (the "Experience Project"), after her son died from illegal narcotics that he purchased from a dealer in a drug-related community on the site. 934 F.3d at 1094–95. According to the complaint, the website was specifically designed to protect user anonymity, in order to "facilitat[e] illegal drug sales" and other illegal activity. *Id.* at 1095. Although the plaintiff expressly alleged that the website's operator "knew or should have known that users sold drugs on the Experience Project, and [that] it supported and protected these drug dealers through its anonymity policies," *id.* at 1099–1100, the Ninth Circuit held that the website operator "[wa]s entitled to immunity under the plain terms of Section 230" because the "[p]laintiff [wa]s unable to allege that [the defendant] materially contributed to the content posted on Experience Project" because she "d[id] not plead that [the defendant] required users to post specific content, made suggestions regarding the content of potential user posts, or contributed to making unlawful or objectionable user posts." *Id.* at 1099; *see also Roommates*, 521 F.3d at 1174 (no liability even where website allegedly "encourage[d] … discriminatory preferences when it g[ave] subscribers a chance to describe themselves"). The same is true here.

*Second*, Plaintiffs contend that Meta is not protected by Section 230 because it "has never taken

Gibson, Dunn &
Crutcher LLP

enforcement of its ad policies seriously," having purportedly failed to remove certain deceptive ads while allowing others to be reposted from only slightly modified accounts, Opp. at 3–4. But once again, even if this charge were true (it is not), it would hardly rise to the level of materially contributing to the alleged illegality of the specific ads at issue. On the contrary, *Roommates* held that decisions regarding whether and when to remove third-party content *cannot* serve as a basis for holding an interactive computer service provider liable for content that it does *not* remove. 521 F.3d at 1163. And Section 230's legislative history confirms that "[o]ne of the specific purposes of this section is to overrule [prior cases] which have treated such providers … as publishers or speakers of content that is not their own *because they have restricted access* to objectionable material." *Id.* at 1163 –64.

Meta cited a number of cases rejecting Plaintiffs' argument that an interactive service provider loses Section 230 immunity if it allegedly fails to enforce its policies against deceptive ads (Mot. at 5). The plaintiff in *Goddard v. Google, Inc.*, No. 08-2738-JF, 2008 WL 5245490 (N.D. Cal. 2008), sought to hold Google liable for fraudulent ads placed by mobile service subscription providers ("MSSPs") through Google Ad Words. *Id.* at *1. Although the "[p]laintiff allege[d] that Google has a Content Policy designed to exclude advertisements by fraudulent MSPPs, but … 'intentionally refuse[d] to enforce its policies,'" *id.*, the court held that these allegations were "insufficient to overcome the 'robust' protections of the CDA," *id.* at *7. Plaintiffs argue that their Complaint contains more details than the pleading at issue in *Goddard* (Opp. at 5 n.2), but they have not alleged (and cannot amend to allege) that Meta was involved "in 'creating or developing'" the alleged illegal content of the ads. *Id.*

Similarly, in *Ripple Labs Inc. v. YouTube LLC*, No. 20-2747-LB, 2020 WL 6822891 (N.D. Cal. 2020), the plaintiff challenged alleged spoofing videos that impersonated plaintiff and its CEO to sell fraudulent cryptocurrency. *Id.* at *1. The plaintiff "alerted YouTube about the scam" and "[a] Forbes article in November 2019 reported the scam," but YouTube "did not take down the fraudulent channels for days, weeks, or months after notice," and in fact "[n]ew instances of the scam 'continued to appear, often amassing thousands of views and creating more victims by the day.'" *Id.* at *2. Nevertheless, the District Court held that "YouTube has immunity under § 230(c)." *Id.* at *7.

Recognizing their problem, Plaintiffs present amicus briefs filed in ***other*** jurisdictions criticizing the Ninth Circuit's interpretation. Opp. at 5 ("This Court should also consider that many of

Gibson, Dunn & Crutcher LLP

the cases that previously granted immunity under Section 230 are under criticism for being decided incorrectly.") (citing amicus briefs).  But whether amici in *other* cases in *other* jurisdictions agree with Plaintiffs about the scope of Section 230 immunity is beside the point here: on this record, under this Circuit's binding precedent, Section 230 forecloses Plaintiffs' claims.

