UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER CALISE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 21-cv-06186-JSW<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 20 |

Now before the Court for consideration is the motion to dismiss filed by Defendant Meta Platforms, Inc. ("Meta"), formerly known as Facebook, Inc.[1] The Court has considered the parties' papers, relevant legal authority, and the record in the case, and it finds the matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). For the following reasons, the Court GRANTS Meta's motion.

**BACKGROUND**

Plaintiffs Anastasia Groschen ("Groschen") and Christopher Calise ("Calise") (collectively, "Plaintiffs') bring this suit seeking to hold Meta liable for allegedly deceptive advertisements posted to the platform by third parties. Plaintiffs allege Meta actively solicits, encourages, and assists scam advertisers and Meta knows, or should know, that the scammers use its platform to defraud users with deceptive ads. (Compl. ¶ 1.)

Meta provides a social networking service that allows people to connect and communicate with friends, colleagues, family, and others. (*Id*. ¶ 19.) Meta does not charge users for their accounts and instead generates revenue from a variety of other products and services, including

---

[1] The case caption was amended on November 15, 2021, to reflect that Facebook, Inc. changed its name to Meta Platforms, Inc. (Dkt. No. 34.)

advertisements displayed on users' accounts. (*Id*. ¶¶ 20-21.) Meta allows advertisers to run targeted ad campaigns on the platform. (*Id*.) Advertisers must comply with Facebook's Terms of Service, which prohibit violent, criminal, fraudulent, or deceptive conduct. (*Id*. ¶ 30.) Meta also has policies specific to advertisers, which prohibit advertisements that contain deceptive, false, or misleading claims. (*Id*. ¶ 31.)

Plaintiffs are Facebook users who saw third-party advertisements on Facebook and purchased the advertised products from third-party websites. Plaintiff Groschen saw an advertisement for a toddler activity board on Facebook. (*Id*. ¶ 66.) When Groschen clicked the ad, she was taken to a website with the domain name "kidspunza.com", and she purchased the activity board from the website. (*Id*. ¶¶ 67-68.) When the package arrived from Kidspunza, it contained a "cheap wooden 'ABC' puzzle" instead of the activity board pictured on the website. (*Id*. ¶ 70.) Groschen unsuccessfully attempted to obtain a refund from the vendor. (*Id*. ¶ 75.) She alleges that other Facebook users were similarly deceived by Kidspunza advertisements on Facebook. (*Id*. ¶ 76.)

Plaintiff Calise saw an advertisement on Facebook for a car engine assembly kit. (*Id*. ¶ 81.) Calise followed the advertisement to a website with the domain name "miuxo.com" where he purchased the car engine assembly kit. (*Id*. ¶ 82.) After he placed the order and paid for the kit, Calise attempted to contact Miuxo for updates on the status of his order. (*Id*. ¶ 83.) Miuxo did not respond, and Calise never received the kit or a refund. (*Id*.) Calise reported Miuxo's advertisement to Facebook, which determined the advertisement violated its ad polices and would be removed. (*Id*. ¶ 85.) Calise alleges, however, that Miuxo launched a new Facebook advertisement under a slightly modified name, which scammed additional Facebook users. (*Id*. ¶¶ 85-86.)

Plaintiffs seek to hold Meta liable for the deceptive advertisements. They bring causes of action for: (1) negligence; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code section 17200, *et seq*. ("UCL"); and (5) unjust enrichment. Plaintiffs seek monetary and injunctive relief.

Meta moves to dismiss on two bases. First, that Section 230(c)(1) of the Communications

1  Decency Act ("CDA") bars Plaintiffs' claims.  Second, Meta contends that Plaintiffs fail to state a
2  cause of action for each of their individual claims.

**ANALYSIS**

**A.    Applicable Legal Standard.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  A court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Pursuant to *Twombly*, a plaintiff cannot merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

If the allegations are insufficient to state a claim, a court should grant leave to amend unless amendment would be futile.  *See, e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 246-47.

**B.    Section 230 Bars Plaintiffs' Claims.**

Section 230 of the CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  "Immunity from liability exists for '(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.'" *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (quoting *Barnes v. Yahoo! Inc.*, 570 F. 3d 1096, 1100-01 (9th Cir. 2009)).  "In general, this section

3

protects websites from liability for material posted on the website by someone else." *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 850 (9th Cir. 2016).

The parties do not dispute Meta is an interactive computer service provider, and the Court agrees. *Dyroff*, 934 F.3d at 1097 ("Websites are the most common interactive computer services.") Additionally, neither party disagrees that third parties created the content in question. Thus, the focus of Plaintiffs' argument is that Meta should be treated as the "publisher or speaker" of the third-party ad content. Plaintiffs argue that Meta is not entitled to Section 230 immunity because it actively solicits and encourages third-party advertisers it knows or should know are scammers to advertise on its platform and this encouragement deprives Meta of immunity.

The Ninth Circuit has held that a website that "create[es] or develop[s]" content "by making a material contribution to [its] creation or development" loses section 230 immunity. *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269 (9th Cir. 2016). A "material contribution" does not refer to "merely…augmenting the content generally, but to materially contributing to its alleged unlawfulness." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1167-68 (9th Cir. 2008). This test "draw[s] the line at the 'crucial distinction between, on the one hand, taking actions" to display "actionable content and, on the other hand, responsibility for what makes the displayed content [itself] illegal or actionable." *Kimzey*, 836 F.3d at 1269 n.4 (internal quotation marks omitted) (quoting *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 413–14 (6th Cir. 2014)). That is, immunity will be lost only when the website contributes to the illegality of the third-party content. *Roommates*, 521 F.3d at 1167-68.

