1   GIBSON, DUNN & CRUTCHER LLP
    CHRISTOPHER CHORBA, SBN 216692
2   SAMUEL ECKMAN, SBN 308923
    JEREMY WEESE, SBN 336180
3   333 South Grand Avenue
    Los Angeles, California  90071-3197
4   Telephone:    213.229.7000
    Facsimile:    213.229.7520
5   cchorba@gibsondunn.com
    seckman@gibsondunn.com
6   jweese@gibsondunn.com

7   *Attorneys for Defendant Meta Platforms, Inc.*

8   ## IN THE UNITED STATES DISTRICT COURT

9   ## NORTHERN DISTRICT OF CALIFORNIA

10  ## OAKLAND DIVISION

11  CHRISTOPHER CALISE and ANASTASIA          CASE NO. 4:21-CV-06186-JSW
    GROSCHEN, Individually and On Behalf of All
12  Others Similarly Situated,                **DEFENDANT META PLATFORMS,
                                              INC.'S MOTION TO DISMISS
13              Plaintiffs,                   PLAINTIFFS' AMENDED COMPLAINT**

14        v.

15  META PLATFORMS, INC.,

16              Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that at a hearing date and time to be determined by the Court, before the Honorable Jeffrey S. White, in Courtroom 5 of the United States District Court located at 1301 Clay Street, Oakland, CA 94612, Defendant Meta Platforms, Inc. will and hereby does respectfully move to dismiss the Amended Complaint filed by Plaintiffs pursuant to Federal Rule of Civil Procedure 12(b)(6).  This motion is based on the accompanying Memorandum of Points and Authorities, any Reply or other papers submitted in connection with the Motion, all matters of which this Court may properly take judicial notice, and any information presented at argument.

## STATEMENT OF ISSUES TO BE DECIDED

1.     Whether the allegations in the Amended Complaint do not plausibly state a claim for relief for Breach of Contract.

2.     Whether the allegations in the Amended Complaint do not plausibly state a claim for relief for Breach of the Implied Covenant of Good Faith and Fair Dealing.

3.     Whether Section 230 bars Plaintiffs' Negligent Failure-to-Warn Claim.

4.     Whether the economic loss rule bars Plaintiffs' Negligent Failure-to-Warn Claim.

5.     Whether the allegations in the Amended Complaint do not plausibly state a claim for relief for a Negligent Failure-to-Warn Claim.

Dated: February 18, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:  */s/ Christopher Chorba*
　　　Christopher Chorba

*Attorneys for Defendant Meta Platforms, Inc.*

.

# TABLE OF CONTENTS

Page

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ......................................................1

II.     SUMMARY OF ALLEGED FACTS AND PROCEDURAL HISTORY ...........................2

III.    LEGAL STANDARD ...................................................................................................3

IV.     ARGUMENT ...............................................................................................................3

      A.      Plaintiffs Do Not Allege That Meta Breached an Enforceable Promise
            Sufficient to Support a Claim for Breach of Contract (Count I) ...............................3

      B.      Plaintiffs Cannot Assert a Claim for Breach of the Covenant of Good Faith and
            Fair Dealing (Count II)...............................................................................................6

      C.      Plaintiffs Do Not State a "Failure-to-Warn" Claim (Count III) ...............................7

            1.      Section 230 Bars Plaintiffs' Negligent Failure-to-Warn Claim. ......................8

            2.      The Economic Loss Rule Also Bars This Claim. ..........................................10

            3.      Plaintiffs Fail to Allege Essential Elements of a Negligent Failure-to-
                Warn Claim. ................................................................................................11

V.      CONCLUSION...........................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................ 3

*Barnes v. Yahoo, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ........................................................................................... 5

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ............................................................................ 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................... 3

*Estate of Bride by and through Bride v. Yolo Techs., Inc.*,
112 F.4th 1168 (9th Cir. 2024) .................................................................................... 8, 10

*Brooks v. Eugene Burger Mgmt. Corp.*,
215 Cal. App. 3d 1611 (1989) ......................................................................................... 11

*Brown v. USA Taekwondo*,
11 Cal. 5th 204 (2021) ............................................................................................... 13, 14

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) ................................................................. 2, 3, 8, 9, 12, 15

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016) ............................................................................ 4

*Careau & Co. v. Security Pacific Business Credit, Inc.*,
222 Cal. App. 3d 1371 (1990) ........................................................................................... 6

*Davidson v. City of Westminster*,
32 Cal. 3d 197 (1982) ...................................................................................................... 13

*Delgado v. Trax Bar & Grill*,
36 Cal. 4th 224 (2005) ..................................................................................................... 13

*Doe v. Internet Brands, Inc.*,
2016 WL 11824793 (C.D. Cal. Nov. 14, 2016) ........................................................ 13, 15

*Doe v. Internet Brands, Inc.*,
824 F.3d 846 (9th Cir. 2016) ................................................................................... 2, 9, 10

*Doe v. Uber Techs., Inc.*,
2020 WL 13801354 (Cal. Super. Ct. Nov. 30, 2020) ...................................................... 12

*Durkee v. C.H. Robinson Worldwide, Inc.*,
765 F. Supp. 2d 742 (W.D.N.C. 2011) ............................................................................ 15

*Dyroff v. Ultimate Software Grp., Inc.*,
934 F.3d 1093 (9th Cir. 2019) ........................................................................................... 8

Gibson, Dunn & Crutcher LLP

ii

*Ethridge v. Samsung SDI Co.*,
  604 F. Supp. 3d 556 (S.D. Tex. 2022)........................................................................14

*In re Facebook, Inc.*,
  625 S.W.3d 80 (Tex. 2021) .......................................................................................10

*In re Facebook, Inc. v. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ......................................................................................6

