Adam M. Apton (State Bar No. 316506)
**LEVI & KORSINSKY LLP**
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: 415-373-1671
Facsimile: 212-363-7171
Email: aapton@zlk.com

Mark S. Reich (admitted *pro hac vice*)
Courtney E. Maccarone (admitted *pro hac vice*)
**LEVI & KORSINSKY, LLP**
33 Whitehall, 17th Floor
New York, NY 10004
Telephone: 212-363-7500
Facsimile: 212-363-7171
Email: mreich@zlk.com
          cmaccarone@zlk.com

*Attorneys for Plaintiffs and the Proposed
Classes*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER CALISE and ANASTASIA GROSCHEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 4:21-cv-06186-JSW<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... ii

II.   LEGAL STANDARD ................................................................................................1

III.  ARGUMENT ...........................................................................................................2

    A.    Plaintiffs Adequately Plead the Contract Claim .......................................2

        1.    Plaintiffs Allege Enforceable Promises That Obligate Meta ................2

        2.    Meta Breached Enforceable Promises in the TOS and COS ...................7

    B.    Plaintiffs Adequately Plead the Covenant Claim ......................................7

    C.    Plaintiffs Adequately Plead the Failure-to-Warn Claim ...........................9

        1.    Plaintiffs Adequately Plead Misfeasance ...................................................10

        2.    Plaintiffs Adequately Plead Nonfeasance and a Special Relationship .....12

        3.    The Economic Loss Rule Does Not Bar the Failure-to-Warn Claim .......14

        4.    Section 230 of the CDA Does Not Bar the Failure-to-Warn Claim .........14

CONCLUSION .............................................................................................................15

## TABLE OF AUTHORITIES

**CASES**

*Ass'n for L.A. Deputy Sheriffs v. Cty. of L.A.*,
648 F.3d 986 (9th Cir. 2011) ................................................................. 5

*Barnes v. Yahoo, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ............................................................. 11

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ............................... 9, 14, 16, 17

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) .................................................... passim

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir.
2017) ................................................................................................. 7

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
222 Cal. App. 3d 1371 (Ct. App. 1990) ......................................... 11, 12

*Chauhan v. Google LLC*,
2023 WL 5004078 (N.D. Cal. Aug. 4, 2023) ....................................... 11

*Doe No. 14 v. Internet Brands, Inc.*,
2016 WL 11824793 (C.D. Cal. Nov. 14, 2016) ...................... 12, 13, 15, 17

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ...................................... passim

*Doe v. Uber Technologies, Inc.*,
2020 WL 13801354 (Cal.Super. Nov. 30, 2020) .................................. 17

*Durkee v. C.H. Robinson Worldwide, Inc.*,
765 F. Supp 2d 742 (W.D.N.C. 2011) ................................................. 16

*Est. of Bride by & through Bride v. Yolo Techs., Inc.*,
112 F.4th 1168 (9th Cir. 2024), *cert. denied*, No. 24-864, 2025 WL 889177
(Mar. 24, 2025) ............................................................................ 7, 18

*Forrest v. Meta Platforms, Inc.*,
737 F. Supp. 3d 808 (N.D. Cal. 2024) .......................................... 16, 18

*Frederick-Osborn v. Twitter, Inc.*,
2024 WL 1354529 (N.D. Cal. Mar. 29, 2024) ........................................ 5

*Gerber v. Twitter, Inc.*,
2024 WL 5173313 (N.D. Cal. Dec. 18, 2024) ..................................... 8, 9

*Gross v. Symantec Corp.*,
2012 WL 3116158 (N.D. Cal. July 31, 2012) ......................................... 8

*Herrick v. Grindr LLC*,
765 F. App'x 586 (2d Cir. 2019) ......................................................... 18

*Huynh v. Quora, Inc.*,
    508 F. Supp. 3d 633 (N.D. Cal. 2020) ............................................................... 15

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ........................................................................... 12

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ..................................................... passim

*In re Meta Pixel Tax Filing Cases*,
    724 F. Supp. 3d 987 (N.D. Cal. 2024) ...................................................... 15, 17

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
    702 F. Supp. 3d 809 (N.D. Cal. 2023) ............................................................. 13

*Jackson v. Airbnb, Inc.*,
    639 F. Supp. 3d 994 (C.D. Cal. 2022) ............................................................. 13

*Jacobs v. Meta Platforms, Inc.*,
    2023 WL 2655586 (Cal.Super. Mar. 10, 2023) ............................................... 13

*James v. Meow Media, Inc.*,
    300 F.3d 683 (6th Cir. 2002) ........................................................................... 13

*King v. Facebook, Inc.*,
    2019 WL 6493968 (N.D. Cal. Dec. 3, 2019), *aff'd*, 845 F. App'x 691 (9th Cir.
    2021) ................................................................................................................. 7

*Long v. Dorset*,
    369 F. Supp. 3d 939 (N.D. Cal. 2019) ........................................................ 6, 7

*Luis v. RBC Capital Mkts., LLC*,
    401 F. Supp. 3d 817 (D. Minn. 2019) ............................................................... 5

*Lundy v. Facebook Inc.*,
    2021 WL 4503071 (N.D. Cal. Sept. 30, 2021) .................................................. 7

*Modisette v. Apple Inc.*,
    30 Cal. App. 5th 136 (2018) ........................................................................... 16

*Olson v. Doe*,
    502 P.3d 398 (2022)......................................................................................... 8

*Regents of Univ. of California v. Superior Ct.*,
    413 P.3d 656 (2018)....................................................................................... 16

*Rodman v. Safeway Inc.*,
    125 F. Supp. 3d 922 (N.D. Cal. 2015), *aff'd*, 694 F. App'x 612 (9th Cir. 2017) ............... 8

