GIBSON, DUNN & CRUTCHER LLP
CHRISTOPHER CHORBA, SBN 216692
SAMUEL ECKMAN, SBN 308923
JEREMY WEESE, SBN 336180
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520
cchorba@gibsondunn.com
seckman@gibsondunn.com
jweese@gibsondunn.com

*Attorneys for Defendant Meta Platforms, Inc.*

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| CHRISTOPHER CALISE and ANASTASIA GROSCHEN, Individually and On Behalf of All Others Similarly Situated, | CASE NO. 4:21-CV-06186-JSW |
| Plaintiffs, | **DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |
| v. | |
| META PLATFORMS, INC., | |
| Defendant. | |

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1

II.  ARGUMENT ............................................................................................................. 2

    A.  Plaintiffs Do Not Allege That Meta Breached an Enforceable Promise Sufficient to Support a Claim for Breach of Contract (Count I)................................. 2

        1.  The TOS and Community Standards Do Not Impose the Duties Plaintiffs Assert. .......................................................................................... 3

        2.  Plaintiffs Do Not Plausibly Allege "Breach." .................................................. 8

    B.  Plaintiffs Cannot Assert a Claim for Breach of the Covenant of Good Faith and Fair Dealing (Count II).................................................................................... 9

    C.  Plaintiffs Do Not State a "Failure-to-Warn" Claim (Count III)................................. 10

        1.  Section 230 Bars Plaintiffs' Claim.................................................................. 11

        2.  The Economic Loss Rule Also Bars Plaintiffs' Claim. .................................... 13

        3.  Plaintiffs Do Not Allege Essential Elements of Their Claim. ......................... 14

III.  CONCLUSION ........................................................................................................ 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
CASE NO. 4:21-CV-06186-JSW

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) ................................................................................................7

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ....................................................6, 7, 10

*Biakanja v. Irving*,
49 Cal. 2d 647 (1958) ..............................................................................................13

*Estate of Bride by and through Bride v. Yolo Technologies, Inc.*,
112 F.4th 1168 (9th Cir. 2024) ..........................................................................11, 12

*Brown v. USA Taekwondo*,
11 Cal. 5th 204 (2021) ............................................................................................14

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) ..............................................................5, 11, 13, 14

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016) ..............................................................3

*Careau & Co. v. Sec. Pac. Bus. Credit*,
222 Cal. App. 3d 1371 (1990) ............................................................................9

*Cross v. Facebook, Inc.*,
14 Cal. App. 5th 190 (2017) ................................................................................3

*Damner v. Facebook Inc.*,
2020 WL 7862706 (N.D. Cal. Dec. 31, 2020) ................................................6

*Daniels v. Alphabet, Inc.*,
2021 WL 1222166 (N.D. Cal. Mar. 31, 2021) ................................................9

*Doe (K.B.) v. Backpage.com, LLC*,
2025 WL 719080 (N.D. Cal. Mar. 3, 2025) ......................................................12

*Doe No. 14 v. Internet Brands, Inc.*,
2016 WL 11824793 (C.D. Cal. Nov. 14, 2016) ................................................15

*Doe v. Grindr Inc.*,
128 F.4th 1148 (9th Cir. 2025) ........................................................................2, 11

*Doe v. Internet Brands, Inc.*,
824 F.3d 846 (9th Cir. 2016) ............................................................................11

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ....................................................3, 4, 10

ii

Gibson, Dunn &
Crutcher LLP

*In re Facebook PPC Advert. Litig.*,
    709 F. Supp. 2d 762 (N.D. Cal. 2010) ...................................................................1, 10

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ...................................................................4, 10

*Forrest v. Meta Platforms, Inc.*,
    737 F. Supp. 3d 808 (N.D. Cal. 2024) ........................................................................12

*Gonzales v. Harrington*,
    2012 WL 3939348 (N.D. Cal. Sept. 10, 2012) .............................................................4

*Heckman v. Live Nation Ent., Inc.*,
    686 F. Supp. 3d 939 (C.D. Cal. 2023).........................................................................7

*J'Aire Corp. v. Gregory*,
    24 Cal. 3d 799 (1979) ...........................................................................................13, 15

*Jones v. Ghaly*,
    2022 WL 1128680 (N.D. Cal. Apr. 15, 2022) .............................................................2

*Kennedy v. Meta Platforms Inc.*,
    2024 WL 4565091 (N.D. Cal. Oct. 23, 2024) .............................................................6

*King v. Facebook, Inc.*,
    2019 WL 6493968 (N.D. Cal. Dec. 3, 2019) ...............................................................3

*Long v. Dorset*,
    369 F. Supp. 3d 939 (N.D. Cal. 2019) ......................................................................3, 6

*Lundy v. Facebook Inc.*,
    2021 WL 4503071 (N.D. Cal. Sept. 30, 2021) ...........................................................4

*May v. Google LLC*,
    2024 WL 4681604 (N.D. Cal. Nov. 4, 2024)...............................................................7

*In re Meta Pixel Tax Filing Cases*,
    724 F. Supp. 3d 987 (N.D. Cal. 2024) ......................................................................13

*N. Am. Chemical Co. v. Super. Ct.*,
    59 Cal. App. 4th 764 (1997)......................................................................................13

*New England Country Foods, LLC v. VanLaw Food Prods., Inc.*,
    567 P.3d 63, 68 (Cal. 2025) .......................................................................................7

*Olson v. Child.'s Home Soc'y*,
    204 Cal. App. 3d 1362 (1988)................................................................................2, 15

*Pilliod v. Monsanto Co.*,
    67 Cal. App. 5th 591 (2021)......................................................................................10

