UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER CALISE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>    Defendant. | Case No. 21-cv-06186-JSW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 57 |

Now before the Court for consideration is the motion to dismiss the First Amended Complaint ("FAC") filed by Defendant Meta Platforms, Inc. The Court has considered the parties' papers, relevant legal authority, and the record in the case, and it finds the matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). For the following reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, Meta's motion.

## BACKGROUND

**A.    Allegations in the FAC.**

Plaintiffs Christopher Calise, Terri Bohl, and Noah Faerber allege Meta actively solicits, encourages, and assists scam advertisers and Meta knows, or should know, that the scammers use its platform to defraud users with deceptive ads. (FAC ¶ 1.)

Meta operates Facebook, a social networking service that allows people to connect and communicate with friends, colleagues, family, and others. (*Id.* ¶¶ 23-24.) Meta does not charge users for their accounts and instead generates revenue from advertisements. (*Id.* ¶ 25.) Meta allows advertisers to run targeted ad campaigns on the platform. (*Id.* ¶ 27.)

Facebook's Terms of Service ("TOS") provide certain promises regarding content moderation on the site. In relevant part, Facebook promises that if it "detect[s] misuse of [its]

Products, harmful conduct towards others, and situations where [Facebook] may be able to help support or protect [its] community," it "will take appropriate action – for example, offering help, removing content, removing, or restricting access to certain features, disabling an account, or contacting law enforcement." (*Id*. ¶ 32.) In return, Facebook requires users to promise not to share any content "[t]hate is unlawful, misleading, discriminatory, or fraudulent." (*Id*. ¶ 33.) Facebook further states in its Community Standards ("COS") that it will "remove content that purposefully deceives, willfully misrepresents or otherwise defrauds or exploits others for money or property." (*Id*. ¶ 34.)

Plaintiffs are Facebook users who saw third-party advertisements on Facebook and purchased the advertised products from third-party websites. Plaintiff Calise saw an advertisement on Facebook for a car engine assembly kit. (*Id*. ¶ 73.) Calise followed the advertisement to a website with the domain name "miuxo.com" where he purchased the kit. (*Id*. ¶ 74.) Calise subsequently attempted to contact Miuxo for updates on the status of his order. (*Id*. ¶ 75.) Miuxo did not respond, and Calise never received the kit or a refund. (*Id*.) Calise reported Miuxo's advertisement to Facebook, which determined the advertisement violated its ad polices and would be removed. (*Id*. ¶ 77.) Calise alleges, however, that Miuxo launched a new Facebook advertisement under a slightly modified name, which scammed additional Facebook users. (*Id*. ¶¶ 77-78.)

Plaintiff Bohl saw an advertisement on Facebook for a "Nightmare Before Christmas" cuckoo clock. (*Id*. ¶ 84.) She followed the advertisement to a website which appeared legitimate and which claimed the product was officially licensed by Disney. (*Id*.) She then placed an order for the clock using her PayPal account and paid a total of $41.98. (*Id*. ¶ 85.) Bohl received a package containing a "cheap facsimile" of the clock, which appeared unfinished and was significantly smaller than the clock she had ordered. (*Id*. ¶ 86.) Bohl wrote to the vendor who offered a $5 refund. (*Id*. ¶ 87.) Bohl escalated the issue with PayPal, and the vendor offered a full refund if Bohl would ship the item back—at a cost of $80 to Bohl. (*Id*. ¶ 90.) Bohl reported the incident to the FTC. (*Id*. ¶ 92.)

Plaintiff Faerber saw an advertisement on Facebook Marketplace for a car swap. (*Id*. ¶

95.) Faerber agreed to trade his Mazda Miata for a man named Kyle's Toyota MR2. (*Id.* ¶ 97.) Faerber and Kyle exchanged papers and keys. (*Id.*) That same night, Kyle stole the Toyota MR2, leaving Faerber without either car. (*Id.* ¶ 98.) Kyle posted about the theft on Facebook. (*Id.* ¶ 99.) Faerber reported Kyle to the police and Facebook, and he subsequently learned that Kyle repeatedly executes the same scheme. (*Id.* ¶¶ 100-101.) Facebook does not act to stop Kyle or warn others who deal with him. (*Id.* ¶ 101.)

