GIBSON, DUNN & CRUTCHER LLP
CHRISTOPHER CHORBA, SBN 216692
SAMUEL ECKMAN, SBN 308923
JEREMY WEESE, SBN 336180
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:     213.229.7000
Facsimile:     213.229.7520
cchorba@gibsondunn.com
seckman@gibsondunn.com
jweese@gibsondunn.com

ERIN MARIE CHOI*
2001 Ross Avenue, Suite 2100
Dallas, TX  75201-2923
Telephone:     214.698.3100
Facsimile:     214.571.2900
echoi@gibsondunn.com
*Admitted pro hac vice

Attorneys for Defendant Meta Platforms, Inc.

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| CHRISTOPHER CALISE and ANASTASIA GROSCHEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 4:21-CV-06186-JSW<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**<br><br>Date:   January 9, 2026<br>Time:   9:00 AM PT<br>Place:   Courtroom 5 – 2nd Floor<br>Judge:   Hon. Jeffrey S. White |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 9, 2026, before the Honorable Jeffrey S. White, in Courtroom 5 of the United States District Court located at 1301 Clay Street, Oakland, CA 94612, Defendant Meta Platforms, Inc. will and hereby does move this Court to certify its September 22, 2025 Order Granting in Part and Denying in Part Defendant Meta Platforms, Inc.'s Motion to Dismiss (Dkt. 62) for interlocutory appeal under 28 U.S.C. § 1292(b).

Defendant moves for certification on the ground that the Court's Order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Specifically, certification is appropriate on the following question: Whether Facebook's Terms of Service and Community Standards impose legally enforceable obligations on Meta to combat alleged "scam" advertisements on Facebook.

This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, any Reply or other papers submitted in connection with the Motion, all matters of which this Court may properly take judicial notice, and any information presented at argument.

## STATEMENT OF ISSUES TO BE DECIDED

Whether this Court should certify its September 22, 2025 Order for interlocutory review because it "involves a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Dated: November 10, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Christopher Chorba*
    Christopher Chorba

*Attorneys for Defendant Meta Platforms, Inc.*

Gibson, Dunn &
Crutcher LLP

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 2

ARGUMENT ............................................................................................................................. 4

    I.     The Order Implicates a Controlling Question of Law Regarding the Interpretation of the TOS and Community Standards ............................................... 4

    II.    There Is Substantial Ground for Difference of Opinion. ....................................... 5

    III.   Interlocutory Review Will Materially Advance This Litigation. ............................ 9

CONCLUSION ......................................................................................................................... 11

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL
CASE NO. 4:21-CV-06186-JSW

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Aellis O. v. Connor*,
No. 22-cv-200-JLS-WVG, 2022 WL 2229421 (S.D. Cal. June 21, 2022) ...................................11

*Allen v. ConAgra Foods, Inc.*,
No. 3:13-cv-01279-WHO, 2019 WL 1466889 (N.D. Cal. Feb. 6, 2019) ......................................6

*Atel Fin. Corp. v. Quaker Coal Co.*,
321 F.3d 924 (9th Cir. 2003)......................................................................................................5

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ...............................................................................1, 4, 9

*Best Carpet Values, Inc. v. Google LLC*,
No. 5:20-cv-04700-EJD, 2022 WL 22843012 (N.D. Cal. May 2, 2022) .........................................6

*Biederman v. FCA US LLC*,
No. 23-cv-06640-JSC, 2025 WL 1266907 (N.D. Cal. May 1, 2025) .............................................10

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) ....................................................................................................2

*Canyon Vineyard Estates, LLC v. DeJoria*,
78 Cal. App. 5th 995 (2022) ......................................................................................................5

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016) ...............................................................................1, 3, 7

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1981).....................................................................................................5

*Chen v. Allstate Ins. Co.*,
No. 13-cv-0685-PJH, 2013 WL 3973798 (N.D. Cal. July 31, 2013) ............................................11

*Damner v. Facebook Inc.*,
No. 20-cv-05177-JCS, 2020 WL 7862706 (N.D. Cal. Dec. 31, 2020)........................................5, 8

*Elorreaga v. Rockwell Automation, Inc.*,
No. 21-cv-05696-HSG, 2023 WL 4116623 (N.D. Cal. June 16, 2023)................................4, 5, 10