In a final attempt to escape Section 230, Plaintiffs assert—in a single, conclusory sentence—that Section 230 does not affect their contract claims because "contract liability derives not from publishing conduct, but from 'manifest[ing] an intention' to be legally obligated to do something." Opp. at 5.  But Plaintiffs' "artful skirting" of Section 230, *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016), fails because the law's protection "extends to '*all claims stemming from* [an interactive service provider's] publication of information created by third parties.'" *Goddard*, 2008 WL 5245490, at \*2.  Plaintiffs' contract claim obviously stems from Meta's publication of third-party ads—the Complaint admits as much.  *See, e.g.*, Compl. ¶ 113 ("Facebook materially breached these promises by actively and affirmatively soliciting, encouraging, and assisting Deceptive Facebook Advertisers it knew or should have known were defrauding Facebook users.").  And as Meta noted (Mot. at 6), courts in this District have applied Section 230 to immunize websites from contract claims that attempt to treat the platform as a speaker of third-party content, *see, e.g.*, *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1120 (N.D. Cal. 2020) (breach of contract); *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 955 (N.D. Cal. 2020) (breach of implied covenant of good faith and fair dealing).[1]

In sum, this case falls within the heartland of Section 230.  As the *en banc* Ninth Circuit explained: "The message to website operators is clear: If you don't encourage illegal content, or design your website to require users to input illegal content, you will be immune." *Roommates*, 521 F.3d at 1175.  Plaintiffs do not allege Meta did either of those things.  Their contention that Meta encouraged advertisers to *use* its platform and failed to adequately respond to occasional alleged advertiser misuse

---

[1] Plaintiffs' cases are not to the contrary:  (1) *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099, 1107 (9th Cir. 2009), *as amended* (Sept. 28, 2009), was based on a Yahoo employee's oral promise to plaintiff to "take care of" the content she asked to be removed, and not on defendant's initial decision to leave the content up; (2) the claim in *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1041–42 (N.D. Cal. 2021), also was based on an implied contract, and not an express contract such as the Terms of Service here; and (3) in *Daniels v. Alphabet Inc.*, 20-cv-04687-VKD, 2021 WL 1222166, at \*12 (N.D. Cal. Mar. 31, 2021), the defendant allegedly withheld funds owed under a Partner Agreement, which was wholly separate from defendant's moderation decisions.

Gibson, Dunn & Crutcher LLP

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 4:21-CV-06186-JSW

of the platform is not enough:  "Courts consistently have held that § 230 provides a 'robust' immunity, and that all doubts 'must be resolved in favor of immunity.'"  *Goddard*, 2008 WL 5245490, at *2; *see also Force v. Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019) ("[T]he Circuits are in general agreement that the text of Section 230(c)(1) should be construed broadly in favor of immunity.").  Otherwise, courts risk "cut[ting] the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged—or at least tacitly assented to—the illegality of third parties."  *Roommates*, 521 F.3d at 1174.  Because Plaintiffs have not overcome the immunity afforded by Section 230, their Complaint should be dismissed in its entirety.

**B.      Plaintiffs Fail To State A Viable Claim For Relief**

Even if Section 230 did not require dismissal, Meta's Motion still should be granted because Plaintiffs have failed to allege a plausible claim under for any of their five causes of action.

**1.      *Plaintiffs Cannot Allege A Viable Negligence Claim.***

Plaintiffs do not dispute that the economic loss rule bars negligence claims arising from harms, like those alleged here, that are purely economic and unaccompanied by personal injury or physical damage.  But Plaintiffs insist that "the economic loss rule does not apply where a 'special relationship' exists between the parties."  Opp. at 6 (relying on *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799 (1979))  Although this is sometimes true, Plaintiffs have not alleged facts that would establish that Meta has this type of "special relationship" with the billions of people worldwide who use Facebook.