In *Dyroff*, the plaintiff sued a website after her son died from illegal drugs that he purchased from a dealer on the website. 934 F.3d at 1094-95. The plaintiff argued that the website was not immune under Section 230 because it knew or should have known that some of its users were selling drugs on the site. *Id*. at 1099-1100. The Ninth Circuit disagreed and held that Section 230 immunized the defendant because the plaintiff did not allege that the website "required users to post specific content, made suggestions regarding the content of potential user posts, or contributed to making unlawful or objectionable user posts" and thus, it had not materially contributed to the illegality of the posted content. *Id*. at 1099.

4

As in *Dyroff*, Plaintiffs' allegations here do not establish that Meta materially contributed to the illegality of the specific advertisements in question. Plaintiffs do not plead that Meta required advertisers to post specific content, made suggestions about the content of the ads, or played a role in creating the unlawful ads. Nor do Plaintiffs allege that Meta directly participated in the allegedly fraudulent purchase transactions, which took place on third-party websites. Thus, the allegations do not show Meta is responsible for the actionable content. At most, Plaintiffs' allegations establish that Meta encouraged and solicited third parties to advertise on its platform. But the fact that Meta cultivates relationships with advertisers and encourages them to post on its platform does not transform Meta into the creator of the allegedly illegal ad content. *See Roommates*, 521 F.3d at 1174 ("Where it is very clear that the website directly participates in developing the alleged illegality…immunity will be lost."). Plaintiffs fail to allege facts that show Meta contributed to the illegality of the challenged advertisements, and thus Meta is entitled to Section 230 immunity. *See Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193 (N.D. Cal. 2009) (finding Google entitled to Section 230 immunity in connection with fraudulent advertisements that appeared on its search engine).

Plaintiffs also argue that Section 230 immunity does not apply because Meta fails to remove fraudulent ads and enforce its ad policies. However, Meta cannot be held liable under Section 230 for its decisions not to remove third-party content. *See Roommates*, 521 F.3d at 1170 (explaining that "determin[ing] whether or not to prevent [the] posting" of third-party material online is "precisely the kind of activity" covered by the CDA); *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) ("Facebook did not become the 'information content provider' under § 230(c)(1) merely by virtue of reviewing the contents of the suspect account and deciding not remove it."). Moreover, numerous courts have rejected the argument that an interactive service provider loses Section 230 immunity if it fails to adequately enforce its ad policies. *See Goddard v. Google, Inc.*, No. C 08-2738-JF, 2008 WL 524590, at *3 (N.D. Cal. Dec. 17, 2008) ("[E]ven if a service provider knows that third parties are using such tools to create illegal content, the service provider's failure to intervene is immunized.") (citing *Roommates*, 521 F.3d at 1169 n.24.); *see also Ripple Labs Inc. v. YouTube LLC*, No. 20-2747-LB, 2020 WL 6822891, at *2, 7

5

(N.D. Cal. 2020) (finding defendant entitled to Section 230 immunity even though it failed to take down allegedly fraudulent channels after being notified of a scam). Thus, Meta's purported failure to remove fraudulent advertisements or enforce its advertising policies does not overcome Section 230's protections.

Finally, Plaintiffs contend that, at the very least, Section 230 does not immunize Meta from their contract claim. Section 230 immunity does not apply to contract claims that do not derive from a defendant's status or conduct as a publisher or speaker. *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1034 (N.D. Cal. 2021) (citing *Barnes*, 570 F.3d at 1102). Here, however, Plaintiffs' contract claim is based on Meta's alleged solicitation and publication of deceptive third-party advertisements and therefore stems from Meta's role as publisher. (*See* Compl. ¶¶ 113-115.) Thus, Section 230 immunity extends to Plaintiffs' contract claim in this action. *See Goddard*, 2008 WL 5245490, at *2 ("[Section] 230's 'broad immunity' extends to '*all claims stemming from* [an interactive service provider's] publication of information created by third parties.'") (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

Here, because all of Plaintiffs' claims are premised on Meta's publication of the third-party advertisements, the Court concludes that Meta is entitled to CDA immunity as to each of Plaintiffs' claims. Because the Court finds Meta entitled to immunity under Section 230 of the CDA, the Court does not address the parties' arguments regarding whether Plaintiffs plead sufficient facts to state a claim under Rule 12(b)(6).

Although it seems unlikely under the facts currently pled, it is possible that Plaintiffs could allege that Meta's conduct goes beyond mere publication. For example, if Plaintiffs could establish that Meta was involved in creating or developing the allegedly illegal ad content, Section 230 immunity might not apply. Thus, because the Court cannot say amendment would be futile, it will grant Plaintiffs leave to amend.

//
//
//
//

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Meta's motion to dismiss with leave to amend. Plaintiffs shall file any amended complaint within twenty-one (21) days.

**IT IS SO ORDERED.**

Dated: April 27, 2022

_____
JEFFREY S. WHITE
United States District Judge