*Herrick v. Grindr LLC*,
  765 F. App'x 586 (2d Cir. 2019) ...............................................................................10

*Jackson v. Airbnb, Inc.*,
  2022 WL 16752071 (C.D. Cal. Nov. 4, 2022)...........................................................12

*Jacobs v. Meta Platforms, Inc.*,
  2023 WL 2655586 (Cal. Super. Ct. Mar. 10, 2023)..................................................12

*James v. Meow Media, Inc.*,
  300 F.3d 683 (6th Cir. 2002) ....................................................................................12

*Kesner v. Super. Ct.*,
  1 Cal. 5th 1132 (2016) ..............................................................................................14

*King v. Facebook, Inc.*,
  2019 WL 6493968 (N.D. Cal. Dec. 3, 2019) ..............................................................4

*Long v. Dorset*,
  369 F. Supp. 3d 939 (N.D. Cal. Feb. 22, 2019) ..........................................................4

*Love v. Scribner*,
  691 F. Supp. 2d 1215 (S.D. Cal. 2010) .......................................................................9

*Modisette v. Apple Inc.*,
  30 Cal. App. 5th 136 (2018) ...............................................................................14, 15

*Olson v. Children's Home Society*,
  204 Cal. App. 3d 1362 (1988) ..................................................................................13

*Parents for Privacy v. Barr*,
  949 F.3d 1210 (9th Cir. 2020) ..................................................................................15

*Perez v. Wells Fargo Bank, N.A.*,
  2011 WL 3809808 (N.D. Cal. Aug. 29, 2011)............................................................7

*Pierson v. Sharp Mem'l Hosp., Inc.*,
  216 Cal. App. 3d 340 (1989) ....................................................................................11

*Regents of Univ. of Cal. v. Super. Ct.*,
  4 Cal. 5th 607 (2018) ..........................................................................................13, 14

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
  34 Cal. 4th 979 (2004) ..............................................................................................11

*Rowland v. Christian*,
   69 Cal. 2d 108 (1968) .................................................................................................. 14

*Sheen v. Wells Fargo Bank, N.A.*,
   12 Cal. 5th 905 (2022) ................................................................................................. 10

*In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litig.*,
   702 F. Supp. 3d 809 (N.D. Cal. 2023) ........................................................................ 12

*Social Media Cases*,
   2023 WL 6847378 (Cal. Super. Ct. Oct. 13, 2023) ..................................................... 12

*United States v. Jingles*,
   702 F.3d 494 (9th Cir. 2012) ........................................................................................ 8

*Wozniak v. YouTube, LLC*,
   100 Cal. App. 5th 893 .................................................................................................. 10

*Young v. Facebook, Inc.*,
   2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ..................................................... 4, 7, 13

*Young v. Facebook, Inc.*,
   790 F. Supp. 2d 1110 (N.D. Cal. 2011) ........................................................................ 7

*Ziencik v. Snap, Inc.*,
   2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) .............................................................. 12

**Statutes**

47 U.S.C. § 230 ................................................................................................... 1, 8, 10, 11

**Treatises**

CACI No. 1222 ................................................................................................................ 11

Restatement (Second) of Torts § 402A, cmt. d............................................................... 11

Restatement (Third) of Torts: Product Liability § 19(a) ................................................. 11

Restatement (Third) of Torts: Product Liability § 19(b) ................................................. 12

Restatement (Third) of Torts: Physical & Emotional Harm § 41(b) ............................... 14

Gibson, Dunn &
Crutcher LLP

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This Court previously dismissed Plaintiffs' claims seeking to hold Meta Platforms, Inc. ("Meta") liable for third-party advertisements on Facebook, holding that Section 230 of the Communications Decency Act (47 U.S.C. § 230) barred those claims because they sought to treat Meta as the publisher of those ads.  Although the Ninth Circuit upheld this Court's dismissal of Plaintiffs' claims for negligence, violation of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*; "UCL"), and unjust enrichment, Plaintiffs now claim that Meta can be held liable for the same conduct on three different theories: breach of contract, breach of the covenant of good faith and fair dealing, and negligent failure to warn.  This Court should dismiss each of these claims.

*First*, Plaintiffs' breach-of-contract claim, predicated on Facebook's Terms of Service ("TOS"), fails as a matter of law because Plaintiffs do not adequately allege that the TOS imposes any affirmative obligation to protect them from third-party content on Facebook.  In any event, Plaintiffs do not adequately allege that Meta breached any of its supposed obligations under the TOS.  To the contrary, they concede that Meta maintained security teams dedicated to identifying and removing deceptive ads, but simply fault Meta for not doing more.

*Second*, Plaintiffs' claim for breach of the covenant of good faith and fair dealing is properly dismissed where, as here, it is predicated on the same underlying conduct as the breach-of-contract claim—namely, Meta's alleged solicitation of deceptive advertisers.  This claim should also be dismissed because Plaintiffs do not identify a specific contractual provision that was frustrated by the conduct alleged.

*Third*, the Court should dismiss Plaintiffs' new claim for negligent "failure to warn."  Plaintiffs allege that Meta "had a duty to disclose to, or warn Plaintiffs and members of the Classes, of the dangers that were known to Meta from advertisers placing fraudulent advertising on the Facebook platform." FAC ¶ 159.  Undersigned counsel has not identified any case recognizing a claim under California law for "failure to warn of allegedly false advertising."  But even if such a claim were cognizable, Section 230 would bar it here, because that claim would purport to base liability on a duty arising from Meta's *publication* of allegedly deceptive ads, and this Court already ruled that those ads were created by third

parties. Any general "failure to warn" claim also would be barred by the economic loss rule insofar as Plaintiffs allege no physical or property damage. And finally, Plaintiffs cannot state a failure-to-warn claim because Facebook is not a "product" and Meta owes no legal duty of care to users concerning third-party conduct on Facebook.