*Ronderos v. USF Reddaway, Inc.*,
    114 F.4th 1080 (9th Cir. 2024) ................................................................... 9

*Rowland v. Christian*,
    443 P.2d 561 (1968) .................................................................................. 14

*Sandquist v. Lebo Auto., Inc.*,
    1 Cal. 5th 233 (2016) ................................................................................. 8

*Social Media Cases*,
    No. 22STCV21355, 2023 WL 684737 (Cal. Super. Oct. 13, 2023) ...................... 13

*Teknekron Customer Info. Sols., Inc. v. Watkins Motor Lines, Inc.*,
    1994 WL 11726 (N.D. Cal. Jan. 5, 1994) ...................................................... 8

*Tunkl v. Regents of Univ. of Cal.*,
    383 P.2d 441 (1963) ................................................................................. 10

*Young v. Facebook, Inc.*,
    2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) .................................................. 7

*Young v. Facebook, Inc.*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) ........................................................ 12

*Ziencik v. Snap, Inc.*,
    2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) .................................................. 13

**STATUTES**

California Civil Code § 1668 ............................................................................ 8

## I.    INTRODUCTION[1]

Meta is the world's largest social media company with billions of active users and a market cap exceeding a trillion dollars. Meta does not charge users to access its Facebook platform; instead, it collects personal data from Facebook users and utilizes that data to sell highly targeted ads to businesses seeking to pitch products and services to Facebook users.

According to multiple sources, scammers have long exploited Meta's data to target Facebook users with deceptive ads. Plaintiffs were among those victimized by such scammers. Meta has no incentive to crack down on scamming because scam ads have generated and continue to generate tens of billions of dollars in ad sales. Indeed, the profits from scam ads led Meta to instruct its ad enforcement workers to "ignore hacked accounts and other violations as long as Facebook gets paid," and "look the other way" when detecting deceptive China-based ads because Meta "want[s] China revenue." Meta's sales teams have also actively courted and assisted known scammers.

The misconduct alleged in the FAC gives rise to three claims against Meta: breach of contract ("Contract Claim"), breach of the covenant of good faith and fair dealing ("Covenant Claim"), and failure to warn ("Failure-to-Warn Claim"). Meta seeks dismissal of these claims (Dkt. 57), but none of its arguments are availing. The Court should deny Meta's Motion.

## II.    LEGAL STANDARD

At the pleading stage, a district court must accept all factual allegations in the complaint as true, construe the pleadings in the light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff. *Ass'n for L.A. Deputy Sheriffs v. Cty. of L.A.*, 648 F.3d 986, 991 (9th Cir. 2011). A court may not draw inferences in favor of defendants. *Frederick-Osborn v. Twitter, Inc.*, 2024 WL 1354529, at *5 (N.D. Cal. Mar. 29, 2024).

---

[1]    References to "¶" are to paragraphs in Plaintiffs' Amended Class Action Complaint ("FAC") (Dkt. 56) and "Ex." refers to Exhibits to the FAC. All emphasis in quotations is added unless otherwise noted, and all internal quotations and citations are omitted unless otherwise noted.

1    III.    **ARGUMENT**

2        **A.  Plaintiffs Adequately Plead the Contract Claim**

3        Meta seeks dismissal of the contract claim on two grounds—first, that the provisions in the

4    Terms of Service ("TOS") and the Community Standards ("COS") cited by Plaintiffs do not

5    obligate Meta; and second, that even if those provisions obligate Meta, Meta did not breach them.

6    (Br. at 3-6). Both arguments fail.

7            *1.  Plaintiffs Allege Enforceable Promises That Obligate Meta*

8        The contract ("Contract") here consists of the TOS and the incorporated COS. (¶¶ 32-35,

9    130); *see In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 791 (N.D.

10    Cal. 2019) ("*Facebook Privacy Litig.*") (data policy was incorporated into online contract where

11    contract page linked to data policy page). Meta breached at least two enforceable promises in the

12    Contract—one in the TOS and one in the COS. *First*, in Section 1 of the TOS, Meta promises that

13    "[i]f we learn of content or conduct like this [i.e., that misuses Meta's products, or constitutes

14    "harmful conduct towards others"], ***[Meta] will take appropriate action*** [such as] removing

15    content [or] disabling an account." (¶ 32) ("Appropriate Action Provision"). *See Luis v. RBC Cap.*

16    *Markets, LLC*, 401 F. Supp. 3d 817, 831 (D. Minn. 2019) ("will" is "'promissory' language"),

17    *aff'd*, 984 F.3d 575 (8th Cir. 2020). ***Second***, in the "Fraud and Deception" section of the COS,

18    Meta promises that "[i]n an effort to prevent fraudulent activity that can harm people or businesses,

19    ***we [i.e. Meta] remove content*** that purposefully deceives, willfully misrepresents or otherwise

20    defrauds or exploits others for money or property." (¶ 34) ("Removal Provision").

21        Despite the clear language stating that Meta will take action in response to misconduct,

22    Meta contends that the TOS and COS provisions above do not create obligations. (Br. at 4). A

23    court in this District, however, recently identified the Appropriate Action Provision as one of

24    several provisions in Meta's contract creating an enforceable promise. *Doe v. Meta Platforms, Inc.*,

25    690 F. Supp. 3d 1064, 1085–86 (N.D. Cal. 2023) ("*Doe*") (quoting language "[i]f we learn of

26    content or conduct like this, we will take appropriate action"); *see also Calise v. Meta Platforms,*

27    *Inc.*, 103 F.4th 732, 743 & n.5 (9th Cir. 2024) (suggesting without deciding that the Appropriate

28    Action Provision created an enforceable promise: "[t]o the extent that Meta manifested its intent

1    to be legally obligated to '*take appropriate action*' to combat scam advertisements, *it became*

2    *bound by a contractual duty. . .*").