*Regents of Univ. of Cal. v. Super. Ct.*,
    4 Cal. 5th 607 (2018)...........................................................................................14, 15

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
CASE NO. 4:21-CV-06186-JSW

*Sheen v. Wells Fargo Bank, N.A.*,
　　12 Cal. 5th 905 (2022) ........................................................................................13, 14

*Tunkl v. Regents of the University of California*,
　　60 Cal. 2d 92 (1963) ....................................................................................................7

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
　　313 F. Supp. 3d 1113 (N.D. Cal. 2018) .....................................................................13

*Young v. Facebook, Inc.*,
　　790 F. Supp. 2d 1110 (N.D. Cal. 2011) ..................................................................9, 10

*Young v. Facebook, Inc.*,
　　2010 WL 4269304 (N.D. Cal. Oct. 25, 2010)..........................................................3, 6

**Statutes**

Cal. Civ. Code § 1670.5(a) .................................................................................................7

**Treatises**

Restatement (Third) of Torts: Physical & Emotional Harms § 40(b)................................15

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
CASE NO. 4:21-CV-06186-JSW

# I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs allege they purchased products from sellers that operated third-party websites, and that they either received no products or products that were not as described. But instead of suing the sellers, Plaintiffs seek to hold Meta liable. Plaintiffs do not claim that Meta created any of the ads, sold the products, or operated the third-party websites, yet they insist Meta is responsible because it breached supposed contractual duties to remove the ads and failed to warn Facebook users that they may encounter such ads. This Court already dismissed Plaintiffs' consumer protection and negligence claims, leaving only claims for breach of contract and "negligent failure to warn." The Court should dismiss these remaining claims for several reasons:

*First*, Plaintiffs do not state a breach-of-contract claim because Meta's Terms of Service ("TOS") and Community Standards do not obligate Meta to detect and remove third-party content that allegedly violates Facebook's policies. A long line of authority expressly holds as much. (*See infra* pp. 3–4.) Even if the TOS and Community Standards did impose such an obligation, Plaintiffs do not allege Meta breached it. Instead, in their Amended Complaint and Opposition, Plaintiffs suggest only that Meta should have been suspicious of *all* advertisers from China because, in their telling, many Chinese advertisers post fraudulent content.

*Second*, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing should be dismissed because there is no express term in the TOS or Community Standards on which Plaintiffs can "hinge" an implied duty. *In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d 762, 770 (N.D. Cal. 2010). Even if there were, Plaintiffs' claim is duplicative of their contract claim, because it does not "go beyond the statement of a mere breach" but rather, "relying on the same alleged acts, simply seek[s] the same damages or other relief already claimed in [the] companion contract cause of action." *Id.* In their Opposition, Plaintiffs insist their claim "is not duplicative of the Contract Claim since even if Meta were able to concoct a technical argument as to why it did not violate the literal terms of the" TOS and Community Standards, "Meta's willful misconduct would still have frustrated the stated purposes of those provisions." (Dkt. 60 at 8.) But whether the claims are duplicative turns on the allegations underlying those claims, not their ultimate merits.

Plaintiffs' "negligent failure to warn" claim should be dismissed for several reasons: (a) it is

barred by Section 230 because it would treat Meta as a publisher of third-party content, and the Ninth Circuit has consistently held that Section 230 bars failure-to-warn claims where, as here, the claims would impose "a duty to warn users of 'a general possibility of harm' resulting from the App" (*Doe v. Grindr Inc.*, 128 F.4th 1148,1154 (9th Cir. 2025)); (b) the economic loss rule bars this claim because binding precedent establishes that websites like Facebook are not in a "special relationship" with users; and (c) the claim does not fall within an exception to the rule that a defendant has no duty to warn of third-party harm because the relationship between Meta and Facebook users does not "involve some kind of dependency or reliance" (*Olson v. Child.'s Home Soc'y*, 204 Cal. App. 3d 1362, 1366 (1988)).

For all of these reasons, the Court should dismiss this case in its entirety.

## II.    ARGUMENT

This Court should dismiss Plaintiffs' remaining claims: (A) as to the contract claim, Plaintiffs cannot show that Meta had any enforceable obligation or that Meta "breached" it; (B) Plaintiffs cannot repackage their contract claim as a breach of the implied covenant of good faith and fair dealing, because it is duplicative of their contract claim; and (C) the negligent failure-to-warn claim is barred by Section 230 and the economic loss rule, and there is no duty to warn of the risk of third-party harm.

### A.    Plaintiffs Do Not Allege That Meta Breached an Enforceable Promise Sufficient to Support a Claim for Breach of Contract (Count I)

Plaintiffs allege that Meta breached two provisions.[1]  First, they allege Meta violated the second sentence of the following language from Section 1 of the TOS (Dkt. 60 at 2): "We employ dedicated teams around the world and develop advanced technical systems to detect misuse of our Products, harmful conduct towards others, and situations where we may be able to help support or protect our community.  If we learn of content or conduct like this, we will take appropriate action—for example, offering help, removing content, removing or restricting access to certain features, disabling an account, or contacting law enforcement."  (Dkt. 56-1 at 2.)  Second, Plaintiffs allege Meta violated Section 5 of the Community Standards, which states in part: "In an effort to prevent fraudulent activity that can harm people or businesses, we remove content that purposefully deceives, willfully

---

[1]  The Opposition defends only the two provisions discussed below (Dkt. 60 at 2), so Plaintiffs have waived any argument that Meta breached other provisions of the TOS or Community Standards.  *See Jones v. Ghaly*, No. 21-cv-05828-JSW, 2022 WL 1128680, at *2 (N.D. Cal. Apr. 15, 2022).

misrepresents or otherwise defrauds or exploits others for money or property."  (Dkt. 56-5 at 1.)
Plaintiffs do not state a claim for breach of contract with respect to these provisions for two reasons.