**B.   Procedural History.**

Plaintiffs filed their original complaint in August 2021. (Dkt. No. 1, Compl.) Plaintiffs brought causes of action for: (1) negligence; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code section 17200, *et seq*. ("UCL"); and (5) unjust enrichment. (*See id.*)

The Court granted Meta's motion to dismiss the original complaint on the basis that Section 230(c)(1) of the Communications Decency Act ("CDA") bars Plaintiffs' claims. (Dkt. No. 42, Dismissal Order.) On appeal, the Ninth Circuit affirmed in part and reversed in part. (Dkt. No. 47, 9th Cir. Op.)

The Ninth Circuit held that the Court correctly applied Section 230 to dismiss Plaintiffs' negligence, UCL, and unjust enrichment claims. However, the Court reversed as to Plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing, ruling:

> To the extent that Meta manifested its intent to be legally obligated to "take appropriate action" to combat scam advertisements, it became bound by a contractual duty separate from its status as a publisher. We thus hold that Meta's duty arising from its promise to moderate third-party advertisements is unrelated to Meta's publisher status, and § 230(c)(1) does not apply to Plaintiffs' contract claims.

(*Id.* at 18-19); *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 743 (9th Cir. 2024). The court further recognized that this Court had not evaluated the validity of the TOS as a contract, and it held that "[t]he existence of a contract and the interpretation of a contract are questions better suited for the district court in the first instance." *Id.*

Plaintiffs filed the FAC after remand. They now bring three causes of action: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) negligent failure to

3

warn.

## ANALYSIS

A. **Applicable Legal Standard.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. A court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff cannot merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

If the allegations are insufficient to state a claim, a court should grant leave to amend unless amendment would be futile. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).

B. **Plaintiffs Sufficiently Allege Breach of Contract.**

Meta moves to dismiss the contract-based claim on two bases. First, Meta argues that the Facebook TOS do not create enforceable promises from Meta. Second, Meta claims that even if the TOS create obligations for Meta, Plaintiffs do not plausibly allege breach.

    1. **The TOS and COS Create Obligations for Meta.**

Meta first argues that the TOS do not create affirmative obligations for Meta because they include language regarding users' conduct. The TOS open with the following:

> These Terms govern your use of Facebook, Messenger, and the other products, features, apps, services, technologies, and software we offer. . . except where we expressly state that separate terms (and not these) apply. These Products are provided to you by Meta Platforms, Inc.

(Dkt. No. 56-2, FAC Ex. B, TOS, at 3.) According to Meta, because the language provides that the terms govern "your use," the TOS apply only to the user and not Meta. For that proposition, Meta cites three cases from this district: *Long v. Dorset*, 369 F. Supp. 3d 939, 948 (N.D. Cal. 2019), *aff'd,* 854 F. App'x 861 (9th Cir. 2021), and *vacated in part,* No. 17-cv-02758-PJH, 2021 WL 7829668 (N.D. Cal. May 21, 2021); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016), *aff'd,* 700 F. App'x 588 (9th Cir. 2017); and *King v. Facebook, Inc.*, No. 19-cv-01987-WHO, 2019 WL 6493968, at *2 (N.D. Cal. Dec. 3, 2019), *aff'd,* 845 F. App'x 691 (9th Cir. 2021).