*Gillespie v. Centerra Servs. Int'l, Inc.*,
No. 21-cv-2028-JGB-SHKx, 2022 WL 18584762 (C.D. Cal. Oct. 26, 2022)................................11

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022) ....................................................................................................6

*J.B. v. G6 Hosp., LLC*,
No. 19-cv-07848-HSG, 2021 WL 6621068 (N.D. Cal. Dec. 16, 2021) .........................................5

*King v. Facebook, Inc.*,
No. 19-cv-01987-WHO, 2019 WL 6493968 (N.D. Cal. Dec. 3, 2019)..................................1, 3, 7

ii

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
*(continued)*

Page(s)

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) ...................................................................................................8

*Lange v. Monster Energy Co.*,
    46 Cal. App. 5th 436 (2020) ........................................................................................................5

*Long v. Dorset*,
    369 F. Supp. 3d 939 (N.D. Cal. 2019) .............................................................................1, 3, 6, 7

*Mauia v. Petrochem Insulation, Inc.*,
    No. 18-cv-01815-TSH, 2020 WL 1031911 (N.D. Cal. Mar. 3, 2020)........................................10

*May v. Google LLC*,
    No. 24-cv-01314-BLF, 2024 WL 4681604 (N.D. Cal. Nov. 4, 2024)..........................................9

*Mehedi v. View, Inc.*,
    No. 21-cv-06374-BLF, 2024 WL 3748012 (N.D. Cal. Aug. 8, 2024)........................................10

*Murphy v. Twitter, Inc.*,
    60 Cal. App. 5th 12 (2021) ...........................................................................................................9

*Omni MedSci, Inc. v. Apple Inc.*,
    No. 19-cv-05924-YGR, 2020 WL 759514 (N.D. Cal. Feb. 14, 2020) .........................................5

*Ottesen v. Hi-Tech Pharms., Inc.*,
    No. 19-cv-07271-JST, 2024 WL 589089 (N.D. Cal. Feb. 13, 2024)............................................6

*Reese v. BP Expl. (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011)..............................................................................................4, 6, 10

*Rollins v. Dignity Health*,
    No. 13-cv-01450-TEH, 2014 WL 6693891 (N.D. Cal. Nov. 26, 2014) ...................................6, 10

*Roth v. Foris Ventures, LLC*,
    No. 21-cv-4288-YGR, 2022 WL 21777087 (N.D. Cal. Aug. 19, 2022) .................................10, 11

*SEC v. Mercury Interactive, LLC*,
    No. 5:07-cv-02822-JF, 2011 WL 1335733 (N.D. Cal. Apr. 7, 2011)..........................................11

*Young v. Facebook, Inc.*,
    No. 5:10-cv-03579-JF/PVT, 2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) .................1, 3, 7, 8, 11

*Young v. Meta Platforms, Inc.*,
    No. 24-cv-03583-HSG, 2025 WL 2930979 (N.D. Cal. Oct. 15, 2025) .........................................8

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................1, 2, 4, 5, 6, 9, 10, 11

Cal. Civ. Code § 1670.5(a) ...............................................................................................................5

**Treatises**

16 Wright & Miller, *Federal Practice & Procedure* §3930 (3d ed. June 2024 update).....................10

iii

Gibson, Dunn & Crutcher LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This Court's September 22, 2025 Order on Meta Platforms, Inc.'s Motion to Dismiss held that Plaintiffs sufficiently alleged a claim for breach of contract, because Meta's Terms of Service ("TOS") and Community Standards include "unambiguous and well-defined promises from Meta to users" that "manifest [Meta's] intent to be legally obligated to take appropriate action to combat scam advertisements." Dkt. 62 at 6 (cleaned up). In doing so, the Court acknowledged that up to four other cases from this District have reached the opposite result—concluding "that the TOS do not create obligations for Meta"—but determined that those cases were distinguishable on their facts. *Id.* at 5 (citing *Long v. Dorset*, 369 F. Supp. 3d 939, 948 (N.D. Cal. 2019); *King v. Facebook, Inc.*, No. 19-cv-01987-WHO, 2019 WL 6493968, at *2 (N.D. Cal. Dec. 3, 2019); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016); *Young v. Facebook, Inc.*, No. 5:10-cv-03579-JF/PVT, 2010 WL 4269304, at *3 (N.D. Cal. Oct. 25, 2010)). The Court further held that Section 4.3 of the TOS (the "Limitation of Liability Clause") was unconscionable. Dkt. 62 at 8–9. Here too, however, the Court "recognize[d] that another court in this district has reached the opposite conclusion" on the same legal issue. *Id.* at 9 (citing *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037–38 (N.D. Cal. 2019)).