Plaintiffs first cite *In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-MD-2752-LHK, 313 F. Supp. 3d 1113, 1131–32 (N.D. Cal. 2018), arguing that a "special relationship" exists—despite the parties being in privity of contract—because Meta and Plaintiffs entered into a contract for services.  Opp. at 6.  *In re Yahoo!* relied on California Court of Appeal decisions such as *North Am. Chem. Co. v. Super. Ct.*, 59 Cal. App. 4th 764 (1997).  But the California Supreme Court has questioned the purported distinction between contracts for goods and services that those intermediate appellate decisions attempted to draw.  *See Aas v. Super. Ct.*, 24 Cal. 4th 627, 645 n.11 (2000) (rejecting argument that economic loss rule "does not apply to the negligent performance of *services*, as distinguished from the negligent manufacture of *products*").  Since the decision in *Aas*, courts in this District have been divided on whether the distinction is legally relevant.  *See Nam Nguyen v.*

7

*Ford Motor Co.*, No. 19-5541-EMC, 2020 WL 416841, at *6 (N.D. Cal. 2020) (describing split). This Court should follow decisions rejecting the distinction. *J'Aire* specifically addressed recovery for economic harms if "the parties were ***not*** in contractual privity," and it concluded that the parties' non-contractual—but "special"—relationship permitted a finding of a tort duty—notwithstanding the economic loss rule. 24 Cal. 3d at 804 (emphasis added). Because Plaintiffs and Meta ***are*** in privity, and Plaintiffs merely repackage their breach-of-contract claim as a negligence claim, the general rule that plaintiffs "may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations" should apply. *Aas*, 24 Cal. 4th at 643. Whether the contract is for goods or services is logically irrelevant. *See Rejects Skate Magazine, Inc. v. Acutrack, Inc.*, No. 06-2590-CW, 2006 WL 2458759, at *5 (N.D. Cal. 2006) (noting that the "economic loss rule applies to the negligent performance of services as well as to the negligent manufacture of goods"); *Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1092 (C.D. Cal. 2017) ("Even the most cursory review of *J'Aire's* six-factor test reveals that it was not intended for application to parties in privity.")

Plaintiffs next contend that they "also meet the six factors identified in *J'Aire* to create a 'special relationship.'" Opp. at 6. That is incorrect. As to the first factor—"the extent to which the transaction was intended to affect the plaintiff," *J'Aire*, 24 Cal. 3d at 804—Plaintiff's argument that Meta "displayed [deceptive] ads to them and a significant portion of all its revenue is derived from ad sales," Opp. at 6, is insufficient, because that factor requires that "the transaction at issue was intended to benefit Plaintiff[s] *in a specific way that sets [them] apart from all potential ... customers*," *Gardiner v. Walmart Inc.*, No. 20-4618-JSW, 2021 WL 2520103, at *9 (N.D. Cal. Mar. 5, 2021) (emphasis added), and Plaintiffs do not allege that they were intended to uniquely benefit from purportedly deceptive ads. The second through fifth factors—the foreseeability of harm, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury, and the moral blameworthiness of the conduct—are not met because Meta warned users that it cannot control the actions of third parties and any harm to Plaintiffs by the intervening acts of third-party advertisers. *See Ray v. BlueHippo Funding, LLC*, No. 06-1807-JSW, 2008 WL 1995113, at *6 (N.D. Cal. May 6, 2008) (no duty under *J'Aire* where the injuries to plaintiff were caused by a third party, and not directly by defendant's conduct); *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525

8

Gibson, Dunn &
Crutcher LLP

F. Supp. 3d 1017, 1039 (N.D. Cal. 2021) (because Section 230 forecloses liability for third-party actions, the second through fifth factors weighed against plaintiffs).  And the sixth factor—"the policy of preventing future harm," *J'Aire*, 24 Cal. 3d at 804—does not support a special relationship either.  Although Plaintiffs allege that "shielding Facebook from its duty to Class members to protect them from Deceptive Facebook Advertisers would permit Facebook to continue prioritizing the revenue it collects from Deceptive Facebook Ads over preventing the harm such ads cause Class members," Opp. at 6–7, Meta already has ample incentives to remove deceptive ads to protect its user base, *see In re Zoom Video*, 525 F. Supp. 3d at 1039 (concluding the sixth factor "fails to support a special relationship" where "Zoom has incentives to maintain its reputation and relationship with consumers").