For these reasons, the Court should dismiss this case in its entirety.

## II.    SUMMARY OF ALLEGED FACTS AND PROCEDURAL HISTORY

Facebook generates revenue by, among other things, allowing third parties to post advertisements designed to reach people using the service. In August 2021, Plaintiffs Christopher Calise and Anastasia Groschen sued Meta, claiming that they were defrauded by third-party ads they viewed on Facebook. Dkt. 1. Plaintiffs asserted five causes of action: negligence, breach of contract, breach of the covenant of good faith and fair dealing, violation of the UCL, and unjust enrichment. *Id*. In April 2022, this Court granted Meta's motion to dismiss, ruling that "Meta is entitled to CDA immunity as to each of Plaintiffs' claims." Dkt. 42 at 6. Because the Court ruled that Meta was immune under Section 230, it "d[id] not address the parties' arguments regarding whether Plaintiffs plead[ed] sufficient facts to state a claim under Rule 12(b)(6)." *Id*.

The Ninth Circuit affirmed in substantial part, holding that Section 230 barred Plaintiffs' claims for negligence, violation of the UCL, and unjust enrichment. *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 744 (9th Cir. 2024). The Court explained that "[a]ll agree that Meta is an interactive computer service" (*id*. at 738), that "Meta did not 'materially contribute' to the third-party ads" (*id*. at 746), and that Plaintiffs' negligence, UCL, and unjust enrichment claims each sought to treat Meta as the publisher of those third-party ads (*id*. at 744).[1]

The Ninth Circuit vacated this Court's dismissal of the contract-based claims, however, ruling that these claims did not seek to treat Meta as the "publisher" of third-party ads because "Meta's

_____

[1] In doing so, the Ninth Circuit emphasized that "to avoid liability, Meta . . . would need to actively vet and evaluate third party ads," which supposedly distinguished this case from *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016)—a case the panel inaccurately described as rejecting a Section 230 defense where "the platform faced liability not because it failed to remove the ads, but because it failed to warn about their content." *Calise*, 103 F.4th at 744. Based on this misreading of *Internet Brands*, the panel suggested that "Plaintiffs' claims may fare better if they sought to impose liability on Meta for failing to warn about fraudulent content." *Id*. There was no such claim or theory presented in the original Complaint or on appeal.

'contract liability' would 'come not from its publishing conduct, but from its manifest intention to be legally obligated to do something.'" *Id.* at 743.  At the same time, the court "recognize[d] that whether Meta's TOS create an enforceable contract . . . is not a question the district court reached." *Id.* at 743 n.5.  For this reason, the Ninth Circuit reserved that issue for Meta to renew (and this Court to resolve) on remand.  *Id.* ("The existence of a contract and the interpretation of a contract are questions better suited for the district court in the first instance.").

On December 20, 2024, Plaintiffs filed an Amended Complaint.  *See* Dkt. 56 ("FAC").  The factual allegations in the Amended Complaint are materially identical to those in the original Complaint, except that there are two new Plaintiffs—Teri Bohl and Noah Ferber—and a new claim for "negligent failure to warn" in addition to the contract-based claims.

## III.    LEGAL STANDARD

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) if the pleadings do not state a claim upon which relief can be granted.  "Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), 'a plaintiff's obligation to provide "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do.'"  Dkt. 42 at 3 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiffs cannot merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  But Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.* at 678–79.

## IV.    ARGUMENT

### A.    Plaintiffs Do Not Allege That Meta Breached an Enforceable Promise Sufficient to Support a Claim for Breach of Contract (Count I)

Plaintiffs allege that Meta breached "Facebook's TOS, which incorporated by reference the Community Standards, and the Advertising Policies" (FAC ¶ 130) by "actively and affirmatively soliciting, encouraging, and assisting Deceptive Facebook Advertisers it knew or should have known

were defrauding Facebook users" (*id.* ¶ 132).  This claim fails as a matter of law for at least two reasons.

*First*, the provisions cited by Plaintiffs impose obligations on people using Facebook, not Meta. *See* Dkt. 56-1 § 4.5 ("The Terms . . . make up the entire agreement between you and Facebook, Inc. regarding *your use* of our Products." (emphasis added)); *see also* Dkt. 56-2 § 4.5 (same).  For example, Plaintiffs argue that Meta made an enforceable promise when it stated in the TOS that it "employ[s] dedicated teams around the world and develop[s] advanced technical systems to detect misuse of [its] Products, harmful conduct towards others, and situations where Facebook may be able to support its community."  FAC ¶ 132.  But in *Long v. Dorset*, 369 F. Supp. 3d 939 (N.D. Cal. Feb. 22, 2019), Judge Hamilton dismissed a claim alleging that "Facebook failed to comply" with this exact provision because it "does not create affirmative obligations" on Facebook.  *Id.* at 948 (cleaned up), *vac'd in part on other grounds*, 2021 WL 7829668 (N.D. Cal. May 21, 2021).  The other provisions of the TOS cited by Plaintiffs similarly impose no obligation on Meta.  *See, e.g.*, FAC ¶ 133 (Meta's statement that it develops automated systems to detect content that violates the TOS); *id.* ¶ 134 (Meta's warning that it may remove user content).  Those provisions "'place restrictions on users' behavior,' they 'do not create affirmative obligations.'"  *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016) (quoting *Young v. Facebook, Inc.*, 2010 WL 4269304, at *3 (N.D. Cal. Oct. 25, 2010)); *see also King v. Facebook, Inc.*, 2019 WL 6493968 (N.D. Cal. Dec. 3, 2019) ("[W]hile Facebook's Terms 'place restrictions on users' behavior,' they 'do not create affirmative obligations' on Facebook.").