3    The Ninth Circuit also suggested that the Removal Provision can be interpreted as an

4    enforceable promise by Meta to remove deceptive ads seeking to exploit Facebook users for

5    money. *See Calise*, 103 F.4th at 736 (TOS "*promises* to '[c]ombat harmful conduct' [including]

6    removing any 'content that purposefully deceives, willfully misrepresents *or otherwise defrauds*

7    *or exploits others for money or property.*'"). At best, Meta's contrary interpretation of the

8    Appropriate Action and Removal Provisions—that they create no obligations—is a question of

9    fact that cannot prevail at the pleading stage. *See Facebook Privacy Litig.*, 402 F. Supp. 3d at 789

10   (parties agree that if contract language is reasonably susceptible to more than one interpretation,

11   the court cannot adopt Facebook's interpretation at the pleading stage).

12   Meta's reliance on *Long v. Dorset*, 369 F. Supp. 3d 939 (N.D. Cal. 2019) is misplaced. (Br.

13   at 4). Unlike *Doe*, *Long* quotes only the sentence immediately preceding the Appropriate Action

14   Provision (*id.* at 948) and overlooks the promissory language in that provision that the Ninth

15   Circuit quoted in part: "[i]f we learn of content or conduct like this, ***we will take appropriate***

16   ***action***." *See Calise*, 103 F.4th at 743. Additionally, for the sweeping proposition that the TOS

17   "does not create affirmative obligations," *Long* cites—without analysis—*Caraccioli v. Facebook,*

18   *Inc.*, 167 F. Supp. 3d 1056 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017). 369 F. Supp.

19   3d at 948-49. In turn, also without analysis, *Caraccioli* cites an earlier case—*Young v. Facebook,*

20   *Inc.*, 2010 WL 4269304 (N.D. Cal. Oct. 25, 2010)—as the source of that proposition. 167 F. Supp.

21   3d at 1064. Another case cited by Meta (Br. at 4)—*King v. Facebook, Inc.*, 2019 WL 6493968

22   (N.D. Cal. Dec. 3, 2019), *aff'd*, 845 F. App'x 691 (9th Cir. 2021)—likewise cites *Young* as the

23   source of the proposition, again without analysis.

24   *Young*, however, did not hold that Facebook's TOS categorically "does not create

25   affirmative obligations." Rather, *Young* concerned a plaintiff who had failed to identify an

26   enforceable promise that Facebook breached. 2010 WL 4269304, at *3. Instead, the plaintiff only

27   cited language obligating "users not to engage in bullying, intimidating, or harassing other users

28

or posting [harmful] content." *Id*. That provision directly placed "restrictions on users' behavior," but clearly did "not create affirmative obligations." *Id*.

Here, in contrast, as per *Doe* (and as suggested by the Ninth Circuit in *Calise*), the Appropriate Action Provision creates an enforceable promise. The Removal Provision also creates an enforceable promise. Further, contrary to the cases cited by Meta, courts in this District have held that other provisions of Meta's contract create enforceable promises. *See Lundy v. Facebook Inc.*, 2021 WL 4503071, at *2 (N.D. Cal. Sept. 30, 2021) (Facebook's privacy policy created enforceable promise); *Facebook Privacy Litig.*, 402 F. Supp. 3d at 801 (Facebook's Data Use Policy created enforceable promise). And the Ninth Circuit has held that another website's representation to "unmask and ban abusive users" was an enforceable promise. *Est. of Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1178 (9th Cir. 2024), *cert. denied,* No. 24-864, 2025 WL 889177 (Mar. 24, 2025).

Meta contends that the disclaimer in Section 4.3 of the TOS bars the Contract Claim (Br. at 4). That argument fails for at least four reasons. ***First***, Section 4.3 does not extinguish liability; instead, it caps liability per user at "the greater of $100 or the amount you have paid us in the past twelve months" (which constitutes a $100 cap per user since Facebook is free to use). (Dkt. 56-1 §4.3). While the cap appears in a second paragraph, it cannot be read independently of the disclaimer in the preceding paragraph since, under California law, "individual provisions [must be] interpreted together." *Olson v. Doe*, 502 P.3d 398, 404 (2022).

Here, Section 4.3's first paragraph does not specify the extent to which the disclaimer limits liability; the second paragraph supplies that detail. At best, the interplay between the first and second paragraphs of Section 4.3 is ambiguous, and thus must be construed against Meta as the party seeking to limit its liability. *Rodman v. Safeway Inc.*, 125 F. Supp. 3d 922, 928 (N.D. Cal. 2015), *aff'd*, 694 F. App'x 612 (9th Cir. 2017); *see also Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 248 (2016) (the rule requiring the resolution of ambiguities against the drafting party applies with particular force in the case of adhesion contracts).

***Second***, to the extent Section 4.3's warranty disclaimer purports to extinguish liability for breach of express promises in the Appropriate Action and Removal Provisions, it is void. *See*

1  *Gross v. Symantec Corp.*, 2012 WL 3116158, at *11 (N.D. Cal. July 31, 2012) ("California courts

2  generally regard warranty disclaimers as void when they contradict the express terms of the alleged

3  warranty."); *Teknekron Customer Info. Sols., Inc. v. Watkins Motor Lines, Inc.*, 1994 WL 11726,

4  at *5 (N.D. Cal. Jan. 5, 1994) ("disclaimer of an express warranty is essentially contradictory").