### 1. *The TOS and Community Standards Do Not Impose the Duties Plaintiffs Assert.*

Neither of these provisions imposes the contractual duties Plaintiffs assert—namely, to detect and remove specific content that allegedly violates Facebook's policies.  A long line of authority is in accord.  *See, e.g.*, *Long v. Dorset*, 369 F. Supp. 3d 939, 948 (N.D. Cal. 2019), *aff'd*, 854 F. App'x 861 (9th Cir. 2021), *vacated in part on other grounds*, 2021 WL 7829668 (N.D. Cal. May 21, 2021); *King v. Facebook, Inc.*, 2019 WL 6493968, at *2 (N.D. Cal. Dec. 3, 2019); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016); *Young v. Facebook, Inc.*, 2010 WL 4269304, at *3 (N.D. Cal. Oct. 25, 2010); *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 201 (2017).

The Court should reject Plaintiffs' attempt to distinguish these cases or limit them to their facts. (Dkt. 60 at 3.)  The cases broadly hold that "Facebook's *Terms of Service* 'place restrictions on users' behavior, they 'do not create affirmative obligations'" on Meta of the sort Plaintiffs seek to impose. *Caraccioli*, 167 F. Supp. 3d at 1064 (emphasis added); *see* Dkt. 56-1 § 4.5 ("These Terms . . . make up the entire agreement between you and Facebook, Inc. regarding *your use* of our Products." (emphasis added)).  Against the plain language of the TOS and Community Standards and the weight of these holdings, Plaintiffs ask the Court to ignore them.  For example, according to Plaintiffs, *Young* "did not hold that Facebook's TOS categorically 'does not create affirmative obligations'" but rather "concerned a plaintiff who had failed to identify an enforceable promise that Facebook breached." (Dkt. 60 at 3.)  That is a distinction without a difference.  And other courts have rejected Plaintiffs' limited reading of *Young*, holding that the logic of *Young* goes beyond a specific provision and applies to Meta's obligations under the *entire* TOS.  In *King*, for example, Judge Orrick noted that the plaintiff "has not identified . . . 'the specific provision of the contract allegedly breached by the defendant,'" but concluded that failing was immaterial because, "[a]ssuming that the contractual basis for King's breach claims is the Terms of Use (Terms) which Facebook requires users to agree to, the claim lacks merit" since the TOS "'do not create affirmative obligations' on Facebook." 2019 WL 6493968, at *2.

Plaintiffs claim *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023), supports their argument that Section 1 of the TOS "creat[es] an enforceable promise." (Dkt. 60 at 2.)  But *Doe*

assumed without analyzing that the TOS imposed obligations on Meta, and assessed only whether the alleged promises were "sufficiently definite." *Doe*, 690 F. Supp. 3d at 1085. The court did not consider (or even mention) *Young*, *King*, or any of the other decisions discussed above. *See Gonzales v. Harrington*, No. 11-cv-02018-JSW, 2012 WL 3939348, at *3 (N.D. Cal. Sept. 10, 2012) ("[C]ases are not authority for propositions not considered."). It would be particularly inappropriate to read *Doe* as rejecting *sub silentio* that caselaw considering that *Doe* was authored by Judge Orrick, whose decision in *King* expressly endorsed that authority. Moreover, *Doe* had nothing to do with monitoring or removing third-party content on Facebook. Rather, the plaintiffs in that case alleged that their "healthcare providers . . . installed the Meta Pixel on [their] patient portals" such that, "when [the plaintiffs] logged into their patient portal on their medical provider's website, the Pixel transmitted information to Meta" that "revealed their status as patients." 690 F. Supp. 3d at 1074.

The only other support Plaintiffs offer is *Lundy v. Facebook Inc.*, 2021 WL 4503071 (N.D. Cal. Sept. 30, 2021), and *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019). (Dkt. 60 at 4.) But those cases did not consider whether the relevant documents— the "privacy policy" and the "Data Use Policy" (*id.*)—create enforceable promises, and thus did not consider *Young* and its progeny. Those cases also did not involve the detection or removal of third-party content. The plaintiffs in *Lundy* alleged that "Facebook breached its contractual obligation to respect Plaintiffs' and Class members' privacy settings and not to *collect*, store and use and monetize their location data derived from their IP addresses in connection with targeted advertising." 2021 WL 4503071, at *2. And *In re Facebook* involved an allegation that Meta breached a representation that users "own all of the content and information [they] post on Facebook" and "can control how it is shared through [their] privacy and application settings" by "disclos[ing] user information to whitelisted apps and business partners without permission." 402 F. Supp. 3d at 801. That Meta may have allegedly promised not to use Facebook user data in certain ways says nothing about whether it assumed any binding obligations with respect to the detection and removal of third-party content.

Meanwhile, Plaintiffs do not identify *any* authority for the proposition that the Community Standards obligated Meta to detect and remove content that may violate Facebook's policies. They argue that the Ninth Circuit's opinion in this case "suggested that the Removal Provision can be

4

interpreted as an enforceable promise by Meta to remove deceptive ads seeking to exploit Facebook users for money" (Dkt. 60 at 3), but the Ninth Circuit expressly *declined* to reach this question (*see Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 743 n.5 (9th Cir. 2024)).