The Court is not persuaded that *Long*, *Caraccioli*, or *King* categorically determined that the TOS include no promises by Meta. In *Long*, the district court interpreted Meta's promise to "take appropriate action"—the same provision relied upon by Plaintiffs here—to impose a duty upon Facebook to act within a "reasonable time." *Long*, 369 F. Supp. 3d at 948. This finding is contradicted in the next paragraph by the court's reliance, without discussion, on *Caraccioli* to hold that the TOS do not create obligations for Meta. *Id.* at 948-49. *Caraccioli* in turn relies without discussion on *Young v. Facebook, Inc.*, No. 5:10-cv-03579-JF/PVT, 2010 WL 4269304, at *3 (N.D. Cal. Oct. 25, 2010). *King*, too, cites *Caraccioli* and *Young* without analysis. *Young*, however, did not hold that the TOS do not create obligations for Meta. Instead, it held that the provisions identified by the plaintiff apply only to users, including agreements "not to engage in bullying, intimidating, or harassing other users." *Young*, 2010 WL 4269304, at *3. By their plain language, the terms at issue in *Young* apply to users and do not imply promises by Meta.

Meta seeks to extrapolate too general a ruling from these decisions. The Court disagrees that the TOS's introductory language clearly limits obligations to users. At best, that intention is unclear, and the language is ambiguous, particularly in light of the mutual promises contained within the TOS. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019) (noting Meta's agreement that, "if the contract language at issue is reasonably susceptible to more than one interpretation," resolution at motion to dismiss stage is inappropriate). A user who chooses to read the TOS may understand from the introduction that she is bound by the agreement without forming an understanding that Meta excludes itself from

5

the TOS's language.

The specific provisions which Plaintiffs claim Meta violated are unambiguous and well-defined promises from Meta to users. In the TOS, Meta promises to "take appropriate action – for example, offering help, removing content, removing, or restricting access to certain features, disabling an account, or contacting law enforcement." (FAC ¶ 32.) In the COS, Meta promises to "remove content that purposefully deceives, willfully misrepresents or otherwise defrauds or exploits others for money or property." (*Id.* ¶ 34.) These promises "manifest[] its intent to be legally obligated to 'take appropriate action' to combat scam advertisements." *Calise*, 103 F.4th at 743; *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1086 (N.D. Cal. 2023), *motion to certify appeal denied,* No. 22-CV-03580-WHO, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) (following the Ninth Circuit's suggestion in this case to hold that, at the motion to dismiss stage, "Plaintiffs' specific references to identified provisions in Meta's TOS and Privacy Policy [we]re sufficiently definite"). The ambiguous introductory language does not negate these promises.

Meta next argues that the TOS do not create affirmative obligations because they include a disclaimer. Through the following, Meta argues, it is shielded from liability relating to third-party conduct:

> We work hard to provide the best Products we can and to specify clear guidelines for everyone who uses them. Our Products, however, are provided "as is," and we make no guarantees that they always will be safe, secure, or error-free, or that they will function without disruptions, delays, or imperfections. To the extent permitted by law, we also DISCLAIM ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT. We do not control or direct what people and others do or say, and we are not responsible for their actions or conduct (whether online or offline) or any content they share (including offensive, inappropriate, obscene, unlawful, and other objectionable content).
>
> We cannot predict when issues might arise with our Products. Accordingly, our liability shall be limited to the fullest extent permitted by applicable law, and under no circumstances will we be liable to you for any lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to these Terms or the Meta Products (however caused and on any theory of liability, including negligence), even if we have been advised of the possibility of such damages. Our aggregate liability arising out of or relating to these Terms or the Meta Products will not exceed the greater of $100 or the amount you have paid us in the past twelve months.

6

(TOS, § 4.3.) Plaintiffs respond (1) that the disclaimer limits, rather than eliminates, liability; (2) that it is void as contradicting express promises; (3) that it is void under California Civil Code section 1668; and (4) that it is substantively and procedurally unconscionable. The Court addresses these arguments out of order.

First, the warranty portion of the disclaimer does not apply to Plaintiffs' claims. Plaintiffs do not allege breach of warranty regarding Facebook as a product. They do not claim that Facebook is unmerchantable or that it is not fit for its promised purpose of connecting people to each other. Further, the relevant alleged promises are separate from Meta's cautionary language that it does not control third-party actions on its platform. In other words, while Facebook disclaims responsibility for third-party conduct, it maintains responsibility for its own promise to "take appropriate action" to combat scam advertisements and to do so in good faith. Starting with this understanding, the Court finds the disclaimer is not void by reason of contradicting express warranties.