Whether the TOS and Community Standards impose an enforceable legal duty on Meta to combat purported scam advertisements is a "controlling question of law." 28 U.S.C. § 1292(b). The division on this question confirms that there is "substantial ground for difference of opinion" as to its answer. *Id.* And an immediate appeal "may materially advance the ultimate termination of th[is] litigation" because, if the Ninth Circuit determines that the TOS and Community Standards do not impose the obligations Plaintiffs asserted, then their claim for breach of contract (and likely their only other remaining and derivative claim, for breach of the covenant of good faith and fair dealing) will necessarily fail, substantially or entirely resolving this litigation. *Id.* Even if the Ninth Circuit affirms the Order, that decision will still advance the litigation by resolving an important threshold legal question. That clarity will allow the parties to be more informed in assessing the merits of their positions and respective valuations of this case. It may also facilitate the resolution of other cases

DEFENDANT'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL
CASE NO. 4:21-CV-06186-JSW

Gibson, Dunn & Crutcher LLP

alleging violations of Facebook's TOS and Community Standards. And should the Court certify its Order for interlocutory review, Meta intends to continue to litigate this case while it petitions the Ninth Circuit to grant such review (and would seek a stay of trial court proceedings only if the Ninth Circuit were to accept the appeal).

Given the significance of this issue, the Ninth Circuit's review is inevitable. The only question is *when* appellate review will occur—now (when definitive guidance from the Ninth Circuit could spare the Court and parties extensive efforts) or after final judgment (when the costs of those efforts are sunk). Resolving this important issue now, rather than later, will substantially advance the resolution of this litigation and save significant time, effort, and resources that would otherwise be needlessly expended should the Ninth Circuit reverse the Court's Order after trial. Accordingly, Meta respectfully asks this Court to certify its Order for interlocutory appeal under 28 U.S.C. § 1292(b).

## BACKGROUND

In August 2021, Plaintiffs Christopher Calise and Anastasia Groschen sued Meta, claiming they were defrauded by third-party advertisers on Facebook. Dkt. 1. Plaintiffs asserted five causes of action: negligence, breach of contract, breach of the covenant of good faith and fair dealing, violation of the Unfair Competition Law, and unjust enrichment. *Id.*

In April 2022, this Court granted Meta's motion to dismiss, ruling that "Meta is entitled to CDA immunity as to each of Plaintiffs' claims." Dkt. 42 at 6. The Ninth Circuit affirmed in substantial part, holding that Section 230 barred Plaintiffs' claims for negligence, violation of the Unfair Competition Law, and unjust enrichment. *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 744 (9th Cir. 2024). But the Ninth Circuit vacated this Court's dismissal of the contract-based claims, ruling that those claims did not seek to treat Meta as the "publisher" of third-party ads. *Id.* at 743. At the same time, the court "recognize[d] that whether Meta's TOS create an enforceable contract . . . is not a question the district court reached." *Id.* at 743 n.5. The court therefore remanded on the ground that "the interpretation of a contract are questions better suited for the district court in the first instance." *Id.* at 743 n.5.