Separate from the economic loss rule, Plaintiffs' negligence claim should be dismissed because Plaintiffs cannot allege breach of any duty or causation.  Plaintiffs cite *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal. 2019), for the proposition that Meta owes users a duty of care, but that case involved protection of users' *personal information*.  The court explained that Facebook owed users a duty of care as to this information because users "plausibly placed trust in Facebook to employ appropriate data security" when they provided it.  *Id*. at 1039.  No court has held that Meta had a duty to shield users from allegedly deceptive content in third-party ads.  And Plaintiffs cannot allege that any purported negligence by Meta caused any harm, because multiple superseding causes break the chain of causation here.  *See, e.g.*, *Benefiel v. Exxon Corp.*, 959 F.2d 805, 807–08 (9th Cir. 1992) (no proximate cause where the actions "did not directly cause any injury to the [plaintiffs]" and the "plaintiffs themselves alleged the existence of at least one intervening act causing" the injury).

### 2.    *Plaintiffs' Allegations Do Not Establish A Breach Of Contract.*

a. <u>The Terms of Service Actually Bar Plaintiffs' Contract Claim</u>.  Facebook's Terms of Service expressly disclaims Plaintiffs' contract claim by stating that Meta "does not control or direct what people and others do or say, and [is] not responsible for their actions or conduct (whether online or offline) or any content they share."  TOS § 4.3.  Plaintiffs contend that this provision would at most "cap all damages for [Meta's] breach of contract liability at $100 per user per breach," Opp. at 10, citing a distinct clause providing that "[o]ur aggregate liability arising out of or relating to these Terms or the Facebook Products will not exceed the greater of $100 or the amount you have paid us in the

9

Gibson, Dunn &
Crutcher LLP

past twelve months," TOS § 4.3. But that argument mischaracterizes these separate provisions. Under the Terms, Plaintiffs agreed that Facebook is not responsible for the actions of third parties—full stop. That provision precludes liability here. Separately, the Terms provide a $100 cap on any recoverable damages, which are limited by the prior sentence notifying users that "under no circumstance will we be liable to you *for any* lost profits, revenues, information, or data, or *consequential, special, indirect,* exemplary, punitive, or *incidental damages* arising out of or related to these Terms or the Facebook Products, even if we have been advised of the possibility of such damages." *Id.* (emphases added).

Courts in this District have dismissed claims for breach of contract based on the Limits on Liability provision, *Gardiner*, 2021 WL 2520103, at *9, including the specific provision here,  *see, e.g.*, Bass, 394 F. Supp. 3d at 1038. Plaintiffs argue that *Bass* misread a prior decision that enforced a limitation of liability but simply awarded no damages because the contractual cap was $0. *See Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118 (2012). But *Bass* simply cited that earlier case for the straightforward proposition that "limitation of liability clauses are enforceable unless they are unconscionable." 394 F. Supp. 3d at 1037.[2]

b. No Breach. Nor do Plaintiffs allege that Meta breached the Terms of Service. As a general matter, "while Facebook's Terms 'place restrictions on users' behavior,' they 'do not create affirmative obligations' on Facebook." *King v. Facebook, Inc.*, No. 19-1987-WHO, 2019 WL 6493968, at *2 (N.D. Cal. 2019) (citing *Young v. Facebook, Inc.*, No. 10-3579-JF, 2010 WL 4269304, at *3 (N.D. Cal. 2010); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017)). Plaintiffs insist that this position cannot be correct because, "were it the case that the TOS does not impose any obligations on Facebook, the entire TOS … would be void for lack of mutuality of obligation." Opp. at 7. But there is mutuality; in exchange for complying with the Terms of Service, Meta agrees to (and does) grant users *access* to Facebook—a benefit clearly valued by the platform's billions of users. Plaintiffs' cases are not to the contrary. Although Judge Chhabria "held that Facebook's online terms may give rise to a breach of contract claim," Opp. at 7 (citing *In re*

---

[2] Plaintiffs argue that the Limits on Liability provision does not apply to their *negligence* claim under *Tunkl v. Regents of Univ. of Cal.*, 60 Cal. 2d 92 (1963). *See* Opp. at 9. This is wrong because social media is not the "essential" type of public service governed by *Tunkl*, and is not "a matter of practical necessity" for the public, *id.* at 98–99.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 4:21-CV-06186-JSW

Gibson, Dunn &
Crutcher LLP

*Facebook, Inc., Consumer Priv. User Profile Litig.*, No. 18-MD-2843-VC, 402 F. Supp. 3d 767, 801 (N.D. Cal. 2019)), the obligations in that case arose out of Facebook's *Data Policy*, not the provisions of the Terms on which Plaintiffs rely here, *see* 402 F. Supp. 3d at 801.  And even if Plaintiffs were right that "*Young* merely observed that the plaintiff in that case had failed to identify a provision that Facebook breached," Opp. at 7 (citing 2010 WL 4269304, at *3), the same is equally true here.