In fact, Section 3 of the TOS, entitled "Limits on liability," expressly _disclaims_ any promise to provide an environment safe from third-party misconduct, stating that Facebook is "provided 'as is,' and we make no guarantees that [it] always will be safe, secure, or error-free."  Dkt. 56-1 § 4.3; Dkt. 56-2 § 4.3.  Section 4.3 goes on to state that "[w]e do not control or direct what people and others do or say, and we are not responsible for their actions or conduct (whether online or offline) or any content they share (including offensive, inappropriate, obscene, unlawful, and other objectionable content)."  *Id.*  Courts have routinely invoked this provision to dismiss claims like the one asserted here.  *See, e.g.*, *Young*, 2010 WL 4269304, at *3 ("[T]he [TOS] includes an express disclaimer: 'We do not guarantee that Facebook will be safe or secure.  Facebook is not responsible for the actions, content, information, or data of third parties.'"); *Long*, 369 F. Supp. 3d at 949 ("[T]he TOS disclaimed

the type of harm plaintiff alleges here."); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037 (N.D. Cal. 2019) (noting that "the only way the breach of contract claims may move forward is if the limitation-of-liability clause is deemed unconscionable" and declining to so find).[2]

     *Second*, even if the TOS imposed affirmative obligations on Meta (they do not), Plaintiffs do not plausibly allege that Meta breached those obligations. Plaintiffs allege that Meta breached the following terms in the TOS and Community Standards:

- "We employ dedicated teams around the world and develop advanced technical systems to **detect misuse of our Products, harmful conduct towards others**, and situations where we may be able to help support or protect our community." FAC ¶ 132.

- "If we learn of content or conduct like this, **we will take appropriate action** – for example, offering help, removing content, removing or restricting access to certain features, **disabling an account**, or contacting law enforcement." *Id.*

- "We develop automated systems to improve our ability **to detect and remove abusive and dangerous activity that may harm our community and the integrity of our Products**." *Id.* ¶ 133.

- "In an effort to prevent fraudulent activity that can harm people or businesses, **we remove content that purposely deceives, willfully misrepresents or otherwise defrauds or exploits others for money or property**." *Id.* ¶ 134 (all emphases added).

     Plaintiffs do not dispute that Meta has followed through on each of those representations. Instead, they complain that Meta is not doing *more*. For example, Plaintiffs concede that Facebook has "teams charged with combatting deceptive ads," but assert that they "were woefully understaffed." FAC ¶ 42; *see also id.* ¶ 55 ("Meta has outsourced critical ad integrity work to inadequately staffed teams of third-party contractors getting paid low hourly wages and receiving no benefits."). Likewise, Plaintiffs acknowledge that deceptive advertisers "g[ot] caught and banned by Facebook for deceptive ads," but say that those advertisers could evade the bans by opening new accounts under different names. *Id.* ¶ 42. In fact, Plaintiffs acknowledge that Meta removed some of the very third-party ads that form the basis for their claims. *See, e.g., id.* ¶ 77 ("Mr. Calise reported Miuxo's ad to Facebook.

---

[2] The alleged facts distinguish this case from *Barnes v. Yahoo, Inc.*, 570 F.3d 1096 (9th Cir. 2009), which held that the plaintiff's allegations of promissory estoppel based on *specific* oral promises by Yahoo to the plaintiff were not immunized under Section 230. *Id.* at 1109. Here, Plaintiffs do not allege Meta made any oral promises to them, but rather rely on the written agreements governing their relationship with Facebook—agreements that expressly disclaim the very promise upon which Plaintiffs base their breach-of-contract claim.

Gibson, Dunn &
Crutcher LLP

1   Facebook agreed that the ad violated its Ad Policies and claimed to have removed it."); *id.* ¶ 78 n.50

2   ("The Miuxo-shop Facebook page has since been taken down by Facebook."); *id.* ¶ 112 n.52 ("The

3   Kidspunza Facebook page has since been taken down by Facebook.").

4          In other words, Plaintiffs are trying to enforce an obligation that Meta never assumed and that,

5   in any event, Meta did not violate.  That Meta did not remove allegedly deceptive ads as quickly as

6   Plaintiffs would have preferred, or did not prevent the bad actors who posted those ads from evading

7   the bans that Meta admittedly imposed, does not mean that Meta did not "employ . . . teams" to detect

8   such misconduct or "take . . . action" to remove such content when it was discovered.  Plaintiffs' claim

9   for breach of contract lacks allegations supporting the key elements of an enforceable promise and

10  breach.  As a result, the Court should dismiss the claim.

11  **B.    Plaintiffs Cannot Assert a Claim for Breach of the Covenant of Good Faith and Fair
        Dealing (Count II)**

12          Plaintiffs' claim for breach of the covenant of good faith and fair dealing is no more viable.

13  *First*, the allegations underlying this claim are identical to those underlying the breach-of-contract

14  claim.  *See Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990)

15  ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same

16  alleged acts, simply seek the same damages or other relief already claimed in a companion contract

17  cause of action, they may be disregarded as superfluous as no additional claim is actually stated.").

18  Plaintiffs' breach-of-contract claim alleges that "Facebook materially breached these promises by

19  actively and affirmatively soliciting, encouraging, and assisting Deceptive Facebook Advertisers it

20  knew or should have known were defrauding Facebook users."  FAC ¶ 132.  Plaintiffs' claim for breach

21  of the covenant of good faith and fair dealing alleges that, "[b]y actively and affirmatively soliciting,

22  encouraging, and assisting Deceptive Facebook Advertisers it knew or should have known were

23  defrauding Facebook users—*including without limitation, by taking the actions detailed in

24  paragraph 132(a)-(f)* above [supporting the breach-of-contract claim]—Meta engaged in conduct that

25  frustrated and interfered with the rights of Plaintiffs."  *Id.* ¶ 141 (emphasis added).  Because "the

26  allegations do not go beyond the breach of contract theories asserted by Plaintiffs," they are "properly

27  dismissed."  *In re Facebook, Inc. v. Internet Tracking Litig.*, 956 F.3d 589, 611 (9th Cir. 2020).