5      ***Third***, Plaintiffs allege that Meta has knowingly solicited, assisted and facilitated deceptive

6  advertisers through its sales and enforcement teams for years. (¶¶ 1-9, 36-64). Given these

7  allegations of intent, Section 4.3 of the TOS is void under California Civil Code § 1668, which

8  "invalidate[s] liability limitations when intentional conduct is alleged." *Gerber v. Twitter, Inc.*,

9  2024 WL 5173313, at *8 (N.D. Cal. Dec. 18, 2024); *see also Doe*, 690 F. Supp. 3d at 1084-85

10  (based on Section 1668's policy against contracts that exempt a party from responsibility for

11  "willful injury," declining to dismiss breach of contract claims under liability limitation clause in

12  case alleging intentional conduct by Meta).

13      ***Fourth***, courts in this District have held that similar liability limitations appearing in the

14  contracts of Meta's peers are procedurally and substantively unconscionable. *See Gerber*, 2024

15  WL 5173313, at *6-7 ("as is" provision and limitation of liability in Twitter TOS was "at least

16  somewhat procedurally unconscionable," and substantively unconscionable because there is "no

17  reasonable commercial justification" for a technology giant like Twitter to "limit [the] ability to

18  pursue claims and remedies" when it has the resources to manage security risks); *In re Yahoo! Inc.*

19  *Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1138 (N.D. Cal. 2018) (plaintiffs

20  adequately pled procedural and substantive unconscionability with respect to Yahoo's liability

21  limitation).

22      Meta is the world's largest social media company, and thus plainly has the investigative,

23  financial, and technical resources to more effectively crack down on scam ads appearing on

24  Facebook.  Yet, Meta has deliberately refused to do so because scam ads generate tens of billions

25  of dollars in sales. (¶¶ 65-68, 72). Thus, to the extent Section 4.3 purports to extinguish the liability

26  of a technology giant like Meta for intentional breach of express promises to billions of individual

27  users without any negotiating power, Section 4.3 has "a high degree of substantive

28  unconscionability" under California's sliding scale approach even if the level of procedural

unconscionability is lower. *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1099 (9th Cir. 2024) (applying sliding scale approach to unconscionability); *see also Gerber*, 2024 WL 5173313, at *8 ("in light of Plaintiffs' allegations of intentional conduct, the Court finds that the TOS is unconscionable, such that the negligence and contract claims are actionable.").

The ruling in *Bass* concerning unconscionability is distinguishable because the case concerned "an obscure flaw in Meta's code and Meta took immediate action to fix it." *Doe*, 690 F. Supp. 3d at 1084; *see also Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1032 (N.D. Cal. 2019) (Meta became aware of data breach on September 14, 2018, and isolated security flaws on September 25, 2018). Thus, the level of unconscionability was far lower in *Bass* than it was in *Doe*, as well as in this case where Meta has knowingly solicited, assisted and facilitated deceptive advertisers for years in order to maximize revenue (¶¶ 1-9, 62-64, 69-71, 95-101). As a review of internal Meta documents found, "Facebook has been aware of an epidemic of violative ads and scammers operating out of China *for years*." (¶ 57).

Additionally, *Bass* concluded there was no unconscionability because "[n]o one is forced to enroll in Facebook's social media service." *Bass*, 394 F. Supp. 3d at 1038. That reasoning is flawed—as the largest social media platform in the world, Facebook has become a staple of 21st-century life with *billions* of people accessing it daily for news, product recommendations, and social interaction to such an extent that many influential figures consider it a utility. (¶ 24). The law treats businesses like Facebook that serve the public interest more strictly. *See Tunkl v. Regents of Univ. of Cal.*, 383 P.2d 441, 442-47 (1963). Here, Facebook easily meets *Tunkl*'s criteria for a service affecting the public interest—"a service of great importance to the public, which is often a matter of practical necessity for some members of the public . . . [and] [a]s a result . . . the party [providing the service] . . . possesses a decisive advantage of bargaining strength against any member of the public who seeks his services . . . [and] [i]n exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation . . . [and] the . . . property of the purchaser [here, personal data] is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents." *Id.* at 445-46.

### 2.    *Meta Breached Enforceable Promises in the TOS and COS.*

Meta argues that even if the Appropriate Action Provision and Removal Provision contain enforceable promises, it did not breach them (Br. at 5-6).   However, Meta ignores multiple allegations in the FAC to the contrary. *First*, instructing workers tasked with ad enforcement to "ignore hacked accounts and other violations as long as Facebook gets paid" (¶ 55), and to "look the other way" when detecting deceptive China-based ads because Meta "want[s] China revenue" (¶ 57), plainly breaches the promise in the Appropriate Action Provision to "take *appropriate* action" when Meta learns of conduct harmful to users. *Second*, Facebook's sales teams have actively courted and assisted known scammers (¶¶ 36-41, 43, 46-54), which *promotes* the publication of deceptive ads that defraud and exploit Facebook users for money, and thus breaches the promise in the Removal Provision to "*remove* content" that "purposefully deceives, willfully misrepresents or otherwise defrauds or exploits others for money or property." *Third*, Meta's lax enforcement leading to the opening of new accounts by scammers (¶ 42), and repeated republication of scam ads despite multiple complaints (¶¶ 77-78), breaches the promise in the Appropriate Action Provision to "take appropriate action" such as "removing content" or "disabling an account." *See Doe*, 690 F. Supp. 3d at 1086 (Meta breached promise in Appropriate Action Provision to "take appropriate action," among others, when it "knew its filter was not effective and could have improved its filter or *taken other steps* to block the transfer of the sensitive or protected information."); *Facebook Privacy Litig.*, 402 F. Supp. 3d at 801 (Facebook breached promise that "you can control how [content and information you post on Facebook] is shared through your privacy and application settings," when Facebook "disclosed user information to whitelisted apps and business partners without permission, and without giving the plaintiffs the ability to prevent this disclosure.").[2]