The Community Standards impose no such obligations. The TOS are explicit that the Community Standards merely "outline our standards regarding content *you post* to Facebook and *your activity* on Facebook and other Facebook Products." (Dkt. 56-1 at 9 [TOS § 5] (emphases added).) And the language from the Community Standards invoked by Plaintiffs is simply the "Policy Rationale" to a section that outlines what users may post. (Dkt. 56-5 at 1 [Community Standards § 5] ("Do not post: Content that provides instructions on, engages in, promotes, coordinates, encourages, facilitates, admits to, recruits for, admits to the offering, or solicitation of any of the following activities: Deceiving others to generate a financial or personal benefit to the detriment of a third party or entity.").)

Even if Section 1 of the TOS and Section 5 of the Community Standards could be read as Plaintiffs suggest, that reading would be disclaimed by Section 4.3 of the TOS:

> **3. Limits on liability**
> We work hard to provide the best Products we can and to specify clear guidelines for everyone who uses them. Our Products, however, are provided "as is," and we make no guarantees that they always will be safe, secure, or error-free, or that they will function without disruptions, delays, or imperfections. To the extent permitted by law, we also DISCLAIM ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT. We do not control or direct what people and others do or say, and we are not responsible for their actions or conduct (whether online or offline) or any content they share (including offensive, inappropriate, obscene, unlawful, and other objectionable content).
>
> We cannot predict when issues might arise with our Products. Accordingly, our liability shall be limited to the fullest extent permitted by applicable law, and under no circumstance will we be liable to you for any lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to these Terms or the Facebook Products, even if we have been advised of the possibility of such damages. Our aggregate liability arising out of or relating to these Terms or the Facebook Products will not exceed the greater of $100 or the amount you have paid us in the past twelve months.

(Dkt. 56-1 at 8.)  Courts routinely invoke this provision to dismiss claims like the one asserted here.[2]

The Court should reject each of Plaintiffs' four arguments against enforcing Section 4.3.  First, Plaintiffs claim Section 4.3's second paragraph establishes that the provision "does not extinguish liability; instead, it caps liability per user at 'the greater of $100 or the amount you have paid us in the past twelve months.'"  (Dkt. 60 at 4.)  But this contention ignores the first paragraph, which "(1) disclaim[s] any guarantee that Facebook . . . will be safe, secure, or error-free, or operate without disruptions; and (2) disclaim[s] liability for third-party acts or conduct."  *Kennedy*, 2024 WL 4565091, at *3.  Read together with the first paragraph, the $100 cap on liability applies only when the broader release is not enforceable.  (*See* Dkt. 56-1 at 8 [TOS § 4.3] ("[O]ur liability will be limited to the fullest extent permitted by applicable law . . . .").)

Second, Plaintiffs assert that "to the extent Section 4.3's warranty disclaimer purports to extinguish liability for breach of express promises in the [TOS] and [Community Standards] Provisions, it is void" under caselaw "regard[ing] warranty disclaimers as void when they contradict the express terms of the alleged warranty."  (Dkt. 60 at 4.)  But Section 4.3 does not contradict any express term; rather, it confirms that Meta made *no* express promise regarding "what others do or say" on Facebook, including "any content they share."  (Dkt. 56-1 at 8; *see Damner*, 2020 WL 7862706, at *7 (dismissing a breach-of-contract claim where the TOS "makes clear that Facebook did *not* promise to safeguard Plaintiff's private information").)

Third, Plaintiffs further argue that, "[g]iven the[ir] allegations of intent, Section 4.3 of the TOS is void under California Civil Code § 1668, which 'invalidate[s] liability limitations when intentional conduct is alleged.'"  (Dkt. 60 at 5.)  But as the California Supreme Court recently held, "[w]here the

[2]  *See, e.g.*, *Long*, 369 F. Supp. 3d at 949 (dismissing contract claim because "the ToS disclaimed the type of harm plaintiff alleges here"); *Kennedy v. Meta Platforms Inc.*, 2024 WL 4565091, at *3 (N.D. Cal. Oct. 23, 2024) (dismissing contract claims because the TOS "explicitly (1) disclaim any guarantee that Facebook or Instagram will be safe, secure, or error-free, or operate without disruptions; and (2) disclaim liability for third-party acts or conduct"); *Damner v. Facebook Inc.*, 2020 WL 7862706, at *7 (N.D. Cal. Dec. 31, 2020) ("Plaintiff quotes incomplete phrases from Sections 3 and 15 of the [TOS] in support of his breach of contract claim but those sections do not, when read in their entirety, constitute promises to safeguard Plaintiff's private information.  In particular, Section 3 states 'We do our best to keep Facebook safe, *but we cannot guarantee it.*'"); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037 (N.D. Cal. 2019) (noting that "the only way the breach of contract claims may move forward is if the limitation-of-liability clause is deemed unconscionable," and concluding that it is not); *Young*, 2010 WL 4269304, at *3 (declining to find that the TOS imposed obligations on Meta where they "include[] an express disclaimer").