Second, the Court agrees that the $100 liability cap applies to Plaintiffs' claims unless it is found unenforceable. Meta argues that the $100 liability cap applies only when the broader release from the previous paragraph is not applicable. It claims that, rather than acting as a shield to liability, the portion of the disclaimer which addresses third-party conduct sets the outer bounds of Meta's promises to users. Only where the disclaimer does not apply, or where it is found unenforceable, does the $100 liability cap come into play. Because the Court finds that the warranty disclaimer does not apply to Plaintiffs' claims, and that the alleged promises are outside the scope of the third-party conduct disclaimer, the $100 cap applies unless the provision is unconscionable.

Third, Section 1668 does not apply to void the disclaimer. Section 1668 provides:

> All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.

Cal. Civ. Code § 1668. Plaintiffs' argument that the plain language of this statute prohibits Facebook from immunizing itself against contract damages is foreclosed by a recent decision from

7

the California Supreme Court. In *New England Country Foods, LLC v. VanLaw Food Prods., Inc.*, 17 Cal.5th 703 (2025), the court addressed a "limitation on liability" clause which disclaimed liability for loss of profits and other special, incidental, and consequential damages; capped liability at the amount of gross revenue from the parties' products; and excluded punitive damages under any theory. *Id.* at 708. The court first confirmed that parties cannot release claims for future willful tortious conduct. *Id.* The California Supreme Court then clarified that the statute does not extend to "pure breaches of contract absent a violation of an independent duty that falls within the ambit of section 1668." *Id.* at 717. If the claim involves only a breach of "contractual obligations," then "releases are governed by contract principles such as unconscionability." *Id.* Section 1668 thus does not apply to Meta's disclaimer and liability cap as relates to Plaintiffs' contract claim.

      Fourth, the Court finds the limitation of liability clause to be unconscionable. Unconscionability has a procedural and substantive component. "[T]here is a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' " *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 910 (2015)).

      Plaintiffs argue that the contracts have the requisite degree of procedural unconscionability because the TOS and COS are contracts of adhesion. Contracts of adhesion necessarily indicate "some degree of procedural unconscionability." *Id.*

      Plaintiffs also argue that the clause is substantively unconscionable because of the disparity in the "investigative, financial, and technical resources to . . . crack down on scam ads appearing on Facebook." (Opp'n, at 5.) By including a clause with which Meta attempts to circumvent liability entirely, it can forego keeping its promises and benefit from millions of dollars in revenue from known scam advertisements. Plaintiffs also argue that the clause is substantively unconscionable because of enormous societal pressures to participate in Facebook. Plaintiffs argue that Facebook is so interwoven into 21st-century life that it is effectively a public utility. (*Id.* at 6.)

In reply, Meta argues first that the clause lacks "more than de minimus" procedural unconscionability because it was not buried within a lengthy contract and its language is "clear enough." (Dkt. No. 61, Reply, at 7 (quoting *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1038 (N.D. Cal. 2019)).) Meta also argues that the clause cannot be substantively unconscionable because disclaiming liability for third-party content is "consistent with the federal policy embedded in Section 230." (*Id.*)

The Court finds Plaintiffs' arguments more compelling. *De minimus* procedural unconscionability is sufficient where substantive unconscionability is great. Here, Meta does not seek to merely set forth the limits of its responsibilities in a manner consistent with Section 230: it seeks to avoid all liability for breach of any of its promises relating to promoting and benefiting from known fraudulent content, or to otherwise cap damages at a level so low that no party would seek to vindicate its rights under the agreement.