2

Gibson, Dunn &
Crutcher LLP

On December 20, 2024, Plaintiffs filed an Amended Complaint. Dkt. 56. Although the underlying factual allegations were unchanged, the Amended Complaint added two new Plaintiffs and a new cause of action for "negligent failure to warn." *Id.*

Meta renewed its motion to dismiss. The Court granted that motion in part—dismissing the "negligent failure to warn" claim but declining to dismiss Plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing. Dkt. 62. The Court acknowledged that "[t]he TOS open[s] with the following: 'These Terms govern **your use** of Facebook, Messenger, and the other products, features, apps, services, technologies, and software we offer . . . except where we expressly state that separate terms (and not these) apply.'" *Id.* at 4 (quoting Dkt. 56-2 at 2) (emphasis added). It also acknowledged that at least three cases in the Northern District of California have "h[e]ld that the TOS do not create obligations for Meta." *Id.* at 5 (citing *Long v. Dorset*, 369 F. Supp. 3d 939, 948 (N.D. Cal. 2019); *King v. Facebook, Inc.*, No. 19-cv-01987-WHO, 2019 WL 6493968, at *2 (N.D. Cal. Dec. 3, 2019); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016)). But the Court determined that those cases were unpersuasive because, in this Court's view, those decisions misread another case (*Young*) that "did not hold that the TOS do not create obligations for Meta" but rather "held that the provisions identified by the plaintiff [in that case] apply only to users, including agreements 'not to engage in bullying, intimidating, or harassing other users.'" *Id.* (quoting *Young v. Facebook, Inc.*, No. 5:10-cv-03579-JF/PVT, 2010 WL 4269304, at *3 (N.D. Cal. Oct. 25, 2010)). By contrast, the Court determined that "[t]he specific provisions which Plaintiffs claim Meta violated [here] are unambiguous and well-defined promises from Meta to users." *Id.* at 6. These include (1) Section 1 of the TOS, which states that "[i]f we learn of content or conduct [that is harmful toward others], we will take appropriate action—for example, offering help, removing content, removing or restricting access to certain features, disabling an account, or contacting law enforcement" (Dkt. 56-1 at 2), and (2) Section 5 of the Community Standards, which states that "[i]n an effort to prevent fraudulent activity that can harm people or businesses, we remove content that purposefully deceives, willfully misrepresents or otherwise defrauds or exploits others for money or property" (Dkt. 56-5 at 1).

DEFENDANT'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL
CASE NO. 4:21-CV-06186-JSW

Gibson, Dunn & Crutcher LLP

The Court acknowledged that the Limitation of Liability Clause disclaims responsibility for third-party content: "Our products, however, are provided 'as is,' and we make no guarantees that they always will be safe, secure, or error-free, or that they will function without disruptions, delays, or imperfections . . . .  We do not control or direct what people and others do or say, and we are not responsible for their actions or conduct (whether online or offline) or any content they share (including offensive, inappropriate, obscene, unlawful, and other objectionable content)."  Dkt. 62 at 6 (quoting Dkt. 56-1 at 8).  But the Court found this "clause to be unconscionable."  *Id.* at 8.  Although it "recognize[d] that another court in this district has reached the opposite conclusion," the Court found that case "distinguishable" because the plaintiffs there "proceeded on a theory of negligent conduct," whereas "[t]here is a greater degree of substantive unconscionability where the clause excludes liability for intentional conduct."  *Id.* at 9 (citing *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037–38 (N.D. Cal. June 21, 2019).

## ARGUMENT

A district court may certify an order for interlocutory review under 28 U.S.C. § 1292(b) if (1) there is "a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *see Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 687–88 (9th Cir. 2011).  This Court's Order satisfies all three criteria:  (1) the question presented is a controlling, purely legal question that will not require any factual inquiry; (2) reasonable jurists might—and, in fact, *have*—differed on the proper resolution of the question; and (3) an interlocutory appeal could lead to the dismissal of this action.

**I.    The Order Implicates a Controlling Question of Law Regarding the Interpretation of the TOS and Community Standards.**

The question presented here satisfies Section 1292(b) because it is a "controlling question of law."  A question of law is "a purely legal one that can be resolved quickly without delving into a particular case's facts."  *Elorreaga v. Rockwell Automation, Inc.*, 21-CV-05696-HSG, 2023 WL 4116623, at *1 (N.D. Cal. June 16, 2023).  Such questions are "controlling" when "resolution of the

issue on appeal could materially affect the outcome of litigation in the district court." *Id.* (citing *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981)).