Plaintiffs do not plausibly allege a violation of any of the four purported affirmative obligations they identify in the Terms of Service:  *First*, they assert that Meta "promised 'we *will* take appropriate action' where we 'detect misuse of our Products [or] harmful conduct[] towards others,'" Opp. at 7 (emphasis Plaintiffs'), but Plaintiffs misstate the TOS, which states in full:  "If we learn of content or conduct like this, we will take appropriate action—*for example, offering help, removing content, removing or restricting access to certain features, disabling an account, or contacting law enforcement*," TOS § 1 (emphasis added).  Plaintiffs do not allege that Meta failed to take *any* of these actions (or some other "appropriate action") when it learned of behavior that violated its policies.  *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 833 (N.D. Cal. 2020) ("[T]he Privacy Policy listed four circumstances under which it would share users' personal information . . . To establish a breach, then, Plaintiffs must not only plead that Defendants lacked consent, but also that their conduct does not fall within the other three circumstances.").  But as Plaintiffs admit, Meta *did* remove all of the allegedly deceptive ads to which they purportedly were exposed.  *See* Compl. ¶ 76 n.48 ("The Kidspunza Facebook page has since been taken down by Facebook."); *id.* ¶ 85 ("Mr. Calise reported Miuxo's ad to Facebook.  Facebook agreed that the ad violated its Ad Policies and claimed to have removed it."); *id.* ¶ 86 n.49 ("The Miuxo-shop Facebook page has since been taken down by Facebook.").  That Meta allegedly did not remove these ads as quickly as Plaintiffs would have liked does not show a breach of the Terms of Service—even under Plaintiffs' theory.

*Second*, Plaintiffs try to transform Meta's statement "that it takes proactive steps—'advanced technical systems' and 'automated systems'—to detect misuse and protect its users," Opp. at 7, into a binding promise, but they do not allege that Meta failed to employ "dedicated teams" or develop "automated systems" to "detect misuse."  In fact, they acknowledge that Meta "ha[s] 'dedicated teams,'" but complains that "they are . . . utterly ineffective." Opp. at 8.  This is incorrect, but irrelevant

Gibson, Dunn & Crutcher LLP

because the Terms of Service expressly warn users that Meta can "make no guarantees that [its products] always will be safe, secure, or error-free, or that they will function without disruptions, delays, or imperfections." TOS ¶ 4.3. The Terms of Service further emphasize that "[w]e do not control or direct what people and others do or say, and we are not responsible for … any content they share (including offensive, inappropriate, obscene, unlawful, and other objectionable content)." *Id.*

*Third*, Plaintiffs suggest that Meta breached a promise that it "remove[s] content that purposefully deceives, willfully misrepresents or otherwise defrauds or exploits others for money or property." Opp. at 8. But Plaintiffs allege no facts showing a breach of this purported promise and, as noted above, have conceded that Meta has removed all of the specific ads cited in their Complaint.

*Fourth*, Plaintiffs attempt to allege a breach by Meta for purportedly "creat[ing] the sense among individuals tasked with monitoring China-based ads to 'look the other way'" and allowing "banned advertisers to 'return to the platform by setting up new companies and creating new Facebook ads accounts.'" Opp. at 8.[3] Even if this were true—and it is not—Plaintiffs do not (and cannot) identify any provision in the Terms that would be breached by this alleged conduct.

c. <u>No Causation</u>. Nor may Plaintiffs establish causation. Although they contend that Meta "breached provisions of the TOS when it failed to adequately enforce its Ad Policies against China-based scammers" and that they were defrauded by those scammers, Opp. at 8, Plaintiffs do not allege that Meta knew the ads were deceptive before Plaintiffs placed their orders on the advertiser's websites or that Meta failed to enforce its policies against those ads.[4] Thus, Plaintiffs do not "establish a 'causal connection' between the asserted [breach] and the claimed damages." *In re Hard Drive Suspension Assemblies Antitrust Litig.*, No. 19-MD-2918-MMC, 2020 WL 5074041, at *2 (N.D. Cal. 2020).