28

Gibson, Dunn &
Crutcher LLP

6

*Second*, Plaintiffs do not identify a specific contractual provision that was frustrated by the conduct alleged. *See Perez v. Wells Fargo Bank, N.A.*, 2011 WL 3809808, at *18 (N.D. Cal. Aug. 29, 2011) ("[T]o state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated."). In *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110 (N.D. Cal. 2011), Judge Fogel dismissed a similar claim against Facebook because the plaintiff "allege[d] that Facebook 'violated the spirit of its terms of agreement by not showing concern or offering assistance when their computer system flagged Plaintiffs account'" but "d[id] not point to any express or implied obligation to show such concern or offer such assistance." *Id.* at 1118. The closest Plaintiffs come here is their general invocation of "the rights of Plaintiffs and other members of the Classes to the benefits of the TOS (including without limitation, the right to a safe environment while using Facebook and right to be protected against being scammed by deceptive ads)." FAC ¶ 141. But as explained above, the TOS made no such promise. To the contrary, "Facebook expressly disclaimed any duty to protect users' online safety." *Young*, 2010 WL 4269304, at *4.

## C.   Plaintiffs Do Not State a "Failure-to-Warn" Claim (Count III)

The only new claim asserted in the Amended Complaint is for "negligent failure to warn" of allegedly false advertising. FAC ¶¶ 144–72. According to Plaintiffs, Meta "had a duty to disclose to, or warn Plaintiffs and members of the Classes, of the dangers that were known to Meta from advertisers placing fraudulent advertising on the Facebook platform" (*id.* ¶ 159), and breached that duty by "fail[ing] to warn Plaintiffs and members of the Classes[] of the danger presented by advertisers who place fraudulent ads on the platform" (*id.* ¶ 164). Undersigned counsel is unaware of any "failure to warn of false advertising" theory, and the alleged facts do not reveal any basis for a negligence or products liability claim in this case. For example, Plaintiffs do not assert that they suffered personal injury from a product that they purchased *on Facebook*, nor do they seek to hold Meta liable for anything other than the alleged "false" third-party advertisements. As such, this "negligent failure to warn" claim is nothing more than a repackaged version of Plaintiffs' dismissed claims under the inapplicable framework of product liability. Specifically, the alleged "defect" Meta supposedly had a duty to "warn" about was the allegedly deceptive third-party ads that, as this Court previously ruled, "the allegations do not show Meta is responsible for." Dkt. 42 at 5. Although the Ninth Circuit noted

that Plaintiffs' claims "*may* fare better if they sought to impose liability on Meta for failing to warn about fraudulent content" (*Calise*, 103 F.4th at 744 (emphasis added)), now that this claim has been pleaded, it is clear that it, too, fails as a matter of law. The Court should dismiss this claim for at least three independent reasons.

> **1.    *Section 230 Bars Plaintiffs' Negligent Failure-to-Warn Claim.***

As this Court has acknowledged, Section 230 prohibits imposing liability "for '(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.'" Dkt. 42 at 3 (citing *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019)). The Ninth Circuit has already held that "Meta is an interactive computer service provider under the statute" (*Calise*, 103 F.4th at 738) and that the third-party ads were provided by another information content provider because "Meta did not 'materially contribute' to the third-party ads" (*id.* at 746). These findings are binding law of the case. *See United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012). The only question for this Court to resolve is whether Plaintiffs' negligent failure-to-warn claim seeks to treat Meta as a "publisher" or "speaker." The answer here is clearly "yes."

Courts "conduct a two-step analysis" to determine whether a claim seeks to treat the defendant as a publisher or speaker. *Estate of Bride by and through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1177 (9th Cir. 2024). First, they "examine the 'right from which the duty springs'"—namely, whether "it stem[s] from the platform's status as a publisher (in which case it is barred by § 230)" or "from some other obligation, such as a promise or contract (which, under *Barnes*, is distinct from publication and not barred by § 230)." *Id.* (quoting *Calise*, 103 F.4th at 742). Second, courts "ask what 'this duty requires the defendant to do.'" *Id.* (quoting *Calise*, 103 F.4th at 742). If it requires the defendant to "moderate content to fulfill its duty, then § 230 immunity attaches." *Id.*

Both elements establish that Plaintiffs' claim treats Meta as a "publisher" or "speaker." The first element is satisfied because the Amended Complaint is unambiguous that Meta's supposed duty to warn stems entirely from its publication of allegedly deceptive ads. For example, Plaintiffs allege that "Meta had actual knowledge that a substantial portion—nearly 30 percent—of the ads placed on the Facebook platform by China-based advertisers violated at least one of Facebook's own Ad Policy"

(FAC ¶ 148), that "Meta had the requisite knowledge to avoid future harm to Meta's users by third parties posting, disseminating, sharing, and targeting Deceptive Facebook Ads at them" (*id.* ¶ 149), and that Meta therefore "had a duty to make adequate disclosures and warn its users of the danger presented and inform them of the need to screen and verify the legitimacy of advertising posted on the Facebook platform" (*id.* ¶ 154). Absent Meta's publication of ads, it would have no duty to warn. And the second element is established because the only way for Meta to fulfill its duty to warn is by monitoring third-party ads to determine whether they are false; if they are not, there is no duty to warn. Because the duty "obliges [Meta] to 'monitor third-party content'—or else face liability . . . [the claim] is barred by § 230(c)(1)." *Calise*, 103 F.4th at 742.