### B.  Plaintiffs Adequately Plead the Covenant Claim

Beyond express promises, "every contract includes an implicit promise not to take an

---

[2] Meta purports to distinguish *Barnes v. Yahoo, Inc.*, 570 F.3d 1096 (9th Cir. 2009) (Br. at 5 n.2), but ignores that the Ninth Circuit applied *Barnes* broadly to the "enforceable promises" made by Meta to Plaintiffs. *Calise*, 103 F.4th at 743.

action that would deprive the other contracting party of the benefits of their agreement." *Facebook Privacy Litig.*, 402 F. Supp. 3d at 802; *see also Careau & Co. v. Sec. Pac. Bus. Credit, Inc*., 222 Cal. App. 3d 1371, 1395 (Ct. App. 1990) (covenant claim must allege conscious and deliberate act that "unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.").

The Covenant Claim here is not duplicative of the Contract Claim since even if Meta were able to concoct a technical argument as to why it did not violate the literal terms of the Appropriate Action and Removal Provisions, Meta's willful misconduct would still have frustrated the stated purposes of those provisions. *See Facebook Privacy Litig.*, 402 F. Supp. 3d at 802 (even if Meta did not violate literal terms of contract, Meta's frustration of contract's purpose stated covenant claim); *see also Chauhan v. Google LLC*, 2023 WL 5004078, at *3 (N.D. Cal. Aug. 4, 2023) (covenant claim not duplicative of contract claim); *Doe*, 690 F.Supp.3d at 1086 n.10 (same).

Specifically, the stated purpose of the Appropriate Action Provision is to make Facebook users "feel safe" (because "[p]eople will only build community on Facebook if they feel safe."). (¶ 32). Further, the stated purpose of Meta's promise in the Removal Provision to "remove content" that deceives and exploits is to "prevent fraudulent activity that can harm people." (¶ 34). Meta's deliberate refusal to crack down on such ads (¶¶ 65-72)—leading to an epidemic of scam ads on Facebook (¶¶ 57, 64)—plainly frustrates the purposes of those two provisions. In particular, the FAC alleges that Facebook users report being harmed by scam ads, and feeling less safe using Facebook because of such ads. *See, e.g.*, ¶ 70 ("there are groups on Facebook devoted to users lamenting about being scammed by deceptive ads on Facebook"); ¶ 71 ("As one Facebook user warns, 'Everyone learns the hard way. Don't order anything frm a Facebook ad!! Ever!'"); *see also Facebook Privacy Litig.*, 402 F. Supp. 3d at 802 (accepting allegations as true, difficult to conclude that Facebook did not frustrate the purposes of the contract, and intentionally so).

*Young v. Facebook, Inc*., 790 F. Supp. 2d 1110 (N.D. Cal. 2011) supports Plaintiffs' position on this point.  In *Young*, the court noted that bad faith conduct "could implicate the implied covenant of good faith and fair dealing," and only dismissed the covenant claim because Meta had legitimate grounds for terminating the plaintiff's account (i.e., non-compliance with Facebook's

terms). *Id.* at 1118. Here, in contrast, Meta deliberately refuses to keep users safe and prevent harm caused by fraudulent ads for an illegitimate reason, *i.e.*, to maximize its own revenue.[3]

### C. Plaintiffs Adequately Plead the Failure-to-Warn Claim

Contrary to Meta's contention (Br. at 1), California law recognizes a duty to warn in cases of (i) misfeasance where the "defendant has created a risk," and (ii) nonfeasance where the defendant has a "special relationship" with the "foreseeable victim" of a third party's misconduct. *Doe No. 14 v. Internet Brands, Inc.*, 2016 WL 11824793, at *4 (C.D. Cal. Nov. 14, 2016). Indeed, the Ninth Circuit expressly recognized the nonfeasance theory under California law. *Calise*, 103 F.4th at 741 ("*In California*, there is a 'duty to warn a potential victim of third-party harm when a person has a special relationship to either the person whose conduct needs to be controlled or ... *to the foreseeable victim of that conduct*.").

Alternatively, Meta seeks to mischaracterize the Failure-to-Warn Claim as a product liability claim. (Br. at 7). But Meta cannot alter the causes of actions and allegations in the FAC to fit its argument. Here, Plaintiffs' Failure-to-Warn Claim is not premised on product liability principles, unlike the failure to warn claims in *Social Media Cases*, which could not proceed precisely because they invoked product liability principles. No. 22STCV21355, 2023 WL 6847378, at *14-15, 21 (Cal. Super. Oct. 13, 2023).[4]

---

[3] Meta claims that "Plaintiffs do not identify a specific contractual provision that was frustrated by the conduct alleged" (Br. at 7), but as shown, the misconduct alleged frustrated the purposes of the Appropriate Action and Removal Provisions. *See* ¶ 140 (citing provisions in paragraphs 132-34). Accordingly, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) is distinguishable. That decision cites *Careau*, *supra* (956 F.3d at 611), but *Careau* holds that a covenant claim is adequately plead where the defendant deliberately "frustrates the agreed common purposes and disappoints the reasonable expectations of the other party." 222 Cal. App. 3d at 1395. As shown, that is precisely what Meta continues to do here.