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
CASE NO. 4:21-CV-06186-JSW

Gibson, Dunn &
Crutcher LLP

claims asserted are nothing more than a breach of contractual obligations, section 1668 does not apply." *New England Country Foods, LLC v. VanLaw Food Prods., Inc.*, 567 P.3d 63, 68 (Cal. 2025). Because "[r]eading section 1668 to encompass intentional breaches of contract would erode fundamental distinctions between contract law, which is meant to enforce promises of individual parties, and tort law, which is meant to vindicate social policy," in contract cases "releases are governed by contract principles such as unconscionability." *Id.*

Fourth, Plaintiffs do not establish Section 4.3's unconscionability. "[U]nconscionability has both a 'procedural' and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (cleaned up). Judge Alsup expressly rejected the proposition that Section 4.3 evinces anything more than de minimis procedural unconscionability: "[T]he procedure followed by Facebook was fair. The clause was not buried. The clause was plainly above board and contained clear enough language. True, it is an adhesion contract, but there is no rule that an adhesion contract is per se unconscionable." *Bass*, 394 F. Supp. 3d at 1038.[3] And there is nothing substantively unconscionable about disclaiming liability for third-party content, which is consistent with the federal policy embodied in Section 230. *See May v. Google LLC*, 2024 WL 4681604, at *7 (N.D. Cal. Nov. 4, 2024) (holding that a provision that "disclaim[s] Google's liability against third-party misconduct" was not substantively unconscionable).

Plaintiffs' invocation of *Tunkl v. Regents of the University of California*, 60 Cal. 2d 92 (1963), does not change the analysis. (Dkt. 60 at 6.) That case had nothing to do with unconscionability; rather, it invalidated "a release from liability for future negligence imposed as a condition for admission to a charitable research hospital" on the ground that the agreement "affect[ed] the public interest" and thus "must be invalid under Civil Code section 1668." 60 Cal. 2d at 94. As explained above, the

---

[3] Plaintiffs contend that *Bass* "is distinguishable because the case concerned 'an obscure flaw in Meta's code and Meta took immediate action to fix it.'" (Dkt. 60 at 6.) But whether a contract is unconscionable does not depend on the particular facts of a subsequent dispute. Rather, "under California law, unconscionability of a contract or a contract clause is determined based on the law and facts at the time of the agreement." *Heckman v. Live Nation Ent., Inc.*, 686 F. Supp. 3d 939, 959 n.14 (C.D. Cal. 2023) (cleaned up); *see* Cal. Civ. Code § 1670.5(a) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract.").

California Supreme Court has since rejected the proposition that section 1668 applies to contract claims, as distinct from tort claims like the one involved in *Tunkl*.

### 2. *Plaintiffs Do Not Plausibly Allege "Breach."*

Even if Section 1 of the TOS and Section 5 of the Community Standards obligated Meta to monitor and remove third-party content, Plaintiffs do not plausibly allege that Meta breached them. As discussed above, Section 1 of the TOS states that "*[i]f we learn of content or conduct*" that violates Facebook's policies, "we will take appropriate action—for example, offering help, removing content, removing or restricting access to certain features, disabling an account, or contacting law enforcement." (Dkt. 56-1 at 2 (emphasis added).) Plaintiffs admit that when they informed Meta of the allegedly deceptive ads, Meta promptly investigated, removed those ads, and shut down the offending pages. (*See* Dkt. 56 ¶ 77 ("In November 2020, Mr. Calise reported Miuxo's ad to Facebook. Facebook agreed that the ad violated its Ad Policies and claimed to have removed it."); *id.* ¶ 112 n.52 ("The Kidspunza Facebook page has since been taken down by Facebook.").) Plaintiffs fail to allege whether the ad viewed by Plaintiff Bohl is still visible on Facebook or whether Ms. Bohl notified Facebook of the ad. Because this ad, like many of the ads cited by Plaintiffs, was deceptive only insofar as it involved "a fraudulent 'bait-and-switch' scheme" (FAC ¶ 84), Meta could not have "learn[ed] of the" ad's allegedly deceptive nature unless and until a user informed it that the item shipped was not the one promised. For the same reasons, Plaintiffs do not plausibly allege that Meta breached the statement in the Community Standards that "we remove content that purposefully deceives, willfully misrepresents or otherwise defrauds or exploits others for money or property." (Dkt. 56-5 at 1.)

Plaintiffs' reliance on news stories published in March 2018 and December 2020 alleging ways Meta purportedly breached the TOS and Community Standards—including by "actively court[ing] and assist[ing] known scammers" (Dkt. 60 at 7), and through "Meta's lax enforcement leading to the opening of new accounts by scammers" (*id.*)—is misplaced. Even accepting the truth of these accounts (which Meta disputes), they do not establish a breach. Plaintiffs fail to identify a promise by Meta regarding how it may recruit advertisers or review accounts opened by them. And Plaintiffs do not allege that Meta specifically targeted deceptive advertisers—only that it solicited advertisers in China despite knowing "nearly 30 percent . . . of the ads placed on the Facebook platform by China-based

advertisers violated at least one of Facebook's own Ad Policy." (FAC ¶ 148.) Meanwhile, Plaintiffs' citation of a BuzzFeed article claiming that a third-party contractor told its employees "to 'ignore hacked accounts and other violations as long as Facebook gets paid'" (Dkt. 60 at 7) is undermined by their concession that Meta *did* remove the ads and pages here when it was notified.

**B.** **Plaintiffs Cannot Assert a Claim for Breach of the Covenant of Good Faith and Fair Dealing (Count II)**

A "plaintiff may bring claims for both breach of contract and breach of the implied covenant [of good faith and fair dealing]," but when "both claims rely on the same alleged acts and seek the same relief, the Court may disregard the breach of the implied covenant claim as superfluous." *Daniels v. Alphabet, Inc.*, 2021 WL 1222166, at *9 (N.D. Cal. Mar. 31, 2021); *see also Careau & Co. v. Sec. Pac. Bus. Credit*, 222 Cal. App. 3d 1371, 1395 (1990).