The Court recognizes that another court in this district has reached the opposite conclusion, albeit with regret. *Bass*, 394 F. Supp. 3d at 1037-38. *Bass* is distinguishable for several reasons. In that case, the court analyzed a different version of the disclaimer: the ruling notes that the clause "does not mention 'negligence' at all." *Id.* at 1038. The clause at issue here includes a reference to negligence. (*See* TOS, § 4.3 (limiting liability "however caused and on any theory of liability, including negligence").) Further, the plaintiffs in *Bass* proceeded on a theory of negligent conduct. The court noted that "Facebook's mere failure to discover the vulnerability might be barred by the clause, but if it had acquiesced to, or known of the vulnerability, the claim would certainly be allowed through." *Id.* There is a greater degree of substantive unconscionability where the clause excludes liability for intentional conduct. *Cf. Gerber v. Twitter, Inc.*, No. 4:23-cv-00186-KAW, 2024 WL 5173313, at *7 (N.D. Cal. Dec. 18, 2024) (finding limitation-of-liability clause unconscionable where Twitter attempted to use clause to avoid any liability for damages from known vulnerability); *Doe*, 690 F. Supp. 3d at 1085 (distinguishing *Bass* and declining to dismiss based upon limitation of liability clause because plaintiffs allege intentional conduct).

    **2.**    **Plaintiffs Adequately Allege Breach.**

9

Meta argues that Plaintiffs do not allege breach because they acknowledge that certain of the misleading ads were removed from Facebook. (*See* FAC ¶¶ 77, 96.) At this stage, however, Plaintiffs have plausibly alleged that Meta did not "take appropriate action" to combat scam ads: Plaintiffs allege that Meta actively courts scam advertisers, instructs its employees to ignore known scam accounts, and permits scammers to reopen accounts or repost ads after closure and takedowns. (*See id.* at ¶ 78.) These activities plausibly breach the promise to "take appropriate action."

The Court therefore denies Meta's motion to dismiss this count.

### C. Plaintiffs Adequately Allege an Independent Claim for Breach of the Covenant of Good Faith and Fair Dealing.

Meta argues that Plaintiff's claim for breach of the covenant of good faith and fair dealing must be dismissed because (1) the claim is duplicative of the breach of contract claim, and (2) Plaintiffs do not identify a specific contractual provision that was frustrated by the conduct alleged. Plaintiffs respond that their claim is not duplicative because Meta may have violated the covenant without violating the literal terms of the TOS, and they contend that they do sufficiently identify a specific contractual provision. The Court agrees with Plaintiffs.

The covenant imposes an obligation on a contracting party to "act fairly and in good faith in discharging its contractual responsibilities." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) (quoting *Cal. Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 54 (1985)). A party can be liable for breach of the covenant "whether or not it[s conduct] also constitutes a breach of a consensual contract term[.]" *Id.* However, "[i]f the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Id.*

The Court finds, in this case, Plaintiffs' claim for breach of the covenant is not duplicative of the breach of contract claim. Meta may have breached the covenant even if it complied with its promise to "take appropriate action" if its actions were taken with bad faith and intentionally

10

1  enabled the scam content to continue.

2      The FAC alleges that Meta "frustrated and interfered with the rights of Plaintiffs and other
3  members of the [putative classes] to the benefits of the TOS (including, without limitation, the
4  right to a safe environment while using Facebook and the right to be protected against being
5  scammed by deceptive ads)." (FAC ¶ 141.) It identifies specific promises in Section 1 of the TOS
6  which Meta allegedly frustrated.

7      Accordingly, Plaintiff's claim for breach of the covenant of good faith and fair dealing
8  may proceed.

### D. Plaintiffs' Claim for Negligent Failure to Warn Fails.

Meta argues that Plaintiffs' failure to warn theory is not viable under the economic loss rule because Plaintiffs seek recovery in tort for purely financial harms. Plaintiffs respond that the economic loss rule does not apply because Meta has a special relationship with its users.

California's economic loss rule prohibits recovery in tort for "negligently inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage." *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal.5th 905, 922 (2022). The rule applies "to bar claims in negligence for pure economic losses in deference to a contract between litigating parties," and it bars claims that "arise from—or are not independent of—the . . . underlying contracts." *Id.* at 922-23.