Whether the TOS and Community Standards impose an affirmative obligation on Meta to combat scam advertisements involves a pure question of law. "Under California law, the interpretation of contract language is a question of law." *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925–26 (9th Cir. 2003); *see also Canyon Vineyard Ests. I, LLC v. DeJoria*, 78 Cal. App. 5th 995, 1003 (2022) ("Contract interpretation is a question of law."). The same is true of the Court's determination that the Limitation of Liability Clause is unconscionable. *See* Cal. Civ. Code § 1670.5(a) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract[.]"); *Lange v. Monster Energy Co.*, 46 Cal. App. 5th 436, 445 (2020) ("Unconscionability is ultimately a question of law[.]").

Further, the resolution of this question by the Ninth Circuit "could materially affect the outcome of the litigation" by determining whether Plaintiffs can proceed to trial on their claims. If that court decides that the TOS and Community Standards do not impose the asserted obligations on Meta, then Plaintiffs' claim for breach of contract would be dismissed, and this ruling would also undermine the related claim for breach of the covenant of good faith and fair dealing. *See Damner v. Facebook Inc.*, No. 20-cv-05177-JCS, 2020 WL 7862706, at *7 (N.D. Cal. Dec. 31, 2020) ("[A] claim for breach of the covenant of good faith cannot impose substantive duties not found in the underlying contract."). A complete dismissal is more than sufficient to satisfy the first prong of the Section 1292(b) standard. *See, e.g.*, *Omni MedSci, Inc. v. Apple Inc.*, No. 19-cv-05924-YGR, 2020 WL 759514, at *1 (N.D. Cal. Feb. 14, 2020) ("[I]f the appellant's success on appeal would result in dismissal of the case, as is the case here, the appeal involves a 'controlling question of law.'"); *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2021 WL 6621068, at *3 (N.D. Cal. Dec. 16, 2021) (finding a controlling question of law where its resolution "could materially affect the viability of Plaintiff's claim").

## II.    There Is Substantial Ground for Difference of Opinion.

Whether Facebook's TOS and Community Standards impose on Meta a legally enforceable obligation to combat purported scam advertisements is also a question on which "substantial ground

Gibson, Dunn &
Crutcher LLP

for difference of opinion" exists. 28 U.S.C. § 1292(b). As the Ninth Circuit has held, the "substantial ground" standard does not set a high bar—the matter need only be "uncertain[]" and one "over which reasonable judges might differ." *Reese*, 643 F.3d at 688 (quotation marks omitted). Even "questions of first impression" can qualify if "reasonable jurists might disagree" on the answer. *Id.* (quotation marks omitted); *see also, e.g.*, *Ottesen v. Hi-Tech Pharms., Inc.*, No. 19-CV-07271-JST, 2024 WL 589089, at *3 (N.D. Cal. Feb. 13, 2024) (certifying interlocutory appeal where "no federal court ha[d] directly confronted this issue"); *Best Carpet Values, Inc. v. Google LLC*, No. 5:20-cv-04700-EJD, 2022 WL 22843012, at *3 (N.D. Cal. May 2, 2022) (certifying interlocutory appeal on "novel" question that "no court ha[d] considered"). When "reasonable jurists *might* disagree on an issue's resolution," a "substantial ground for difference of opinion exists" even if other cases do not "directly conflict[] with the district court's construction of the law." *Reese*, 643 F.3d at 688 (emphasis added); *see also ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130–31 (9th Cir. 2022) (holding that a "district court need not 'await[] development of contradictory precedent'" to rule that there are substantial grounds for difference of opinion).

*Legal obligations*. The Court's decision acknowledges that reasonable jurists can disagree—and have disagreed—on whether the TOS and Community Standards impose the asserted obligations on Meta. "One of the best indications that there are substantial grounds for disagreement on a question of law is that other courts have, in fact, disagreed." *Rollins v. Dignity Health*, No. 13-cv-01450-TEH, 2014 WL 6693891, at *3 (N.D. Cal. Nov. 26, 2014); *see also Allen v. ConAgra Foods, Inc.*, No. 3:13-cv-01279-WHO, 2019 WL 1466889, at *3 (N.D. Cal. Feb. 6, 2019) (concluding "there is substantial ground for a difference of opinion" in light of another "ruling from this district" reaching a contrary result on "similar" facts).