**3.** ***There Is No Basis For Plaintiffs' Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing.***

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails because

---

[3] Plaintiffs assert that Meta "instructed workers tasked with ad enforcement 'to ignore hacked accounts and other violations'" (Opp. at 8), but in fact, Plaintiffs allege this behavior by a third-party contractor—*not* Meta. *See* Compl. ¶ 51 ("[A]n ***Accenture manager*** … 'instruct[ed] contract workers to ignore hacked accounts and other violations as long as Facebook gets paid for ads through a valid payment method.'") (emphasis added).

[4] Plaintiffs allege that other users posted comments on the account page, but those comments were posted *after* Plaintiffs clicked the ads. Compl. ¶¶ 76, 86. Additionally, the Terms of Service do not commit Meta to proactively review the many millions of user comments as part of its services.

Gibson, Dunn & Crutcher LLP

12

it turns on the same conduct underlying their contract claim. *See* Compl. ¶ 122 ("By actively and affirmatively soliciting, encouraging, and assisting Deceptive Facebook Advertisers it knew or should have known were defrauding Facebook users . . . Facebook engaged in conduct that frustrated and interfered with the rights of Plaintiffs."). Where the allegations for breach of the implied covenant, "rely[] on the same alleged acts, [and] simply seek the same damages or other relief already claimed in a companion contract cause of action," the claim must "be disregarded as superfluous as no additional claim is actually stated." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 611 (9th Cir. 2020) (dismissing claim that "Facebook's tracking practices violated the implied covenant" because "the allegations do not go beyond the breach of contract theories asserted by Plaintiffs").

Plaintiffs insist that their "claim for breach of the covenant of good faith and fair dealing is not duplicative," Opp. at 10, but they offer no reason why this is so. The closest they come is the allegation "that 'Facebook engaged in conduct that frustrated and interfered with the rights' of its users," *id.* at 11 n.5 (quoting Compl. ¶ 122), but this is too vague to state a claim, *see Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 884 (N.D. Cal. 2011) (plaintiff's "allegations are too vague to state a plausible claim for relief" where he merely alleged defendants "acted in bad faith by failing to make clear and conspicuous disclosures" regarding repayment obligations).

### 4.    *The UCL Claim Fails As A Matter Of Law.*

As explained in the Motion to Dismiss, Plaintiffs fail to state a claim under the California Unfair Competition Law because they have adequate legal remedies, lack statutory standing, and are not entitled to restitution. Mot. at 12–14. Plaintiffs' responsive arguments cannot save this claim.

*First*, Plaintiffs assert that they do not have an adequate remedy at law because their "UCL claim is the only claim seeking injunctive relief." Opp. at 11. But simply asserting a claim for injunctive relief does not render legal remedies "inadequate." And while Plaintiffs cite *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), for the proposition that monetary compensation for past harm is not an adequate substitute for future injunctive relief, Opp. at 11–12, courts in this District have not read *Sonner* that way, *see, e.g.*, *Huynh v. Quora*, 508 F. Supp. 3d 633, 662 (N.D. Cal. 2020) ("equitable damages [under the UCL] [are] unavailable" where the "potential harm caused by

Gibson, Dunn & Crutcher LLP

both actions may be remedied by money damages"); *Gardiner*, 2021 WL 2520103, at \*7 (dismissing UCL claim where plaintiff failed to allege "that the potential harm caused by [defendant's] failure to protect its customers could not be remedied by monetary damages"); *In re MacBook Keyboard Litig.*, No. 18-2813-EJD, 2020 WL 6047253, at \*3 (N.D. Cal. Oct. 13, 2020) (collecting cases). Plaintiffs try to distinguish these cases on the ground that Meta "remains economically motivated" to continue its alleged misconduct "because cracking down on scammers would jeopardize the billions of dollars per year in revenue" Opp. at 12, but this pure speculation is untethered to any allegation in the Complaint. Meta already has ample incentive to police deceptive ads because they diminish users' likelihood to engage with ads, negatively impacting users and diminishing Facebook's value as a marketing platform. Any damages awarded would simply amplify that powerful market incentive.