This case is therefore distinguishable from *Internet Brands*. The plaintiff in that case was a member of Model Mayhem, "a networking site for professional and aspiring models to market their services," who had been drugged and raped by third parties who found her profile on the site and lured her to a fake audition. 824 F.3d at 848. The Ninth Circuit held that Section 230 did not bar the plaintiff's failure-to-warn claim because that claim "d[id] not seek to hold Internet Brands liable as a 'publisher or speaker' of content someone posted on the Model Mayhem Website, or for Internet Brands' failure to remove content posted on the website." *Id.* at 851. But crucially, this was because the only third-party content that was posted on Model Mayhem was the *plaintiff's* profile, and "she d[id] not seek to hold Internet Brands liable for its content." *Id.* The court emphasized that the predators who raped the plaintiff "[we]re not alleged to have posted their own profiles on the website" (*id.* at 848), that the plaintiff "d[id] not claim to have been lured by any posting that Internet Brands failed to remove" (*id.* at 851), and that "Internet Brands [wa]s also not alleged to have learned of the predators' activity from any monitoring of postings on the website" (*id.*).[3] For this reason, "[t]he duty to warn allegedly imposed by California law would not require Internet Brands to remove any user content or otherwise affect how it publishes or monitors such content." *Id.*

---

[3] The panel's statements that "[i]n *Internet Brands*, the platform faced liability not because it failed to remove the ads, but because it failed to warn about their content" (103 F.4th at 744), are "[g]eneral remarks" that were "not necessary to the result" and thus are "not law of the case." *Love v. Scribner*, 691 F. Supp. 2d 1215, 1241 (S.D. Cal. 2010). And *Internet Brands* is itself clear that the plaintiff "d[id] not allege that [the third parties] posted anything to the website" and that she "attempt[ed] to hold Internet Brands liable for failing to warn her about information it obtained from an outside source about how third parties targeted and lured victims through Model Mayhem." 824 F.3d at 851.

Gibson, Dunn &
Crutcher LLP

Just a few months after its decision in this case, the Ninth Circuit confirmed that *Internet Brands* is limited to failure-to-warn claims that do not involve third-party content. In *Estate of Bride*, survivors of a minor who committed suicide in response to bullying on the defendant's Snapchat extension asserted a failure-to-warn claim based on the failure to disclose the risks of the extension's anonymous messaging feature. 112 F.4th at 1172. The Ninth Circuit concluded that Section 230 barred this claim because it "attempt[ed] to hold [the defendant] responsible for users' speech or [the defendant's] decision to publish it." *Id.* at 1180. The court noted that "*Internet Brands* provides no cover for Plaintiffs' failure to warn theory" because the claim in that case "had no bearing on Model Mayhem's decision to publish any information on its site." *Id.* at 1180–81. "After all, [the *Internet Brands*] plaintiff had posted her own profile on the website, and did not allege that the rapists had posted anything on the website. Therefore, § 230 was no protection." *Id.* at 1181. Other cases are in accord.[4]

Because Plaintiffs' failure-to-warn claim arises from Meta's publication of third-party ads, and because it would require Meta to warn about the content of those ads, it is barred by Section 230.

### 2.   *The Economic Loss Rule Also Bars This Claim.*

Plaintiffs' failure-to-warn claim should also be dismissed because "there is no recovery in tort for negligently inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage." *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022). This doctrine "hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedies by resort to the law of torts." *Robinson Helicopter Co., Inc. v. Dana*

---

[4] *See, e.g.*, *Herrick v. Grindr LLC*, 765 F. App'x 586, 591 (2d Cir. 2019) ("[I]n *Internet Brands*, there was no allegation that the defendant's website transmitted potentially harmful content; the defendant therefore was not an 'intermediary' shielded from liability under § 230. Herrick's failure to warn claim is inextricably linked to Grindr's alleged failure to edit, monitor, or remove the offensive content provided by his ex-boyfriend; accordingly, it is barred by § 230."); *Wozniak v. YouTube, LLC*, 100 Cal. App. 5th 893, 914 ("Here, plaintiffs' claim is predicated on the third-party content, of which they assert defendants had a duty to warn. . . . In *Internet Brands*, by contrast, the alleged duty to warn existed independent of any third-party content on the defendant's platform."); *In re Facebook, Inc.*, 625 S.W.3d 80, 95 (Tex. 2021) ("*Internet Brands* is therefore best read as holding that the CDA does not immunize an interactive computer service from a failure to warn claim when the alleged duty to warn arises from something other than user-generated content. By contrast, Plaintiffs' proposed warning in this case would be about user-generated content itself." (cleaned up)).

Gibson, Dunn &
Crutcher LLP

*Corp.*, 34 Cal. 4th 979, 988 (2004). In short, "the economic loss rule prevents the law of contract and the law of tort from dissolving one into the other." *Id.* (cleaned up).

Each of the named Plaintiffs alleges purely economic harms—namely, that they "spent money on a product that [they] would not have otherwise purchased had [they] known [they were] being defrauded." FAC ¶¶ 81, 94; *see also id.* ¶ 98 ("Kyle used copies of the car keys to steal the exchanged-for car, and registered both vehicles in his name thereafter."). Because Plaintiffs do not allege physical injury or property damage, the economic loss rule prohibits them from recovering in tort.

### 3.    *Plaintiffs Fail to Allege Essential Elements of a Negligent Failure-to-Warn Claim.*

Even if Section 230 and the economic loss rule did not bar Plaintiffs' failure-to-warn claim (they do), the Court should still dismiss that claim because Plaintiffs do not allege two of its elements.