[4] The other cases cited at page 12 and footnotes 5 and 6 of Meta's brief are similarly distinguishable. *Jacobs v. Meta Platforms, Inc.*, 2023 WL 2655586 (Cal.Super. Mar. 10, 2023) concerned a negligent design claim. *Id.* at *1. Unlike here, the failure to warn claims in *Ziencik v. Snap, Inc.*, 2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) and *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809 (N.D. Cal. 2023) invoked product liability principles. *See* 2023 WL 2638314, at *4; 702 F. Supp. 3d at 818. Finally, the plaintiffs in *James v. Meow Media, Inc.*, 300 F.3d 683 (6th Cir. 2002) and *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994 (C.D. Cal. 2022) also invoked product liability principles, and at any rate, did not assert failure to warn claims. *See* 300 F.3d. at 688, 700; 639 F. Supp. 3d at 1005.

1    In sum, to sustain the Failure-to-Warn Claim under California law, Plaintiffs need not

2    allege that Facebook is a product. To the contrary, as Meta concedes, Facebook is a service (Br. at

3    12), and all kinds of *service* providers—ranging from hotels to mental health professionals—are

4    liable under California law when they fail "to protect another from foreseeable injury caused by a

5    third party." *Internet Brands*, 2016 WL 11824793, at *4. Thus, Plaintiffs need only adequately

6    allege misfeasance, or nonfeasance and a special relationship, which they have done.

7                    *1. Plaintiffs Adequately Plead Misfeasance*

8    Misfeasance exists when a defendant "is responsible for making the plaintiff's position

9    worse, *i.e.,* defendant has created a risk." *Internet Brands*, 2016 WL 11824793, at *4. "In cases of

10   misfeasance, the question of duty is governed by the standards of ordinary care, i.e. a person

11   ordinarily is obligated to exercise due care in his or her own actions so as not to create an

12   unreasonable risk of injury to others, and this legal duty generally is owed to the class of persons

13   who it is reasonably foreseeable may be injured as the result of the actor's conduct." *Id.*

14   To determine whether Meta owes a duty of care to its users, *Bass* applied the so-called

15   *Rowland* factors: "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff

16   suffered injury, the closeness of the connection between the defendant's conduct and the injury

17   suffered, the moral blame attached to the defendant's conduct, the policy of preventing future

18   harm, the extent of the burden to the defendant and the consequences to the community of

19   imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and

20   prevalence of insurance for the risk involved." 394 F. Supp. 3d at 1039 (listing factors in *Rowland*

21   *v. Christian*, 443 P.2d 561, 564 (1968)).

22   Based on those factors, *Bass* held that Meta owes Facebook users a duty of care because

23   "the lack of reasonable care in the handling of personal information can foreseeably harm the

24   individuals providing the information . . . the information [captured by Meta] was private, and

25   plaintiff plausibly placed trust in Facebook to employ appropriate data security . . . [and] ***[f]rom a***

26   ***policy standpoint, to hold that Facebook has no duty of care here would create perverse***

27   ***incentives for businesses who profit off the use of consumers' personal data to turn a blind eye***

28

1    *and ignore known security risks.*" *Id.*; *accord Facebook Privacy Litig.*, 402 F. Supp. 3d at 799

2    (Meta owed duty to Facebook users to handle their sensitive information with care).

3          As in *Bass*, the *Rowland* factors support finding a duty of care to sustain the Failure-to-

4    Warn Claim against Meta under a misfeasance theory. Meta captures the personal data of Facebook

5    users and uses that data to build detailed profiles of its users to enable them to be targeted with

6    highly effective advertising. (¶¶ 2-3, 23-31). Despite the foreseeable risk that targeting data is

7    exploited by scammers—*see, e.g.*, ¶ 38 (Facebook's data "revolutionized scamming"); ¶ 39

8    (Facebook's algorithm goes out and "find[s] the morons for me.")—Meta did not adequately warn

9    Facebook users that scammers were misusing that data to target them with deceptive ads. (¶¶ 62-

10   64, 69-71, 73-115). Further, Meta has the resources to more effectively crack down on scammers,

11   but has deliberately refused to do so because it is not incentivized to take appropriate action when

12   scam ads generate tens of billions of dollars in sales. (¶¶ 3, 65-68, 72). To hold that Meta has no

13   duty of care in these circumstances "would create perverse incentives for businesses who profit

14   off the use of consumers' personal data to turn a blind eye and ignore known security risks." *Bass*,

15   394 F. Supp. 3d at 1039.

16         In sum, because Meta owes a duty of care to Facebook users (*see* ¶¶ 150-54), and has

17   created a foreseeable risk of harm to such users from deceptive ads—and has profited immensely

18   from that harm—Plaintiffs allege a Failure-to-Warn Claim based on misfeasance. Any contention

19   that Facebook is not liable under a misfeasance theory because scammers initiated the deceptive

20   ads would be wrong. Here, the FAC alleges that Meta created the risk faced by its users, and by

21   its affirmative actions, made users' positions worse, i.e., Meta *affirmatively* solicited and assisted

22   known scammers, and *affirmatively* instructed contractors to ignore "hacked accounts and other

23   violations, and as a result, users suffered harm. (¶¶36-39, 43, 55-56, 67-115). *Cf. Internet Brands*,

24   2016 WL 11824793, at *4 (case does not involve misfeasance since "Plaintiff does *not* allege that

25   Internet Brands' actions somehow created the risk faced by its members or made Jane Doe's

26   position, by its actions, worse."); *see also Facebook Privacy Litig.*, 402 F. Supp. 3d at 799

27   ("plaintiffs do not seek to hold Facebook liable for the conduct of the app developers and business

28

partners; they seek to hold the company liable for its own misconduct with respect to their information.").