Plaintiffs do not dispute that their two causes of action arise from the same alleged acts. In fact, they admit that their claim for breach of the implied covenant turns on the same provisions of the TOS and Community Standards as their contract claim. (Dkt. 60 at 9 n.3 ("Meta claims that 'Plaintiffs do not identify a specific contractual provision that was frustrated by the conduct alleged,' but as shown, the misconduct alleged frustrated the purposes of the Appropriate Action and Removal Provisions.").) Plaintiffs insist that their claim for breach of the implied covenant is not duplicative only insofar as the contract claim fails on the merits: "The Covenant Claim here is not duplicative of the Contract Claim since even if Meta were able to concoct a technical argument as to why it did not violate the literal terms of the Appropriate Action and Removal Provisions, Meta's willful misconduct would still have frustrated the stated purposes of those provisions." (Dkt. 60 at 8.) But whether the claims are duplicative turns on the allegations underlying those claims, not their ultimate merits. In any event, "[t]he implied covenant will not apply where 'no express term exists on which to hinge an implied duty, and where there has been compliance with the contract's express terms.'" *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011). Thus, if Meta complied with the TOS and Community Standards, the implied covenant claim necessarily fails. And here, Plaintiffs' own allegations show Meta has complied.

Plaintiffs claim that *Young* "supports [their] position" because it "acknowledged that bad faith conduct 'could implicate the implied covenant of good faith and fair dealing,' and only dismissed the

covenant claim because Meta had legitimate grounds for terminating the plaintiff's account (i.e., non-compliance with Facebook's terms)." (Dkt. 60 at 8–9 (quoting *Young*, 790 F. Supp. 2d at 1118).) But the language Plaintiffs quoted from *Young* was dicta, because the plaintiff did not allege facts showing that Facebook terminated her account in bad faith. 790 F. Supp. 2d at 1118.

Plaintiffs' remaining cases fare no better. (Dkt. 60 at 8.) *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767, did not address whether the claim for breach of the implied covenant was duplicative of the contract claim, noting that if the allegations in that case were true, "it would be difficult to conclude" that "Facebook did not frustrate the purposes of the contract, and intentionally so." *Id.* at 802. But here, Plaintiffs' allegations do not show that any contractual purpose was frustrated. Plaintiffs argue that the purpose of the TOS is to "make Facebook users 'feel safe'" (Dkt. 60 at 8), but Section 4.3 expressly disclaims such a purpose. *See, e.g.*, *Bass*, 394 F. Supp. 3d at 1037 (dismissing claim for breach of the implied covenant based on the limitation-of-liability clause); *In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d at 770 (same). In *Doe*, the plaintiffs' claim for breach of the implied covenant was "based on allegations that Meta abused its power in interpreting" the contract such that "the claim is not merely duplicative of or exceeding the obligations imposed by the contractual provisions plaintiffs rely on their express breach claim." 690 F. Supp. 3d at 1086 n.10. There are no similar allegations here.

## C.  Plaintiffs Do Not State a "Failure-to-Warn" Claim (Count III)

Although pleaded as "negligent failure to warn," a claim that sounds in product liability,[4] Plaintiffs now concede that they cannot state such a claim because Facebook is not a "product." (Dkt. 60 at 9–10.) Instead, Plaintiffs attempt to use their Opposition to recast this claim as one sounding in ordinary negligence, where the purported duty of care required the defendant to warn of third parties' potentially fraudulent ads. Even if the Court were to accept this recasting, the claim should be dismissed for three reasons: (a) Section 230 bars the claim because it does not arise from conduct independent of Meta's publishing function, (b) the economic loss rule precludes recovery for claims

---

[4]  *See Pilliod v. Monsanto Co.*, 67 Cal. App. 5th 591, 615 (2021) ("To prove negligent failure to warn under California law, a plaintiff must show that a manufacturer did not warn of a particular risk for reasons which fell below the acceptable standard of care."). The Amended Complaint's allegations track the elements of this product-liability claim. (*Compare* FAC ¶¶ 145–69, *with* CACI No. 1222.)

arising from a contract, and (c) Plaintiffs have not adequately alleged that Meta owed a duty to warn about the risk of third-party scam ads on Facebook.

### 1. *Section 230 Bars Plaintiffs' Claim.*

The Ninth Circuit already held that Section 230 barred a "negligence claim . . . imposing a duty to protect [Plaintiffs] from fraud." *Calise*, 103 F.4th at 744. Plaintiffs assert that by recasting the alleged duty as a "duty to disclose to, or warn Plaintiffs and members of the Classes, of the dangers . . . from advertisers placing fraudulent advertising on the Facebook platform" (FAC ¶ 159), their negligence claim no longer "seeks to treat" Meta "as a publisher or speaker." That is so, they insist, because this duty would not require Meta to "monitor" specific ads and attach warnings to those deemed by Meta to be fraudulent, but rather to provide general warnings that *some* third-party content may be "fraudulent." (Dkt. 60 at 14–15.) This argument has been consistently considered and rejected by the courts. Instead, a failure-to-warn claim will survive Section 230 only where the duty arises from *specific* conduct that operates *independent of* the defendant's role as a publisher of third-party content.

In *Doe v. Grindr Inc.*, 128 F.4th 1148 (9th Cir. 2025), for example, the Ninth Circuit considered a claim that "Grindr had a duty to warn [users of the dating app] about the risks of child sexual exploitation on the App." *Id.* at 1154. The plaintiffs did not suggest that this duty would have required Grindr to monitor dating profiles or third-party content and append warnings to specific posts involving child sexual exploitation. Rather, the plaintiff asserted that Grindr had a duty to warn of the general risk of child exploitation by users of the app. *Id.* The Ninth Circuit held that Section 230 barred that claim because "Grindr's role as a publisher of third-party content does not give it a duty to warn users of 'a general possibility of harm' resulting from the App." *Id.* (cleaned up). The court distinguished cases in which a failure-to-warn claim "was not based on the defendant's failure to remove" or monitor "third-party content," such as when the website provider independently knew of a conspiracy to cause harm off the website. *Id.* (citing *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 848–49 (9th Cir. 2016)).