However, the rule does not apply to prevent tort recovery where the defendant breaches a duty which exists independently of the contract. *Erlich v. Menezes*, 21 Cal.4th 543, 552 (1999). This includes tort claims where breach of contract results in physical injury, breach of the covenant of good faith and fair dealing, wrongful discharge in violation of public policy, or where entry into the agreement was fraudulently induced or otherwise intended to cause harm. *Id.* at 551-52. California courts further recognize an exemption from the economic loss rule for "claims where a plaintiff who is not in contractual privity with a defendant seeks to recover purely economic losses for negligent performance of services under a contract" where a "special relationship" giving rise to a duty exists between the litigating parties. *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1021 (N.D. Cal. 2024).

11

Plaintiffs argue that the "special relationship" exception is not limited to cases where the litigating parties are not in privity, citing *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1131-32 (N.D. Cal. 2018). Because Plaintiffs allege a special relationship with Meta, they contend the economic loss rule does not apply.

Meta, in turn, argues that *In re Yahoo!* precedes the California Supreme Court's ruling in *Sheen*. 12 Cal.5th at 922. In *Sheen*, the court held that the rule applies to bar claims which are "not independent of" the parties' contract. *Id.* Further, because Plaintiffs and Meta are in privity, the exception cannot apply.

The Court agrees with Meta. Plaintiffs cannot point to binding authority which harmonizes a plain-language reading of *Sheen* with their theory of an exception to the economic loss rule. In light of the California Supreme Court's pronounced reticence to extend exceptions to the economic loss rule beyond its historic confines, the Court will not extend the exception here. *See Erlich*, 21 Cal.4th at 553 (instructing courts to take a "cautious approach" to excepting tort claims from economic loss rule); *Sheen*, 12 Cal.5th at 929-30 (similar); *So. Cal. Gas Leak Cases*, 7 Cal.5th 391, 412 (2019) (recognizing unfairness of applying economic loss rule to prevent recovery after manmade disaster and stating decision to expand liability lies with legislature). Plaintiffs' theory of breach under their negligent failure to warn claim is coextensive with their theories under their claims for breach of contract and breach of the covenant of good faith and fair dealing; it is intertwined with and dependent upon the existence of the TOS.

Meta also argues that Section 230—which insulates providers of interactive computer services from liability as a publisher—bars this claim. 47 U.S.C. § 230(c)(1); *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019). "In general, this section protects websites from liability for material posted on the website by someone else." *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 850 (9th Cir. 2016).

When considering this case on appeal, the Ninth Circuit distinguished between a provider's action as a publisher and its failure to warn where it has a duty. The panel reasoned, "[i]n *Internet Brands*, the platform faced liability not because it failed to remove the ads, but because it failed to warn about their content. Thus, Plaintiffs' claims may fare better if they sought to impose liability

12

on Meta for failing to warn about fraudulent content[.]" *Calise*, 103 F.4th at 744 (citations omitted). Meta claims that the panel "misread" *Internet Brands* and that the remarks do not constitute the law of the case.

The Court need not resolve this issue because it agrees with Meta that the negligent failure to warn claim fails under the economic loss rule. The economic loss rule was not an issue in *Internet Brands* because the plaintiff suffered physical, not purely financial, harms. *See Internet Brands, Inc.*, 824 F.3d at 852 (holding website could be liable for failure to warn about known rape scheme after user fell victim to known sexual predator on site).

Meta additionally argues that Plaintiffs fail to plead the elements of their failure-to-warn claim. The Court rejects this argument. Plaintiffs allege that Meta did not warn its users of a known risk, precisely the conduct that the Ninth Circuit suggested could give rise to a failure-to-warn claim. Plaintiffs also allege that Meta has a special relationship with Facebook users due to the disparity in control over the online environment.

Because the economic loss rule bars this claim, it is dismissed.

## CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, Meta's motion to dismiss. The Court dismisses Plaintiffs' claim for negligent failure to warn. It permits the remaining claims to proceed.

Meta shall file an answer within twenty-one (21) days.

The Court HEREBY SETS a case management conference for October 24, 2025, at 9:00 a.m. The parties shall file a joint case management statement by October 17, 2025.

**IT IS SO ORDERED.**

Dated: September 22, 2025

_____
JEFFREY S. WHITE
United States District Judge

13