The divergence of opinion on Facebook's TOS and Community Standards confirms that, at a minimum, there are substantial grounds for a difference of opinion:

- In *Long v. Dorset*, 369 F. Supp. 3d 939 (N.D. Cal. 2019), the plaintiff alleged that Meta "failed to comply with certain obligations created by the ToS, including its promise to 'employ dedicated teams . . . and develop technical systems to detect misuse of their

6

Gibson, Dunn &
Crutcher LLP

products, harmful conduct towards others, and situations where [Facebook] may be able to support [its] community.'"  *Id.* at 948 (alterations in original).  But Judge Hamilton dismissed that claim, reasoning that, "while Facebook's ToS 'place[s] restrictions on users' behavior,' it 'do[es] not create affirmative obligations.'"  *Id.* (alterations in original).  She further reasoned that the Limitation of Liability Clause "disclaimed the type of harm plaintiff alleges here" by stating that the "service [is] provided 'as is,'" with "'no guarantees' about 'secur[ity]'" and Meta "'not responsible for [third-party] actions.'"  *Id.* at 949 (some alterations added).

- In *King v. Facebook, Inc.*, No. 19-cv-01987-WHO, 2019 WL 6493968 (N.D. Cal. Dec. 3, 2019), the plaintiff alleged that Facebook breached its contract with him when it allegedly blocked his content in retaliation for suing Facebook.  *Id.* at *1.  Judge Orrick dismissed the claim.  As he explained, insofar as "the contractual basis for King's breach claim is the Terms of Use (Terms) which Facebook requires users to agree to, the claim lacks merit" because "while Facebook's Terms 'place restrictions on users' behavior,' they 'do not create affirmative obligations' on Facebook."  *Id.* at *2.

- In *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056 (N.D. Cal. 2016), the plaintiff alleged that Facebook breached the TOS and Community Standards by failing to remove sexually explicit material that was posted to the website by an anonymous user.  *Id.* at 1060–62.  Judge Davila dismissed the claim, because "Plaintiff use[d] the Terms of Service to . . . define Facebook's . . . obligations for breach of contract," but "while Facebook's Terms of Service 'place restrictions on users' behavior,' they 'do not create affirmative obligations.'"  *Id.* at 1064.

To be sure, each of these cases cited Judge Fogel's decision in *Young*, which this Court determined to be distinguishable insofar as it involved different provisions of the TOS that directed users "'not to engage in bullying, intimidating, or harassing other users.'"  Dkt. 62 at 5 (quoting *Young*, 2010 WL 4269304, at *3).  But *Young* also relied on the then-current version of the Limitation of Liability Clause to confirm its reading of the TOS:

DEFENDANT'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL
CASE NO. 4:21-CV-06186-JSW

[W]hile these provisions place restrictions on users' behavior, they do not create affirmative obligations. Indeed, the [TOS] includes an express disclaimer: "WE DO NOT GUARANTEE THAT FACEBOOK WILL BE SAFE OR SECURE. FACEBOOK IS NOT RESPONSIBLE FOR THE ACTIONS, CONTENT, INFORMATION, OR DATA OF THIRD PARTIES."

2010 WL 4269304, at *3.

It is at least reasonable to read the Limitation of Liability Clause as disclaiming *any* promise to protect users from harm caused by third-party conduct. In fact, that is exactly what Judge Spero did in dismissing a claim that Facebook breached the TOS by "fail[ing] to safeguard [the plaintiff's] sensitive personal information as promised." *Damner*, 2020 WL 7862706, at *7. Judge Spero cited language that was very similar to the language in *Young*, explaining that the TOS "state[s] that Facebook is being provided 'AS IS,' that Facebook does not 'GUARANTEE THAT FACEBOOK WILL ALWAYS BE SAFE, SECURE OR ERROR-FREE OR THAT FACEBOOK WILL ALWAYS FUNCTION WITHOUT DISRUPTIONS, DELAYS OR IMPERFECTIONS,' and that Facebook is not responsible for the actions of third parties." *Id.* at *7. "In other words, the [TOS] makes clear that Facebook did *not* promise to safeguard Plaintiff's private information." *Id.* (emphasis in original).