*Second*, Plaintiffs contend that they have standing to pursue their UCL claim against Meta because "a plaintiff may recover against a party under the UCL even though the plaintiff did not directly transact with that party." Opp. at 13 (quoting *Galope v. Deutsche Bank Nat'l Trust Co.*, 566 F. App'x 552, 553 (9th Cir. 2014)). But as the lower court's decision in *Galope* made clear, the plaintiff in that case *did* transact with the defendants, which serviced the loan at issue. *See Galope v. Deutsche Bank Nat'l Trust Co.*, 2012 WL 12887642, at \*1 (C.D. Cal. Oct. 11, 2012). Thus there was a causal connection between the alleged conduct and the plaintiff's harm. Here, by contrast, Meta did not process the Plaintiffs' transactions with third-party advertisers or otherwise participate in the transaction other than by hosting the advertisements, which Plaintiffs chose to click.[5]

### 5.  *Plaintiffs Cannot Pursue The Equitable Remedy Of Unjust Enrichment.*

Finally, Plaintiffs' claim for unjust enrichment should be dismissed for at least two reasons. *First*, such a quasi-contractual claim does not lie where there is a written contract outlining the rights and responsibilities of the parties. *See Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) ("[U]njust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties."). Plaintiffs do not disagree as

---

[5]  Plaintiffs also cite *Allstate Ins. v. Shawa*, 2016 WL 245458, at \*5 (Cal. Ct. App. Jan. 20, 2016) (unpublished), for the proposition that "[n]umerous courts have permitted recovery under the UCL despite the absence of direct dealings between the parties." But the court merely clarified that there is standing under the UCL even where the money does not directly *change hands*, but rather passes through an intermediary. *Id.* Here, Meta was not involved in any way in Plaintiffs' transactions.

Gibson, Dunn &
Crutcher LLP

a general matter, but urge that this is not a ground for dismissal on the pleadings.  Opp. at 14.  But courts routinely dismiss unjust enrichment claims at the motion to dismiss stage.  *See, e.g.*, *Huynh v. Quora*, No. 18-CV-07597-BLF, 2019 WL 11502875, at \*12 (N.D. Cal. Dec. 19, 2019) (dismissing unjust enrichment claim where "Plaintiffs acknowledge that the Terms of Service and Privacy Policy govern the relationship of the parties"); *Kerkorian v. Samsung Elecs. Am., Inc.*, 2019 WL 6918293, at \*7 (E.D. Cal. Dec. 19, 2019) (dismissing unjust enrichment claim with prejudice because there was an enforceable binding agreement between the parties).

*Second*, Plaintiffs' unjust enrichment theory fails for the additional reason that they cannot plead an inadequate remedy at law.  *See Sonner*, 971 F.3d at 844; *Drake v. Toyota Motor Corp.*, 2021 WL 2024860, at \*7 (C.D. Cal. May 17, 2021) (dismissing unjust enrichment claim under *Sonner* because plaintiff failed to allege an inadequate remedy at law).  Plaintiffs claim that "the disgorgement remedy that [they] seek for their unjust enrichment claim is legal (not equitable) in nature, and therefore *Sonner* does not apply," Opp. at 14, but the case they cite in support—*Simler v. Conner*, 372 U.S. 221 (1963)—does not help them.  There, the Supreme Court held that a court must look to federal law in determining whether a remedy is legal or equitable for purposes of the defendant's Seventh Amendment jury right.  *Simler*, 372 U.S. at 222.  In the very same sentence, the Court confirmed that "the substantive dimension of the claim asserted finds its source in state law."  *Id.*  Because this case involves "the substantive dimension" of Plaintiff's unjust enrichment claim, its characterization as legal or equitable is determined by state law.  And California law makes clear that unjust enrichment is a quasi-contractual claim that sounds in equity.  *See Paracor*, 96 F.3d at 1167.

## III.  CONCLUSION

All of the claims in Plaintiffs' Complaint are barred by Section 230.  In the alternative, the Court should dismiss the Complaint because Plaintiffs fail to allege facts sufficient to state a claim.

Dated: January 10, 2022

Respectfully submitted,

By: _____*/s/ Rosemary Ring*_____
Rosemary Ring

*Attorneys for Defendant Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

Gibson, Dunn &
Crutcher LLP

15

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)

I, Christopher Chorba, hereby attest that concurrences in the filing of this document have been obtained from each of the signatories.

By:    /s/ Christopher Chorba

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 4:21-CV-06186-JSW

Gibson, Dunn &
Crutcher LLP