*First*, Plaintiffs fail to allege that Facebook is a "product." Because failure to warn is a product-liability claim, Plaintiffs "must meet a condition precedent to successfully maintain the action"—namely, they "must show that the object or instrumentality claimed to be defective was in fact a 'product' as defined or contemplated by the Restatement of Torts, legislation, or case law." *Brooks v. Eugene Burger Mgmt. Corp.*, 215 Cal. App. 3d 1611, 1626 (1989); *see also* CACI No. 1222. "A product is a physical article which results from a manufacturing process and is ultimately delivered to a consumer." *Pierson v. Sharp Mem'l Hosp., Inc.*, 216 Cal. App. 3d 340, 345 (1989). Or, in the words of the Restatement, "[a] product is tangible personal property distributed commercially for use or consumption." Restatement (Third) of Torts: Product Liability § 19(a); *see also* Restatement (Second) of Torts § 402A, cmt. d ("[T]he rule stated applies to an automobile, a tire, an airplane, a grinding wheel, a water heater, a gas stove, a power tool, a riveting machine, a chair, and an insecticide.").

Here, Plaintiffs allege that the allegedly defective "object" is Facebook. *See* FAC ¶ 145 ("At all relevant times, Meta designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefits from its products, including Facebook."). But Facebook is *not* a "physical article" or "tangible personal property." On the contrary, Plaintiffs themselves allege that it is a "social networking *service*[] that enable[s] [users] to connect and communicate with family, friends, and colleagues concerning subjects of common interest." *Id.* ¶ 23 (emphasis added). "Services, even when provided commercially, are not products." Restatement

(Third) of Torts: Product Liability § 19(b).

It is therefore unsurprising that courts held repeatedly that services like Facebook are not "products" for purposes of product-liability law.  *See, e.g., Jacobs v. Meta Platforms, Inc.*, 2023 WL 2655586, at *4 (Cal. Super. Ct. Mar. 10, 2023) ("[A]s a social media platform that connects its users, Facebook is more akin to a service than a product."); *Social Media Cases*, 2023 WL 6847378, at *15 (Cal. Super. Ct. Oct. 13, 2023) (dismissing negligent failure-to-warn claim against social-media websites, including Facebook, because "Defendants' platforms are not tangible products and are not analogous to tangible products within the framework of product liability").[5]  As Judge Kuhl explained in dismissing claims against Facebook, "[p]roduct liability doctrine is inappropriate for analyzing Defendants' responsibility for Plaintiffs' injuries" because (1) the services "are not tangible products and are not analogous to tangible products"; (2) "the 'risk-benefit' analysis at the heart of determining whether liability for a product defect can be imposed is illusive in the context of a social media site because the necessary functionality of the product is not easily defined"; and (3) "the interaction between Defendants and their customers is better conceptualized as a course of conduct implemented by Defendants through computer algorithms."  *Social Media Cases*, 2023 WL 6847378, at *15. Instead, "[t]he common law's ability to adapt basic negligence concepts to new social problems appears better suited to providing legal regulation of this new technology."  *Id.* at *19.  Of course, in this case those "basic negligence concepts" are unavailable to Plaintiffs, because the Ninth Circuit has already affirmed this Courts' dismissal of their negligence claim under Section 230.  *See Calise*, 103 Cal. 4th at 744.[6]

*Second*, Plaintiffs do not adequately allege that Meta owed them a duty.  It is black-letter law

---

[5]  *See also Ziencik v. Snap, Inc.*, 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) ("[T]he Court is not persuaded that the Snapchat app constitutes a 'product.'"); *James v. Meow Media, Inc.*, 300 F.3d 683, 700–01 (6th Cir. 2002) (holding that plaintiff "failed to demonstrate . . . that the video games, movies, and internet sites are 'products'"); *Jackson v. Airbnb, Inc.*, 2022 WL 16752071, at *9 (C.D. Cal. Nov. 4, 2022) ("Airbnb is a platform that connects users; it is more akin to a service than to a product."); *Doe v. Uber Techs., Inc.*, 2020 WL 13801354, at *6 (Cal. Super. Ct. Nov. 30, 2020) ("The Uber App is not tangible personal property and is not akin to real property and electricity that, in the context of its distribution and use, it is analogous to the use and distribution of tangible personal property.").

[6]  Plaintiffs' allegations also fail under the non-controlling framework in *In re Social Media Adolescent Addiction/Personal Injury Products Liability Litig.*, 702 F. Supp. 3d 809 (N.D. Cal. 2023), because the alleged defect here is "fraudulent advertising on the Facebook platform" (FAC ¶ 159)—the epitome of "ideas, content, and free expression upon which products liability claims cannot be based."  *Id.* at 849.

Gibson, Dunn &
Crutcher LLP

that "not every defendant owes every plaintiff a duty of care." *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 213 (2021).  On the contrary, "'one owes no duty to control the conduct of another, *nor to warn those endangered by such conduct.*'"  *Regents of Univ. of Cal. v. Super. Ct.*, 4 Cal. 5th 607, 619 (2018) (quoting *Davidson v. City of Westminster*, 32 Cal. 3d 197, 203 (1982)) (emphasis added).  That is precisely what Plaintiffs allege here—namely, that Meta "had a duty to disclose to, or warn Plaintiffs and members of the Classes, of the dangers that were known to Meta *from advertisers placing fraudulent advertising on the Facebook platform*."  FAC ¶ 159 (emphasis added).

Although a duty may exist if there is a "special relationship" between the parties (*Brown*, 11 Cal. 5th at 215), no such relationship exists here.  Only a few relationships give rise to such a duty, such as "the relationship between business proprietors such as shopping centers, restaurants, and bars, and their tenants, patrons, or invitees," "common carriers and passengers," "innkeepers and their guests," and "mental health professionals and their patients."  *Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 236, 236 n.14 (2005).  The unifying theme of these relationships is that they "involve some kind of dependency or reliance."  *Olson v. Children's Home Society*, 204 Cal. App. 3d 1362, 1366 (1988).