### 2.  *Plaintiffs Adequately Plead Nonfeasance and a Special Relationship*

Actionable nonfeasance exists when a defendant fails to warn a plaintiff about a third party's misconduct, and the defendant has a "special relationship" with "the foreseeable victim" of the misconduct. *Calise*, 103 F.4th at 741. Under a nonfeasance theory, the liability analysis here entails two steps: (1) determining whether a special relationship exists between Meta and its users, and, if so, (2) whether the *Rowland* factors warrant holding Meta liable on the Failure-to-Warn Claim. *See* 2016 WL 11824793 (describing two-step analysis).

**Special Relationship:** Citing the *J'Aire* factors used to determine the existence of a special relationship in connection with application of the economic loss rule to services contracts like the TOS and COS, at least one court in this District has found that Meta has a special relationship with its users. *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1021 (N.D. Cal. 2024) (citing *J'Aire Corp. v. Gregory*, 598 P.2d 60, 63 (1979)). Other courts in this District have likewise found a special relationship between social media sites and their users based on the *J'Aire* factors. *In re Yahoo!*, 313 F. Supp. 3d, at 1132-33; *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 654-55 (N.D. Cal. 2020).

While the presence or absence of one *J'Aire* factor is not decisive (*Huynh*, 508 F. Supp. 3d at 655), they are all present here. **First**, the deceptive ads were plainly intended to affect Plaintiffs since Meta generates a significant portion of its revenue from targeted ads, and that revenue stream is affected by the likelihood of users making purchases in response to the ads. (¶¶ 38-39, 66) (*J'Aire* Factor #1). **Second**, it was foreseeable that scammers would abuse Meta's trove of data to target Facebook users with deceptive ads (¶¶ 38-39); indeed, Meta knew that was happening and embraced the phenomenon for years. (¶¶ 36-37, 43, 57) (*J'Aire* Factor #2); *see Bass*, 394 F. Supp. 3d at 1039 (Meta's lack of care in handling personal data can foreseeably cause harm); *Forrest v. Meta Platforms, Inc.*, 737 F. Supp. 3d 808, 813, 821 (N.D. Cal. 2024) (foreseeable victims of scam ads are Facebook users). **Third**, Facebook users suffered injury. (¶¶ 69-71; 73-115) (*J'Aire* Factor #3). **Fourth**, there is a direct connection between the deceptive ads displayed by Meta and the

harm inflicted on Facebook users since deceptive ads are displayed to Facebook users based on their personal data as soon as they log on to Facebook. (¶¶ 27-31, 38-39) (*J'Aire* Factor #4). ***Fifth***, Meta's conduct is morally blameworthy since it has the resources to combat scammers, but refuses to do so because it would lose tens of billions of dollars in revenues. (¶¶ 55-57, 65-68, 72) (*J'Aire* Factor #5). ***Sixth***, from a policy standpoint, shielding Meta from liability here would perversely permit Meta to continue prioritizing revenue over the safety of its users, and profiting from its misconduct. (¶ 72) (*J'Aire* Factor #6); *see Bass*, 394 F. Supp. 3d at 1039 (finding absolving Meta would create perverse incentives to "turn a blind eye" to security risks).[5]

The special relationship between Meta and its users is further confirmed by other criteria recently considered by the California Supreme Court to find a special relationship between colleges and students. *See Regents of Univ. of California v. Superior Ct.*, 413 P.3d 656, 668 (2018) (finding special relationship between colleges and their students because colleges "*have superior control over the environment and the ability to protect students,*" and "[s]tudents *are comparatively vulnerable and dependent on their colleges for a safe environment.*"). Here too, Meta completely controls the environment in which users access Facebook, and the ads that they see. (¶¶ 27-31). Further, Facebook users depend entirely on Meta to keep them safe from deceptive ads. (¶ 32 ("People will only build community on Facebook if they feel safe. We employ dedicated teams around the world and develop advanced technical systems to detect misuse of our Products"); ¶ 34 ("We are committed to making Facebook a safe place.")). Thus, the factors in *Regents* further support finding a special relationship here between Meta and Facebook users.[6]

---

[5] *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136 (2018) is inapt since the connection between the iPhone's design and the plaintiffs' injuries was highly attenuated. *Id.* at 146-47. Here, in contrast, Meta's data powers the ads that deceive its users, and such ads are displayed instantly after a user logs in. (¶¶ 27-31). *Durkee v. C.H. Robinson Worldwide, Inc.* 765 F. Supp 2d 742 (W.D.N.C. 2011) is also inapt since there was "no allegation of . . . failure to warn." *Id.* at 761.

[6] The circumstances here materially differ from those in (i) *Doe v. Uber Technologies, Inc.*, 2020 WL 13801354 (Cal.Super. Nov. 30, 2020), which declined to find a special relationship between Uber and its passengers because of a concern that doing so would require Uber "to constantly and closely monitor crime reports related to use of cars to confirm their services were not involved" *id.* at *5, and (ii) *Internet Brands*, which declined to find a special relationship between the plaintiff and the website because the nefarious third parties there did not use the website, the website did not have any relationship with them, and the court was concerned that expanded warnings would

**Step 2: *Rowland* Factors:** The *Rowland* factors "are essentially the same" as the *J'Aire* factors. *Meta Pixel*, 724 F. Supp. 3d at 1021. Therefore, for the same reasons above, the *Rowland* factors confirm that Meta should be held liable on the Failure-to-Warn Claim under a nonfeasance theory. *See Bass*, 394 F. Supp. 3d at 1039 (imposing duty on Meta based on *Rowland* factors).

### 3. The Economic Loss Rule Does Not Bar the Failure-to-Warn Claim

The economic loss rule does not apply here because (i) as Meta concedes, the TOS is a services contract (*see* Br. at 12) ("*services* like Facebook are not products"), and (ii) under California law, the economic loss rule does not apply to service contracts where there is a special relationship between the parties. *See, e.g.*, *Meta Pixel*, 724 F. Supp. 3d at 1021; *In re Yahoo!*, 313 F. Supp. 3d at 1131-32. As discussed in Point C.2 above, that is precisely the situation here.