Similarly, the Ninth Circuit held in *Estate of Bride by and through Bride v. Yolo Technologies, Inc.*, 112 F.4th 1168, 1172 (9th Cir. 2024), that Section 230 barred a failure-to-warn claim based on the risk that an anonymous messaging feature on the defendant's Snapchat extension would be used by third parties to engage in cyberbullying. As in *Grindr*, the plaintiff in *Estate of Bride* did not suggest

11

that the defendant had a duty to monitor specific user messages and append a warning to messages it deemed to be cyberbullying.  To the contrary, the claim attacked the defendant's "failure to disclose" the risks of cyberbullying "to users when they downloaded the YOLO app." *Id.* at 1179.  The Ninth Circuit held that Section 230 barred the failure-to-warn claim because the "general possibility of harm" plaintiffs alleged "essentially fault[ed] [the service] for not moderating content in some way, whether through deletion, change, or suppression." *Id.* at 1180–81.

And in *Doe (K.B.) v. Backpage.com, LLC*, __ F. Supp. 3d __, 2025 WL 719080 (N.D. Cal. Mar. 3, 2025), a victim of sex trafficking sued Meta for an alleged "fail[ure] to provide adequate warnings about the known danger of trafficking on Instagram." *Id.* at *1.  Once more, the plaintiff did not allege that Meta had a duty to monitor specific posts and attach warnings to those deemed to be facilitating sex trafficking, but simply to "warn users that 'sex trafficking is rampant' on the platform, or at the least, that 'foreseeable product use included interactions with traffickers who could seek to groom, recruit, and sell an unsuspecting user into sex trafficking.'" *Id.* at *2.  Judge Lin concluded that this "theory of liability springs from Meta's role as a publisher," because it alleged that "Meta had a duty to warn users about the risks of sex trafficking on its platform because Meta's platform is the vehicle through which the third-party sex trafficking content is published." *Id.* at *6.  Unlike *Internet Brands*, which involved a "failure to warn claim where [the] theory of liability focused on a defendant's actual knowledge of a rape scheme," the plaintiff in *K.B.* "s[ought] to hold Meta liable as a publisher for its failure to warn of a generalized risk of sex trafficking content on its platform, and the use of fake accounts that might facilitate that content." *Id.* at *6–7.  For this reason, "Section 230 preclude[d] th[e] claim." *Id.* at *7.

Plaintiffs' failure-to-warn claim is indistinguishable from *Grindr*, *Estate of Bride*, and *K.B.*  Plaintiffs do not allege that Meta had knowledge of a specific conspiracy to defraud Facebook users that exists independent of Meta's role as a "publisher."  Rather, they seek to impose on Meta a duty to warn of a "generalized risk" that third parties may post deceptive ads on Facebook.  (*See, e.g.*, FAC ¶ 149.)  Plaintiffs cite *Forrest v. Meta Platforms, Inc.*, 737 F. Supp. 3d 808 (N.D. Cal. 2024) (Dkt. 60 at 14), but that case did not consider whether the plaintiff's failure-to-warn claim sought to hold Meta liable as a "publisher."  Instead, it determined that Section 230 did not apply, because "Meta has not

demonstrated that . . . all of the scam ads are in fact exclusively provided by another information content provider." *Id.* at 818. In this case, the Ninth Circuit has already concluded that "Meta did not 'materially contribute' to the third-party ads." 103 F.4th at 746.

### 2. The Economic Loss Rule Also Bars Plaintiffs' Claim.

Plaintiffs' claim is also barred by the economic loss rule, which states that "there is no recovery in tort for negligently inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage." *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022). Plaintiffs do not dispute that their losses are purely economic. (*See, e.g.*, FAC ¶¶ 81, 94.) Instead, they contend that "under California law, the economic loss rule does not apply to service contracts where there is a special relationship between the parties." (Dkt. 60 at 14 (citing *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1021 (N.D. Cal. 2024); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1131–32 (N.D. Cal. 2018)).) That is not a correct statement of the law.

As the California Supreme Court has held: "Not all tort claims for monetary losses between contractual parties are barred by the economic loss rule. But such claims are barred when they arise from—or are not independent of—the parties' underlying contracts." *Sheen*, 12 Cal. 5th at 923. *In re Meta Pixel* recognized as much: "even where the economic loss rule applies there is an exception if there is a 'special relationship' between the parties," and "[t]his exception applies to claims where a plaintiff *who is not in contractual privity* with a defendant seeks to recover purely economic losses for negligent performance of services under a contract." 724 F. Supp. 3d at 1021 (emphasis added). Although *In re Yahoo! Inc.* rejected the view that "the 'special relationship' exception never applies when the plaintiff and the defendant are in privity," it did so in reliance on an earlier decision holding that "where parties are in privity of contract, the *J'aire* exception applies if the contracts are for services." 313 F. Supp. 3d at 1131–32 (citing *N. Am. Chemical Co. v. Super. Ct.*, 59 Cal. App. 4th 764, 783–84 (1997)). But that case preceded *Sheen*, which unambiguously "conclude[d] that the *Biakanja* factors are not applicable when, as here, the litigants are in contractual privity and the plaintiff's claim is not 'independent of the contract arising from principles of tort law.'" 12 Cal. 5th at 942.[5]

---

[5] *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799 (1979), restated the special relationship test first articulated in *Biakanja v. Irving*, 49 Cal. 2d 647 (1958). *See Sheen*, 12 Cal. 5th at 940 (noting that *J'Aire* was "a decision for which *Biakanja* served as the 'acknowledged basis'").