Judge Gilliam reached the same conclusion in a decision issued just last month, rejecting a breach-of-contract claim based on a third-party hack of the plaintiff's Facebook page on the ground that the Limitation of Liability Clause "explicitly (1) disclaim[s] any guarantee that Facebook will be safe, secure, or error-free, or operate without disruptions; and (2) disclaim[s] liability for third-party acts or conduct." *Young v. Meta Platforms, Inc.*, No. 24-cv-03583-HSG, 2025 WL 2930979, at *3 (N.D. Cal. Oct. 15, 2025). And in *Klayman v. Zuckerberg*, 753 F.3d 1354 (D.C. Cir. 2014), the D.C. Circuit rejected the plaintiff's attempt to evade Section 230 by recharacterizing his claim that Facebook failed to remove a page inciting violence against Jews as a "breach of [Facebook's] duties arising from . . . their contractual relationship and contractual obligations" because the Limitation of Liability Clause contains an "express warning that 'FACEBOOK IS NOT RESPONSIBLE FOR THE ACTIONS, CONTENT, INFORMATION, OR DATA OF THIRD PARTIES,'" thereby "disavow[ing] the legal relationship that [the plaintiff] asserts." *Id.* at 1356–59.

Gibson, Dunn & Crutcher LLP

In short, these cases confirm that courts can readily differ—and have differed—on whether Facebook's TOS and Community Standards impose on Meta an affirmative obligation to combat supposed "scam" advertisements on Facebook.

***Unconscionability***.  As this Court expressly recognized, reasonable jurists have also disagreed on whether the Limitation of Liability Clause is unconscionable, noting that "another court in this district has reached the opposite conclusion" on this matter.  Dkt. 62 at 9 (citing *Bass*, 394 F. Supp. 3d at 1037–38).  In *Bass*, Judge Alsup concluded that the "disclaimer" did not evince procedural unconscionability: "[T]he procedure followed by Facebook was fair.  The clause was not buried.  The clause was plainly above board and contained clear enough language.  True, it is an adhesion contract, but there is no 'rule that an adhesion contract is per se unconscionable.'"  *Bass*, 394 F. Supp. 3d at 1038.

Reasonable jurists have also differed on the scope of the claimed substantive unconscionability.  For example, in *May v. Google LLC*, No. 24-cv-01314-BLF, 2024 WL 4681604 (N.D. Cal. Nov. 4, 2024), Judge Freeman held that a provision that "disclaim[s] Google's liability against third-party misconduct" was not substantively unconscionable because, among other things, "the contract at issue involves access to a 'nonessential recreational activity' . . . and thus, the contract is not substantively unconscionable because 'the consumer always has the option of simply forgoing the activity.'"  *Id.* at *7.  And in *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12 (2021), the California Court of Appeal rejected the argument that "Twitter's liability waiver provision . . . [is] unconscionable," observing that courts have "recognized service providers that offer free services to Internet users may have a legitimate commercial need to limit their liability and have rejected claims that such limitations are so one-sided as to be substantively unconscionable."  *Id.* at 36 (collecting cases).

Because reasonable jurists have differed on the purported unconscionability of the Limitation of Liability Clause, certification is proper.

### III.   Interlocutory Review Will Materially Advance This Litigation.

The final prong under Section 1292(b) requires that an appeal "may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  This prong is closely "linked to," and

9

Gibson, Dunn & Crutcher LLP

"overlap[s] significantly with," whether an issue of law is "controlling." *Mauia v. Petrochem Insulation, Inc.*, No. 18-cv-01815-TSH, 2020 WL 1031911, at *4 (N.D. Cal. Mar. 3, 2020) (citation omitted); *Rollins v. Dignity Health*, No. 13-cv-01450-TEH, 2014 WL 6693891, at *4 (N.D. Cal. Nov. 26, 2014). Thus, when analyzing this factor, courts "consider the effect of a reversal by the Ninth Circuit on the management of the case." *Elorreaga*, 2023 WL 4116623, at *2. "The ultimate question is whether permitting an interlocutory appeal would minimize the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings." *Roth v. Foris Ventures, LLC*, No. 21-cv-4288-YGR, 2022 WL 21777087, at *2 (N.D. Cal. Aug. 19, 2022). This prong is satisfied if "the resolution of the question may appreciably shorten the time, effort, or expense of conducting the district court proceedings." *Biederman v. FCA US LLC*, No. 23-cv-06640-JSC, 2025 WL 1266907, at *5 (N.D. Cal. May 1, 2025) (cleaned up).