Meta does not have a "special relationship" with Facebook users.  In fact, Meta disclaimed such a relationship in the TOS.  *See Young*, 2010 WL 4269304, at *5 ("[T]he Statement of Rights and Responsibilities expressly disclaims any duty to provide for the safety of Facebook users.").  Even absent that disclaimer, Meta does not have a special relationship with the alleged 2.11 billion daily active Facebook users.  FAC ¶ 24.  After the Ninth Circuit held that Section 230 did not bar the failure-to-warn claim in *Internet Brands*, the district court again dismissed that claim on the ground that "Internet Brands had no duty to warn Jane Doe or Model Mayhem users that they were at risk of being victimized by the rape scheme" because "[t]he relationship between Jane Doe and Internet Brands, a website operator, does not fall under any of the well-recognized 'special relationships' under California law, and the Court has not found, nor have the parties cited, any case in which courts have found the existence of a 'special relationship' or imposed a duty under similar or analogous circumstances."  *Doe v. Internet Brands, Inc.*, 2016 WL 11824793, at *5–6 (C.D. Cal. Nov. 14, 2016) ("*Internet Brands II*").

Nor do Plaintiffs allege a "special relationship" between Meta and the third-party advertisers.  "[A] special relationship between the defendant and the dangerous third party is one that entails an

ability to control the third party's conduct." *Brown*, 11 Cal. 5th at 216 (cleaned up). It includes the "parent-child relationship" (*Regents of Univ. of Cal.*, 4 Cal. 5th at 619), "a custodian with those in its custody," "an employer with employees when the employment facilitates the employee's causing harm to third parties," and "a mental-health professional with patients" (Restatement (Third) of Torts: Physical & Emotional Harm § 41(b)). Meta's relationship with advertisers is a commercial relationship involving no right to control. *See, e.g.*, *Ethridge v. Samsung SDI Co.*, 604 F. Supp. 3d 556, 560 (S.D. Tex. 2022) (no special relationship between Amazon and sellers, because "'the practical ability to exercise [ ]control' is not enough to create a 'duty to control the conduct of another'").

Even if Plaintiffs could allege an exception to the no-duty-to-warn rule, the "court must still consider whether the policy considerations set out in *Rowland*[ *v. Christian*, 69 Cal. 2d 108 (1968)] warrant a departure from that duty in the relevant category of cases." *Brown*, 11 Cal. 5th at 222. The factors fall into two categories: "Three factors—foreseeability, certainty, and the connection between the plaintiff and the defendant—address the foreseeability of the relevant injury," while "the other four—moral blame, preventing future harm, burden, and availability of insurance—take into account public policy concerns that might support excluding certain kinds of plaintiffs or injuries from relief." *Kesner v. Super. Ct.*, 1 Cal. 5th 1132, 1145 (2016).

The foreseeability factors weigh against any duty here. Where "the injury suffered is connected only distantly and indirectly to the defendant's negligent act, the risk of that type of injury from the category of negligent conduct at issue is likely to be deemed unforeseeable." *Regents of Univ. of Cal.*, 4 Cal. 5th at 631. For example, in *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136 (2018), the court ruled that Apple had no duty and the harm was "too attenuated" to the alleged injury because, for the plaintiffs to be injured, "they had to stop on a highway due to police activity," another driver "had to choose to use his iPhone while driving in a manner that caused him to fail to see that the [plaintiffs] had stopped; and [he] had to hit the [plaintiffs'] car with his car." *Id.* at 147. It was the third party's conduct "that placed the [plaintiffs] in danger," not Apple's. *Id.* The same is true here: For Plaintiffs to be injured, (1) a third party had to sell goods, (2) that third party had to advertise on Facebook, (3) Plaintiffs had to see the ad, (4) Plaintiffs had to visit the third party's external website, (5) Plaintiffs had to purchase a product on the website, and (6) the third party then had to defraud Plaintiffs. In short, "Meta's

'solicitation' and 'assistance' efforts are, on their face, neutral. They are allegedly used for unlawful purposes, but that does not result from Meta's efforts." *Calise*, 103 F.4th at 745. Thus, there is not a sufficiently close connection to impose a duty here.

The public policy factors also weigh against a duty. The "moral blame" for the allegedly deceptive ads falls on the third parties who create them. And if social media platforms "had a legal duty to third parties to anticipate improper use of their products then no product that would potentially [involve harm from third-party content] could be marketed." *Durkee v. C.H. Robinson Worldwide, Inc.*, 765 F. Supp. 2d 742, 749 (W.D.N.C. 2011). *Internet Brands II* is again instructive. There, the court acknowledged that "it may have been foreseeable that [the perpetrators] would strike again," but emphasized that "Internet Brands only had knowledge of a threat to its member base at large, not to any specific member." 2016 WL 11824793, at *5. As such, "[i]mposing a duty to warn under these circumstances would . . . only minimally increase the precautions already taken by website users, and would also likely cause website operators to inundate and overwhelm their users with warnings, ultimately diluting the effectiveness of such warnings." *Id.* At the same time, imposing a duty "would likely have a 'chilling effect' on the internet by opening the floodgates of litigation." *Id.* So, too, here.

## V.    CONCLUSION

This Court already dismissed Plaintiffs' claims because they improperly sought to hold Meta liable for third-party content. Plaintiffs' latest attempts to plead around that conclusion are unavailing. And because Plaintiffs previously declined this Court's invitation to amend their Complaint, and subsequently amended that Complaint to reflect guidance from the Ninth Circuit, any further amendment would be futile. *See Parents for Privacy v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020). The Court should dismiss the Amended Complaint with prejudice.


Dated:  February 18, 2025                          Respectfully submitted,


                                                   By:      */s/ Christopher Chorba*
                                                            Christopher Chorba

                                                   *Attorneys for Defendant Meta Platforms, Inc.*