### 4. Section 230 of the CDA Does Not Bar the Failure-to-Warn Claim.

While the Ninth Circuit held that Section 230 barred Plaintiffs' negligence claim (*Calise*, 103 F.4th at 744), it recognized that a failure-to-warn claim "may fare better" because it would seek to "impose liability on Meta for failing to warn about fraudulent content." *Id.* The Failure-to-Warn Claim is thus akin to the Contract and Covenant Claims. Those claims avoided Section 230 because they stemmed from liability outside of publisher conduct. *Id.* at 743. Likewise, the Failure-to-Warn Claim stems from Meta's failure to warn Plaintiffs about scam ads. *See Forrest*, 737 F. Supp. 3d at 818 (declining to apply Section 230 exemption to failure to warn claim).[7]

Meta argues that fulfilling its duty to warn would require it to monitor ads. (Br. at 9). Not so. The Failure-to-Warn Claim does not demand that Meta monitor ads and append a warning (like the Surgeon General's warning on cigarettes) to all ads that might be scams. Instead, the Failure-to-Warn Claim demands that Meta "provide adequate warnings" to its users to "screen and verify

---

be detrimental. 2016 WL 11824793, at *2, *5. Here, Meta has a business relationship with the scammers by virtue of getting paid huge sums to display their ads. Additionally, providing adequate warnings to Facebook users would help them more effectively screen for deceptive ads without imposing monitoring burdens on Meta. *See* Point C.4 below. Finally, the fact that Facebook is a staple of 21st century life that many now consider a utility (¶ 24) makes this case *sui generis*.

[7] While *Forrest* dismissed the failure to warn claim, it was with leave to amend and only because the plaintiff was a "secondary victim," and the foreseeable victims of scam ads are Facebook users. 737 F. Supp. 3d at 821-22.

the legitimacy" of ads. (¶¶ 153-54). Thus, the Failure-to-Warn Claim casts the monitoring burden on Facebook users, not Meta, which puts this case on all fours with *Internet Brands* where the duty to warn did not require the website to monitor content. *Calise*, 103 F.4th at 741. *Estate of Bride* is not to the contrary since (unlike here) the failure to warn claim there invoked a product liability theory that faulted the website "for not moderating content." 112 F.4th at 1180.[8]

Finally, beyond the foregoing arguments, the concurring opinion in *Calise* advocated for revisiting the Court's precedent to the extent that precedent has "expanded Section 230(c)'s scope to provide functional immunity to internet companies *even when they are aware (or should be aware) of unlawful content on their websites*." 103 F.4th at 747-48 (Nelson, J. concurring). The concurring opinion in *Calise* thus signals that courts should not be so quick to apply Section 230 in cases like this one where Meta has deliberately failed to adequately warn Facebook users about scam ads *for years* and instead has continued to profit immensely and generate tens of billions of dollars in sales from scam ads. (¶¶ 36-72).

## CONCLUSION

For all of the foregoing reasons, Plaintiffs have adequately pled the Contract Claim, the Covenant Claim, and the Failure-to-Warn Claim, and the Court should deny Meta's motion to dismiss in its entirety. Alternatively, if the Court concludes that any of the foregoing claims are inadequately plead, Plaintiffs respectfully seek leave to amend. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (dismissal with prejudice and without leave to amend is not appropriate unless it is clear that the complaint could not be saved by amendment).

---

[8] *Herrick v. Grindr LLC*, 765 F. App'x 586 (2d Cir. 2019) is distinguishable for the same reason, i.e., the failure to warn claim there was inextricably linked to "alleged failure to edit, monitor, or remove the offensive content." *Id.* at 591. The two state law cases cited by Meta (Br. at 10 n.4)—*Wozniak* and *Facebook*—both predate *Calise*, which explains that *Internet Brands* turns on whether the duty to warn requires monitoring content. 103 F.4th at 741. Contrary to the holdings in those two cases, *Calise* suggests that the duty to warn applies to warnings about content on platforms like Facebook so long as the duty does not trigger a monitoring burden (which is the case here, as shown).

1    DATED: April 21, 2025                **LEVI & KORSINSKY LLP**

2                                         By: */s/ Mark S. Reich*

3                                         Mark S. Reich (admitted *pro hac vice*)
                                          Courtney E. Maccarone (admitted *pro hac vice*)

4                                         33 Whitehall Street, 17th Floor
                                          New York, NY 10004

5                                         Telephone: 212-363-7500
                                          Facsimile: 212-363-7171

6                                         Email: mreich@zlk.com
                                                   cmaccarone@zlk.com

7

8                                         Adam M. Apton (State Bar No. 316506)
                                          **LEVI & KORSINSKY LLP**

9                                         388 Market Street, Suite 1300
                                          San Francisco, CA 94111

10                                        Telephone: 415-373-1671
                                          Facsimile: 212-363-7171

11                                        Email: aapton@zlk.com

12
                                          *Attorneys for Plaintiffs and the Proposed Classes*
13

14                                        Joshua E. Fruchter (admitted *pro hac vice*)
                                          **WOHL & FRUCHTER LLP**

15                                        25 Robert Pitt Drive, Suite 209G
                                          Monsey, NY 10952

16                                        Telephone: 845-290-6818
                                          Facsimile: 718-504-3773

17                                        Email: jfruchter@wohlfruchter.com

18
                                          *Additional Counsel for Plaintiffs*
19

20

21

22

23

24

25

26

27

28