Plaintiffs concede that they are in contractual privity with Meta. (Dkt. 60 at 14 ("[T]he TOS is a services contract.").) And their negligence claim "arise[s] from—or [is] not independent of—the" TOS. *Sheen*, 12 Cal. 5th at 923. Plaintiffs were required to accept the TOS as a condition of accessing Facebook. And the alleged duty to warn arises from the assertion that "Facebook users did not realize the danger of Deceptive Ads on the platform" (FAC ¶ 156) at least in part because of the representations in Section 1 of the TOS and Section 5 of the Community Standards. Nothing more is required. *See Sheen*, 12 Cal. 5th at 941 (applying the economic loss rule where "the negligence claim arises out of a contract between the parties if not from the breach of an obligation provided for in the contract").

### 3. *Plaintiffs Do Not Allege Essential Elements of Their Claim.*

Even if the Court determines that Plaintiffs' claim is not barred by Section 230 or the economic loss rule, that claim still must be dismissed because Plaintiffs have not adequately alleged that Meta owed a duty to warn. (FAC ¶ 154.) Settled California law holds that "one owes no duty to control the conduct of another, nor to warn those endangered by such conduct." *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 214 (2021) (quoting *Regents of Univ. of Cal. v. Super. Ct.*, 4 Cal. 5th 607, 619 (2018)). The only exception that could apply is if the defendant "is in what the law calls a 'special relationship' with either the victim or the person who created the harm." *Id.* at 215.

Plaintiffs attempt to avoid showing a special relationship by characterizing their claim as rooted in Meta's misfeasance, rather than nonfeasance. (Dkt. 60 at 10–12.) But a *failure* to warn is, by definition, nonfeasance. Plaintiffs do not dispute this; instead, they argue that Meta did not merely fail to warn users, but "created the risk faced by its users, and by its affirmative actions, made users' positions worse, i.e., Meta *affirmatively* solicited and assisted known scammers, and *affirmatively* instructed contractors to ignore 'hacked accounts and other violations, and as a result, users suffered harm.'" (*Id.* at 11.) This is a thinly veiled attempt to smuggle Plaintiffs' rejected negligence theory back into the case. That theory sought to hold Meta negligent for "[a]ctively undertaking various marketing efforts . . . to encourage advertisers that it knew were displaying, or had displayed Deceptive Facebook Ads . . . to 'buy more' Facebook ads" (Compl. ¶ 106(a)) and "[a]ffirmatively directing employees and contractors monitoring Facebook's platform for Deceptive Facebook Ads to ignore violations of Facebook's Ad Policies, as long as Facebook gets paid for those ads" (*id.* ¶ 106(c)). The

Ninth Circuit held that "§ 230(c)(1) shields Meta from liability stemming from [that] negligence claim." *Calise*, 103 F.4th at 744.

Because their negligence claim is rooted in nonfeasance, Plaintiffs must—but do not adequately—allege a special relationship that triggers a duty to warn of third-party harm. They do not dispute that Meta lacks such a relationship with advertisers. Instead, they assert that "Meta has a special relationship with its users," but they do so based on "the *J'Aire* factors." (Dkt. 60 at 12.) Crucially, the *J'Aire* factors are used to determine whether an exception to the economic loss rule applies. *J'Aire*, 24 Cal. 3d at 804. Notably, all the cases cited by Plaintiffs in which a court has supposedly found a special relationship between a website and its users did so in the context of the economic loss rule.

To determine whether a special relationship exists to give rise to a duty to warn of third-party harm, courts apply the Restatement (Third) of Torts. *Regents*, 4 Cal. 5th at 620. The relationships identified in the Restatement include "a common carrier with its passengers," "a school with its students," and "a landlord with its tenants." Restatement (Third) of Torts: Physical & Emotional Harms § 40(b). The common thread is that these relationships "involve some kind of dependency or reliance." *Olson*, 204 Cal. App. 3d at 1366. There is no dependency or reliance here between Meta and its users. It is therefore unsurprising that the "special relationship" factors identified in *Regents* weigh decisively against finding such a relationship here. (*See* Dkt. 57 at 14–15.)

Indeed, on remand from the Ninth Circuit's decision in *Internet Brands*, the district court determined that "[t]he relationship between [website users] and Internet Brands, a website operator, does not fall under any of the well-recognized 'special relationships' under California law." *Doe No. 14 v. Internet Brands, Inc.*, 2016 WL 11824793, at *5 (C.D. Cal. Nov. 14, 2016). Plaintiffs try to distinguish that case on the ground that the third parties there "did not use the website" and "the website did not have any relationship with them." (Dkt. 60 at 13 n.6.) But whether a website has a special relationship with its *users* has nothing to do with its relationship with third parties.

### III.     CONCLUSION

Courts routinely dismiss claims that seek to hold websites liable for third-party harms suffered by their users on materially similar grounds to those here. Plaintiffs offer no reason for departing from this authority, and the Court should dismiss the Amended Complaint with prejudice.

Gibson, Dunn &
Crutcher LLP

Dated: May 21, 2025

Respectfully submitted,

By:        /s/ Christopher Chorba
                Christopher Chorba

*Attorneys for Defendant Meta Platforms, Inc.*

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
CASE NO. 4:21-CV-06186-JSW