Here, a determination of the legal question regarding the TOS and Community Standards in Meta's favor would "require dismissal of the entire case." *Mehedi v. View, Inc.*, No. 21-cv-06374-BLF, 2024 WL 3748012, at *2 (N.D. Cal. Aug. 8, 2024); *see also Roth*, 2022 WL 21777087, at *2 (finding this prong satisfied where the appeal "would resolve this entire case"). It would thus save the parties—and the Court—from the significant burden of discovery and a potential trial on the remaining issues, which alone warrants certification. *See* 16 Wright & Miller, *Federal Practice & Procedure* § 3930 (3d ed. June 2024 update) (certification appropriate for questions "that offe[r] an opportunity to terminate the litigation completely, and that may spare the parties the burden of a trial").

But even a contrary ruling would still warrant an interlocutory appeal, because "neither § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese*, 643 F.3d at 688. Any decision still would materially advance the ultimate termination of this litigation by resolving an important threshold legal question. In other words, even if the Ninth Circuit were to affirm the Order, that result still "would add significant certainty to the litigation." *Roth*, 2022 WL 21777087, at *2. Any final appellate ruling on these core legal issues would allow the parties to be more informed in assessing their prospects of ultimately prevailing, which could facilitate settlement discussions and

Gibson, Dunn & Crutcher LLP

10

DEFENDANT'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL
CASE NO. 4:21-CV-06186-JSW

thereby "accelerat[e] resolution" of the case. *Id.*; *see also SEC v. Mercury Interactive, LLC*, No. 5:07-cv-02822-JF, 2011 WL 1335733, at *3 (N.D. Cal. Apr. 7, 2011) (finding this prong satisfied where appellate resolution "would have a significant effect on the trial of this action, and perhaps upon the parties' efforts to reach settlement"). It may also facilitate the resolution of other cases involving alleged breaches of the TOS and Community Standards—as well as similar terms issued by other companies, which courts have found not to impose affirmative obligations based on the same authorities discussed above. *See, e.g.*, *Aellis O. v. Connor*, No. 22-cv-200-JLS-WVG, 2022 WL 2229421, at *7 (S.D. Cal. June 21, 2022) ("Even if Plaintiff had identified a specific provision of the Terms of Service that Google allegedly breached, however, the Court would still find that Plaintiff failed to state a claim for breach of contract against Google. Other courts examining websites' terms of service have found that, 'while these provisions place restrictions on users' behavior, they do not create affirmative obligations.'" (quoting *Young*, 2010 WL 4269304, at *3)). Thus, whether the Ninth Circuit reverses or affirms this Court's Order, an interlocutory appeal will provide crucial clarity on Plaintiffs' claims and facilitate their resolution.

Securing appellate clarity sooner rather than later is thus in the interest of all concerned. And it is far superior to the alternative—deferring appeal of this central issue until after final judgment, which could render years of work by the Court and parties wasted. *See Gillespie v. Centerra Servs. Int'l, Inc.*, No. 21-cv-2028-JGB-SHKx, 2022 WL 18584762, at *3 (C.D. Cal. Oct. 26, 2022) ("Peraton's success on appeal would materially advance the litigation by . . . avoid[ing] 'protracted and expensive litigation' at least as to those claims [at issue in the appeal]" (cleaned up)). In the long run, certifying an appeal now could "materially speed[]," not "delay," the end of this litigation. *Chen v. Allstate Ins. Co.*, No. 13-cv-0685-PJH, 2013 WL 3973798, at *2–3 (N.D. Cal. July 31, 2013). The third prong is therefore satisfied.

## CONCLUSION

Meta respectfully requests that the Court certify the Order for interlocutory appeal under 28 U.S.C. § 1292(b).

DATED:  November 10, 2025

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Christopher Chorba*
     Christopher Chorba

*Attorneys for Defendant Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

DEFENDANT'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL
CASE NO. 4:21-CV-06186-JSW

Gibson, Dunn &
Crutcher LLP