Adam M. Apton (State Bar No. 316506)
**LEVI & KORSINSKY LLP**
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: 415-373-1671
Facsimile: 212-363-7171
Email: aapton@zlk.com

Mark S. Reich (admitted *pro hac vice*)
Christopher V. DeVivo (admitted *pro hac vice*)
**LEVI & KORSINSKY, LLP**
33 Whitehall, 17th Floor
New York, NY 10004
Telephone: 212-363-7500
Facsimile: 212-363-7171
Email: mreich@zlk.com
Email: cdevivo@zlk.com

*Attorneys for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER CALISE and ANASTASIA GROSCHEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 4:21-cv-06186-JSW<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**<br><br>Date:    February 6, 2026<br>Time:    9:00 AM PT<br>Place:    Courtroom 5 – 2nd Floor<br>Judge:   Hon. Jeffrey S. White |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND.................................................................................................3

ARGUMENT..........................................................................................................................4

    I.     Contract Interpretation Is Not the Type of Exceptional Controlling Question of Law Suitable for Interlocutory Appeal in the Ninth Circuit ................5

    II.    There Are No Substantial Grounds for a Difference of Opinion Concerning Whether the Appropriate Action and Removal Provisions Constitute Enforceable Promises by Meta to Users...................................................8

    III.    Interlocutory Review Will Not Materially Advance The Litigation Because Even if the Contract Claim is Dismissed, the Covenant Claim Will Survive .......................................................................................................11

    IV.    The District Court, Despite Finding All Three Prongs of a 1292(b) Analysis is Satisfied, May Still in its Discretion Deny Certification ...................14

CONCLUSION.....................................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

*Cases*

*Ahrenholz v. Bd. of Trustees*,
219 F.3d 674, 677 (7th Cir. 2000) ...................................................................... 5, 6

*AIG Ret. Servs., Inc. v. Altus Fin. S.A.*,
2011 WL 13345536 (C.D. Cal. Sept. 28, 2011) .................................................. 11

*Atel Financial Corp. v. Quaker Coal Co.*,
321 F.3d 924 (9th Cir. 2003) ............................................................................... 7

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) .............................................................. 11

*Brecher v. Citigroup Glob. Markets, Inc.*,
2012 WL 12953433 (S.D. Cal. Mar. 6, 2012) .................................................... 14

*Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd.*,
663 F. App'x 567 (9th Cir. 2016)......................................................................... 5

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) ....................................................... 2, 3, 7, 10, 12

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016) ............................................................... 9

*Chamberlain v. Crown Asset Mgmt.*,
622 F. Supp. 3d 1068 (D. Utah 2022)................................................................. 5

*Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc.*,
2010 WL 952273 (D. Or. Mar. 10, 2010).......................................................... 6

*City of Glendale v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
2013 WL 12250532 (D. Ariz. June 5, 2013) ................................................. 7, 14

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) ......................................................................... 4, 11

*Cuadras v. MetroPCS Wireless, Inc.*,
2011 WL 11084069 (C.D. Cal. Oct. 11, 2011)................................................... 8

*Damner v. Facebook Inc.*,
2020 WL 7862706 (N.D. Cal. Dec. 31, 2020)................................................... 10

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO
CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

*Doe v. Meta Platforms, Inc.*,
    690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........................................................................... 10, 13

*Doe v. Meta Platforms, Inc.*,
    2024 WL 4375776 (N.D. Cal. 2024) ..................................................................................... 14

*Elorreaga v. Rockwell Automation, Inc.*,
    2023 WL 4116623 (N.D. Cal. June 16, 2023) ......................................................................... 5

*First Am. Title Ins. Co. v. GS Indus., LLC*,
    2022 WL 356515 (D. Haw. Feb. 7, 2022) ............................................................................... 6

*Flores v. Nat'l Football League*,
    2024 WL 50238 (S.D.N.Y. Jan. 4, 2024) ................................................................................ 7

*Gillespie v. Centerra Services International, Inc.*,
    2022 WL 18584762 (C.D. Cal. , Oct. 26, 2022) .................................................................... 13

*Hanni v. Am. Airlines, Inc.*,
    2008 WL 5000237 (N.D. Cal. Nov. 21, 2008) ...................................................................... 13

*Happy Puppy LA, Inc. v. Bank of Am., N.A.*,
    2023 WL 6787778 (C.D. Cal. Sept. 27, 2023) ........................................................................ 6

*Hunt v. Bloom Energy Corp.*,
    2022 WL 1122835 (N.D. Cal. Apr. 14, 2022) ..................................................................... 4, 13

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
    22 F.4th 1125 (9th Cir. 2022) ............................................................................................... 4, 5

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................................................... 13

*In re Mayer*,
    2020 WL 6708060 (S.D. Cal. Nov. 16, 2020) .......................................................................... 4

*Katz v. Avanir Pharmaceuticals*,
    2006 WL 8455483 (S.D.Cal., 2006) ....................................................................................... 14

*King v. Facebook, Inc.*,
    No. 19-cv-01987-WHO, 2019 WL 6493968 (N.D. Cal. Dec. 3, 2019) ..................................... 9

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) ............................................................................................... 10

*Long v. Dorset*,
    369 F. Supp. 3d 939 (N.D. Cal. 2019) ...................................................................................... 9

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO
CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

*Margulies v. Tri-Cnty. Metropolitan Transportation District of Oregon*,
     2014 WL 12918939 (D. Or. , March 13, 2014) .................................................................. 14

*Medlock v. Taco Bell Corp.*,
     2014 WL 6389382 (E.D. Cal. Nov. 14, 2014) .................................................................. 13

*Mehedi v. View, Inc.*,
     2024 WL 3748012 (N.D. Cal. , Aug. 8, 2024) .................................................................. 13

*Realtek Semiconductor Corp. v. LSI Corp.*,
     2013 WL 3568314 (N.D. Cal. July 12, 2013)................................................................... 13

*Reese v. BP Expl. (Alaska) Inc.*,
     643 F.3d 681 (9th Cir. 2011) .......................................................................................... 13

*Roth v. Foris Ventures, LLC*,
     2022 WL 21777087 (N.D. Cal. , Aug. 19, 2022) ............................................................. 13

*San Bernardino Cnty. v. Ins. Co. of State of Pennsylvania*,
     2023 WL 4681621 (C.D. Cal. July 12, 2023).................................................................... 8

*Sateriale v. RJ Reynolds Tobacco Co.*,
     2015 WL 3767424 (C.D. Cal. 2015)................................................................. 4, 5, 6, 8, 11

*Sempra v. Associated Electric and Gas Insurance Services Limited*,
     2025 WL 3022287 (C.D. Cal. , Oct. 1, 2025)..................................................................... 6

*Surf City Steel, Inc. v. Int'l Longshore & Warehouse Union*,
     No. CV1405604BROSSX, 2016 WL 10637079, at *8 (C.D. Cal. Dec. 28,
     2016) ................................................................................................................................ 11

*Tarpon Bay Partners LLC v. Zerez Holdings Corp.*,
     2019 WL 10984250 (D. Conn. Oct. 29, 2019) ................................................................... 7

*Theodore v. Am. Express Nat'l Bank*,
     2025 WL 1294648 (N.D. Cal. May 5, 2025)..................................................................... 12

*U.S. Rubber Co. v. Wright*,
     359 F.2d 784 (9th Cir. 1966) ............................................................................................. 7

*Young v. Facebook, Inc.*,
     No. 5:10-cv-03579-JF/PVT, 2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ...................... 9

*Young v. Meta Platforms, Inc.*,
     2025 WL 2930979 (N.D. Cal. Oct. 15, 2025).................................................................... 10

iv

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO
CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

*State Constitutional Provisions*

Cal. Article III s ................................................................................................................. 13

*Statutes*

28 U.S.C. § 1292(b) ............................................................................................................ 1

v

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### <u>INTRODUCTION</u>

Meta's motion ("Motion") (Dkt. 71) seeks to certify the Court's order denying Meta's motion to dismiss ("MTD Order") for interlocutory appeal under 28 U.S.C. § 1292(b) ("Section 1292(b)") with respect to the following two questions: (i) whether the Terms of Service ("TOS") and Community Standards ("COS") "impose an affirmative obligation on Meta to combat purported scam advertisements," and (ii) whether the Limitation of Liability Clause is unconscionable (together, the "Questions"). Motion at 5.

Under Section 1292(b), a district court may certify an order for interlocutory appeal where there is (1) a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. Certification under § 1292(b) requires the district court to expressly find in writing that *all three* § 1292(b) requirements are met. In other words, the failure to satisfy any one requirement is fatal to the Motion.

Courts construe the statute narrowly and apply it sparingly, reserving its use for truly exceptional cases. Here, given its heavy burden to demonstrate exceptional circumstances, Meta cannot satisfy any of Section 1292(b)'s three prongs. Indeed, as discussed below, Meta's arguments on the first and second prongs are irreconcilable, and thus Meta cannot satisfy all three prongs.

*As to the first prong*, this Court held that the "provisions which Plaintiffs claim Meta violated are unambiguous and well-defined promises from Meta to users." MTD Order at 6. Since Meta contends (when arguing the second prong) that there is a divergence of judicial opinion concerning the meaning of the TOS and COS (Motion at 6-7), and "[i]t is *at least reasonable* to read the Limitation of Liability Clause as disclaiming *any* promise to protect users from harm caused by third-party conduct" (Motion at 8), Meta raises a question of fact under California law (which holds that if a contractual provision is reasonably susceptible to different interpretations, resolution of the conflict is a question of fact, not law).

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

Further, even assuming arguendo that Meta raises questions of law, to qualify for interlocutory review, the question must present an abstract legal issue that an appellate court could decide quickly without delving into the particular facts of the case. Courts therefore consistently hold that contract interpretation is not the type of question contemplated by § 1292(b), because it requires close analysis of the contract's language, and often relevant, surrounding facts. That is precisely the situation here: determining whether the TOS and COS impose a legally enforceable duty on Meta to combat scam advertisements, or whether the Limitation of Liability clause is unconscionable, would require the Ninth Circuit to carefully parse the provisions of the TOS and COS, and consider relevant factual context (as the Court previously did; MTD Order at 8). Such contract-interpretation disputes are not "exceptional" within the meaning of § 1292(b).

*As to the second prong*, Meta cannot show that a substantial ground for difference of opinion exists on the Questions. The Court did not suggest that "reasonable jurists can disagree" about whether the TOS and COS impose contractual obligations on Meta; rather, it expressly stated that it was "not persuaded that *Long*, *Caraccioli*, or *King* categorically determined that the TOS include no promises by Meta." MTD Order at 5. As the Court explained, those cases simply followed *Young* without analysis, even though *Young* addressed a provision applicable only to users — not Meta. *Id.* Moreover, the additional authorities that Meta cites do not address the specific TOS and COS provisions alleged to have been breached here.

*As to the third prong*, certification would not materially advance the litigation. This Court has already recognized that the Ninth Circuit has signaled its view that the relevant contractual provisions "manifest[ ] [Meta's] intent to be legally obligated to 'take appropriate action' to combat scam advertisements." MTD Order at 6 (citing *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 743 (9th Cir. 2024)). Interlocutory review is therefore unlikely to alter the outcome and would waste judicial resources. Meta's argument also rests on the incorrect assumption that a ruling against Plaintiffs on its Questions would dispose of the entire case. Even if — contrary to its prior indication — the Ninth Circuit were to find the provisions unenforceable, that would not eliminate Plaintiffs' claim for breach of the covenant of good faith and fair dealing ("Covenant Claim"),

which this Court has held is not duplicative of the breach of contract claim ("Contract Claim"). MTD Order at 10. Because dismissal of the Contract Claim would not resolve the Covenant Claim, Meta has not shown that interlocutory appeal would reduce the burdens of litigation for either the parties or the Court.

## FACTUAL BACKGROUND

Meta has long solicited, assisted, and facilitated scammers who seek to exploit Meta's trove of personal data to target Facebook users with deceptive ads. ¶¶ 37-41, 43-44. Plaintiffs were among those victimized by such scammers. ¶¶ 73-76, 84-91, 95-99, 102-11. Meta has little incentive to crack down on scammers because deceptive ads have generated and continue to generate tens of billions of dollars in revenue for Meta. ¶¶ 66, 72. Indeed, the profits from deceptive ads led Meta to instruct its ad enforcement workers to "ignore hacked accounts and other violations as long as Facebook gets paid," and "look the other way" when detecting deceptive China-based ads because Meta "want[s] China revenue." ¶ 57. Meta's sales teams have also actively courted known scammers. ¶¶ 43-44.

Based on the misconduct described above, Plaintiffs filed their original complaint on August 11, 2021. Dkt. 1. Meta moved to dismiss on October 8, 2021. Dkt. 20. On May 18, 2022, the District Court dismissed the action, holding all claims were barred under Section 230 of the Communications Decency Act ("Section 230") and entered judgment. Dkts. 42, 44. Plaintiffs appealed. Dkt. 45.

On June 7, 2024, the Ninth Circuit affirmed in part and reversed in part, holding that Section 230 did not bar Plaintiffs' Contract Claim or Covenant Claim because Meta had "manifested its intent to be legally obligated to 'take appropriate action' to combat scam advertisements." *Calise,* 103 F.4th at 743.

On December 20, 2024, Plaintiffs filed their FAC. Dkt 56. The FAC alleges that Meta's misconduct gives rise to the Contract Claim and the Covenant Claim. ¶¶ 129-136. 137-143. With respect to the Contract Claim, Meta promises in the TOS that when it "detect[s] misuse of [its] Products, harmful conduct towards others, and situations where [it] may be able to help support or

protect [its] community," it "**_will_** take appropriate action*,*" including removing content, restricting access, disabling accounts, or contacting law enforcement. ¶32 ("Appropriate Action Provision"). In the COS, Meta promises that it **_will_** remove content that deceives, defrauds, or exploits others for money or property. ¶34 ("Removal Provision").

On February 18, 2025, Meta moved to dismiss the FAC. Dkt. 57. In denying Meta's motion to dismiss the Contract Claim, the Court held that the Appropriate Action and Removal Provisions are "unambiguous and well-defined promises from Meta to users." MTD Order at 6. The Court also held that the disclaimer in the Limitation of Liability Clause does not apply to the Contract Claim because "while Facebook disclaims responsibility for third-party conduct, it maintains responsibility for its own promise to 'take appropriate action' to combat scam advertisements and to do so in good faith." *Id.* at 7. The Court further ruled that the Limitation of Liability Clause is unconscionable under the "sliding scale" test. *Id.* at 8-9.

## ARGUMENT

Under Section 1292(b), a district court may certify an order for interlocutory appeal where there is (1) a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. "Certification under § 1292(b) requires the district court to expressly find in writing that *all three § 1292(b) requirements are met*." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

Interlocutory appeal is a "departure from the basic policy of postponing appellate review until after the entry of a final judgment." *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022). The statute should be "construed narrowly" (*Hunt v. Bloom Energy Corp.*, 2022 WL 1122835, at *2 (N.D. Cal. Apr. 14, 2022)), and "applied sparingly and only in exceptional cases." *In re Mayer*, 2020 WL 6708060, at *3 (S.D. Cal. Nov. 16, 2020). The burden is on the party seeking certification to show that exceptional circumstances exist. *Sateriale v. RJ Reynolds Tobacco Co.*, 2015 WL 3767424, at *2 (C.D. Cal. 2015). Here, given the heavy burden to demonstrate exceptional circumstances, Meta cannot satisfy any of the three

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

prongs in Section 1292(b).

## I. Contract Interpretation Is Not the Type of Exceptional Controlling Question of Law Suitable for Interlocutory Appeal in the Ninth Circuit

"A controlling question of law must be one of law — not fact — and its resolution must 'materially affect the outcome of litigation in the district court.'" *ICTSI Or.,* 22 F.4th at 1130. Here, in the MTD Order, this Court held that the Appropriate Action and Removal Provisions that Plaintiffs claim Meta violated "are unambiguous and well-defined promises from Meta to users." MTD Order at 6. Meta contends that there is a divergence of judicial opinion concerning the meaning of the TOS and COS (Motion at 6-7), and "[i]t is *at least reasonable* to read the Limitation of Liability Clause as disclaiming *any* promise to protect users from harm caused by third-party conduct." Motion at 8 (emphasis in original). But Meta's position that the provisions of the TOS and COS are susceptible to multiple interpretations necessarily concedes that interpretation of the TOS and COS is a question of fact, not law. *See Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd.,* 663 F. App'x 567, 568 (9th Cir. 2016) (under California law, if a contractual provision is reasonably susceptible to different interpretations, resolution of the conflict is a question of fact).

But even assuming arguendo that Meta is correct that the Questions it poses are "questions of law" (Motion at 5), that is only the beginning of the analysis, since not every question of law is suitable for interlocutory appeal. Questions of law certified for interlocutory appeal should present "abstract issue[s] of law" that an appellate court can resolve quickly without reviewing the factual record. *Ahrenholz v. Bd. of Trustees*, 219 F.3d 674, 677 (7th Cir. 2000); *accord Sateriale*, 2015 WL 3767424, at *3. Meta's own authority (Motion at 4) agrees: a question "that can be resolved quickly *without delving into a particular case's facts*." *Elorreaga v. Rockwell Automation, Inc.*, 2023 WL 4116623, at *1 (N.D. Cal. June 16, 2023) (granting motion to certify under Section 1292(b) where the "purely legal issue presented here regarding the extent to which the government contractor defense is applicable to federal [maritime] claims *will not require any factual inquiry*."); *see also Chamberlain v. Crown Asset Mgmt.*, 622 F.Supp.3d 1068, 1072 (D. Utah 2022) ("Does it offend the Petition Clause of the United States Constitution to punish an unregistered debt collector

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

in Utah for criminally violating Utah law by filing a debt-collection lawsuit? This is a sufficiently abstract question of constitutional law.").

Based on the principles above, and given that Section 1292(b) must be "construed narrowly" and "applied sparingly," courts in this and other Circuits have long held that contract interpretation is not the type of "question of law" that "the framers of section 1292(b) had in mind" for interlocutory review because deciding a question of contract interpretation requires immersion in the language of the contract (*Ahrenholz*, 219 F.3d at 676-77), and consideration of the facts of the case. *First Am. Title Ins. Co. v. GS Indus., LLC*, 2022 WL 356515, at *1-2 (D. Haw. Feb. 7, 2022) (denying motion to certify court's order for interlocutory appeal where question concerning whether the term "access" in the insurance policy included vehicular access was not a "pure" question of law since it involved consideration of facts of case); *Sempra v. Associated Electric and Gas Insurance Services Limited*, 2025 WL 3022287, at *6 (C.D. Cal., Oct. 1, 2025) (finding the proposed issue "is not a controlling question of law" when it "in essence seeks to have the appellate court reinterpret the [p]olicy language construed by the [c]ourt and then determine whether the facts of this case fit within that interpretation"); *Happy Puppy LA, Inc. v. Bank of Am., N.A.*, 2023 WL 6787778, at *2 (C.D. Cal. Sept. 27, 2023) (finding no controlling question of law "where… Plaintiffs seek to certify features facts from the underlying case because it quotes the language from the Promissory Notes," and "what Plaintiffs are asking the Ninth Circuit to do on appeal is reinterpret the contractual language that this Court already parsed using traditional principles of interpretation."); *Sateriale*, 2015 WL 3767424, at *3 ("vehement disagreement with the Court's construction of the terms of its offer is not the sort of abstract legal issue that merits invocation of the narrow exception to the final judgment rule embodied in § 1292(b)."); *Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc.*, 2010 WL 952273, at *4 (D. Or. Mar. 10, 2010) ("interpretation of the [p]rovider [a]greement at issue here is not a pure question of law, and, therefore, interlocutory appeal is inappropriate.").

Moreover, even apart from not presenting suitable questions of law for interlocutory appeal, contract-interpretation disputes are not considered "exceptional" in the Ninth Circuit. *See*

6

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

*City of Glendale v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 2013 WL 12250532, at *4 (D. Ariz. June 5, 2013) (ordinary contract disputes fall outside § 1292(b)'s limited application to "exceptional cases," such as antitrust or protracted litigation) (*citing U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966)). Indeed, the Ninth Circuit in this case recognized that "the existence of a contract and the interpretation of a contract are questions better suited for [ ] [this Court]." *Calise,* 103 F.4th at 743 n.5.

Here, Meta's Questions—whether (i) the TOS and COS impose an affirmative obligation on Meta to combat scam advertisements, and (ii) the Limitation of Liability Clause is unconscionable (Motion at 5)—demonstrate that this case is fundamentally a contract interpretation dispute. Such disputes are not "exceptional" under Ninth Circuit standards. Nor do Meta's Questions pose "pure" and "abstract" questions of law, because resolving them would require the Ninth Circuit to engage directly with the relevant provisions of the TOS and COS, and consider whether those provisions constitute enforceable promises by Meta to combat scam advertisements. *See Calise*, 103 F.4th at 743 (Meta became "bound by a contractual duty" to the extent it "manifested its intent [by a contract] to be legally obligated to 'take appropriate action' to combat scam advertisements.").[1]

Meta's attempt to characterize the unconscionability of the Limitation of Liability Clause as a pure question of law is particularly unavailing, as the determination of unconscionability is a mixed question of fact and law and is unsuitable for interlocutory appeal. *See Flores v. Nat'l Football League*, 2024 WL 50238, at *3 (S.D.N.Y. Jan. 4, 2024) ("Far from raising a pure question of law, the Unconscionability Issue would require the Second Circuit to pore over the factual circumstances surrounding distinct arbitration agreements. Such mixed factual and legal analysis is not suitable for interlocutory appeal."); *Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, 2019 WL 10984250, at *2 (D. Conn. Oct. 29, 2019) ("my [r]uling with respect to the [p]romissory [n]ote's unconscionability does not involve a controlling question of law. Rather, my [r]uling

---

[1] *Atel Financial Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925 (9th Cir. 2003) is distinguishable because it did not involve a request for interlocutory appeal under § 1292(b), and therefore does not opine on what constitutes a controlling question of law pursuant to 1292(b).

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO
CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

involved the application of undisputed facts in this case to the well-settled Connecticut law of unconscionability."); *Cuadras v. MetroPCS Wireless, Inc.*, 2011 WL 11084069, at *1, *4 (C.D. Cal. Oct. 11, 2011) (procedural and substantive unconscionability of contractual terms were not pure questions of law for purposes of interlocutory appeal because "plaintiff's dispute is with how the law is applied to *these* facts.") (emphasis in original).

The Court's analysis plainly shows that the unconscionability of the Limitation of Liability Clause is a mixed question of fact and law: the Court first defined procedural and substantive unconscionability under applicable law, and then applied those legal principles to the relevant contractual provisions while also considering pertinent facts concerning Meta and Facebook users. MTD Order at 8-9.

Ultimately, Meta simply disagrees with the Court's ruling that the Appropriate Action and Removal Provisions constitute enforceable promises. But "vehement disagreement with the Court's construction of [contractual] terms…is not the sort of 'abstract legal issue' that merits invocation of the narrow exception to the final judgment rule embodied in §1292(b)." *Sateriale*, 2015 WL 3767424, at *3; *see also San Bernardino Cnty. v. Ins. Co. of State of Pennsylvania*, 2023 WL 4681621, at *3 (C.D. Cal. July 12, 2023) ("The [c]ounty crafts the question under the guise of a pure legal question whether the [c]ourt applied the correct principles of contract interpretation but the County is simply taking issue with the [c]ourt's ruling.").[2]

**II.     There Are No Substantial Grounds for a Difference of Opinion Concerning Whether the Appropriate Action and Removal Provisions Constitute Enforceable Promises by Meta to Users**

Meta's argument as to the *second prong* misstates the MTD Order: this Court did *not* acknowledge that "reasonable jurists can disagree" concerning whether the TOS and COS impose contractual obligations on Meta. Motion at 6. To the contrary, the Court stated that it was "*not* persuaded that *Long*, *Caraccioli*, or *King* categorically determined that the TOS include no promises by Meta." MTD Order at 5. As the Court explained: (i) *Long* cited *Caraccioli* "without

---

[2] To the extent courts hold that the qualifier "controlling" in Section 1292(b) requires a question of law whose resolution "could materially affect the outcome of litigation in the district court" (*Sateriale*, 2015 WL 3767424, at *2), that consideration overlaps with the third prong (*id.* at *4), and is addressed in Point III below.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

discussion" for the proposition that the TOS do not create obligations for Meta, (ii) *Caraccioli* "in turn relies *without discussion* on *Young*," (iii) "*King*, too, cites *Caraccioli* and *Young without analysis*," and (iv) "*Young*, however, did not hold that the TOS do not create obligations for Meta," but instead "held that the provisions identified by the plaintiff *apply only to users*, including agreements "not to engage in bullying, intimidating, or harassing other users." *Id.* Meta concedes as much. Motion at 7 ("To be sure, each of these cases cited…*Young.*").

Thus, as opposed to four separate jurists independently reaching a different conclusion than the Court concerning Meta's contractual obligations, there are three decisions (*Long*, *Caraccioli¸* and *King*) that—without analysis or discussion—blindly follow an earlier decision (*Young*) that addresses a provision that clearly applies only to users, not Meta. MTD Order at 5. Therefore, *Long*, *Caraccioli*, *King,* and *Young* do not establish "substantial grounds for a difference of opinion" within the meaning of Section 1292(b) concerning whether the TOS and COS impose contractual duties on Meta.[3]

Meta also argues that *Young* relied on the then-current version of the Limitation of Liability Clause to confirm that the TOS does not create affirmative obligations. Motion at 7. But the language from *Young* quoted by Meta refers to "provisions" that "place restrictions on *users'* behaviors" (*id.* at 8), and thus applies only to users, not Meta. In contrast, as the Court held, the Appropriate Action and Removal Provisions constitute enforceable promises by Meta. MTD Order at 6 ("The specific provisions which Plaintiffs claim Meta violated are unambiguous and well-defined promises from Meta to users."). Thus, the Appropriate Action and Removal Provisions are not disclaimed by the Limitation of Liability Clause. *Id.* at 7 ("the relevant alleged promises are separate from Meta's cautionary language [in the Limitation of Liability Clause] that it does not control third-party actions on its platform. Put simply, while Facebook disclaims responsibility [in the Limitation of Liability Clause] for third-party conduct, it maintains responsibility for its own promise to 'take appropriate action' to combat scam advertisements and to do so in good faith.").

---

[3] Referring to *Long v. Dorset*, 369 F.Supp.3d 939 (N.D. Cal. 2019), *King v. Facebook, Inc.*, No. 19-cv-01987-WHO, 2019 WL 6493968 (N.D. Cal. Dec. 3, 2019), *Caraccioli v. Facebook, Inc.*, 167 F.Supp.3d 1056 (N.D. Cal. 2016), and *Young v. Facebook, Inc.*, No. 5:10-cv-03579-JF/PVT, 2010 WL 4269304 (N.D. Cal. Oct. 25, 2010).

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

Meta's remaining authorities on this point fail to establish "substantial grounds for a difference of opinion" regarding whether the Limitation of Liability Clause disclaims any promise by Meta to protect users from harm, because none of them construe the specific provisions the Court found enforceable here. *See Young v. Meta Platforms, Inc.*, 2025 WL 2930979, at *2 (N.D. Cal. Oct. 15, 2025) (alleging breach of provisions purportedly creating a duty to provide a safe and secure environment); *Damner v. Facebook Inc.*, 2020 WL 7862706, at *7 (N.D. Cal. Dec. 31, 2020) ("Plaintiff fails to state a viable claim for breach of contract, however, *because he does not point to any specific provision that was breached*," and "quotes incomplete phrases from Sections 3 and 15 of the SRR in support of his breach of contract claim but those sections do not, when read in their entirety, constitute promises to safeguard Plaintiff's private information."); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014) (plaintiff "points to a section of Facebook's Statement of Rights and Responsibilities, which says: 'We do our best to keep Facebook safe,' but omits the end of that sentence, which reads 'but we cannot guarantee it,' and also overlooks the Statement's express warning that 'FACEBOOK IS NOT RESPONSIBLE FOR THE ACTIONS, CONTENT, INFORMATION, OR DATA OF THIRD PARTIES.' *The plain text of the Statement thus disavows the legal relationship that Klayman asserts*.").[4]

In sum, no decision disagrees with the Court's ruling in the MTD Order that the Appropriate Action and Removal Provisions constitute enforceable promises by Meta not disclaimed by the Limitation of Liability Clause. Moreover, as the Court noted, the Ninth Circuit has already signaled that these provisions create enforceable obligations. *See Calise*, 103 F.4th at 736 (TOS promises to "combat harmful conduct," including removing content that deceives or defrauds); *id.* at 743 & n.5 (suggesting the Appropriate Action Provision may create a contractual duty separate from Meta's publisher status). Likewise, another court in this District recognized the Appropriate Action Provision as creating an enforceable promise. *See Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1085–86 (N.D. Cal. 2023) (quoting "if we learn of content or conduct like

---

[4] *Klayman* is particularly far afield: there, the plaintiff "include[d] no breach of contract claim . . . anywhere in the complaint," and thus forfeited the theory entirely. 753 F.3d at 1360.

10

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

this, we will take appropriate action"). In short, there is a consensus concerning the meaning of the provisions at issue here, not a disagreement, which rebuts Meta's position. The fact that Meta disagrees does not establish a "substantial ground for difference of opinion." *See AIG Ret. Servs., Inc. v. Altus Fin. S.A.*, 2011 WL 13345536, at *2 (C.D. Cal. Sept. 28, 2011) (strong disagreement with the court's contract interpretation does not meet § 1292(b)'s statutory standard).[5]

Lastly, with respect to Meta's arguments on unconscionability, the existence of a single district court opinion — *Bass v. Facebook, Inc.*, 394 F.Supp.3d 1024, 1037–38 (N.D. Cal. 2019) — taking a different view of Meta's Limitation of Liability Clause does not create a "substantial ground for difference of opinion." *See Couch*, 611 F.3d at 633 ("just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal"); *see also Surf City Steel, Inc. v. Int'l Longshore & Warehouse Union,* No. CV1405604BROSSX, 2016 WL 10637079, at *8 (C.D. Cal. Dec. 28, 2016) (two district courts reaching different conclusions does not alone establish substantial ground). Moreover, as the Court explained, *Bass* is distinguishable for multiple reasons. *MTD Order* at 9; *see also Doe*, 690 F. Supp. 3d at 1085.[6]

### III.   Interlocutory Review Will Not Materially Advance The Litigation Because Even if the Contract Claim is Dismissed, the Covenant Claim Will Survive

The key consideration with respect to the third prong "is whether permitting an interlocutory appeal would minimize the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings." *Sateriale*, 2015 WL

---

[5] As the Court noted, the *Long* case interpreted Meta's promise to "take appropriate action"—i.e., the Appropriate Action Provision—as imposing a duty upon Meta "to act within a reasonable time," but "then contradicted [itself] in the next paragraph by [its] reliance, *without discussion*, on *Caraccioli* to hold that the TOS do not create obligations for Meta." MTD Order at 5 (citing *Long*, 369 F. Supp. 3d at 948-49). Due to its inconsistent reasoning, *Long* is not a viable basis upon which to establish a "substantial grounds for a difference of opinion" concerning the scope of Meta's contractual duties. Moreover, it is a single case. *See Couch*, *Doe* and *Surf City* cited *infra.*

[6] Meta also cites cases addressing the unconscionability of clauses in contracts used by Google and Twitter. Motion at 9. While the Court acknowledged that such cases are analogous, MTD Order at 9 (citing a case finding Twitter's limitation-of-liability clause unconscionable), the Ninth Circuit's instruction to construe § 1292(b) narrowly and apply it sparingly means these cases do not meet the high bar to establish a "substantial ground for difference of opinion" regarding Meta's Limitation of Liability Clause. Unique aspects of the Facebook platform further distinguish these cases. *See* Motion at 8; *Doe v. Meta Platforms, Inc.,* 2024 WL 4375776, at *2 (N.D. Cal. 2024 (Google and Facebook may not be similarly situated).

11

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

3767424, at *4. However, certification under § 1292(b) also requires the district court to expressly find in writing that all three statutory requirements are satisfied. *Theodore v. Am. Express Nat'l Bank*, 2025 WL 1294648, at *2 (N.D. Cal. May 5, 2025) (holding the absence of any one requirement precludes interlocutory appeal). Because Defendant cannot satisfy the other two prerequisites, whether resolution of Plaintiffs' breach of contract claim would materially affect the litigation is irrelevant.

But even apart from the deficiencies under the first two prongs, certifying the questions posed by Meta for interlocutory appeal does not constitute a meaningful advancement of the litigation. As this Court recognized (MTD Order at 6), the Ninth Circuit has already signaled that the Appropriate Action and Removal Provisions constitute enforceable promises. *See Calise*, 103 F.4th at 736 (TOS "*promises* to '[c]ombat harmful conduct' [including] removing any 'content that purposefully deceives, willfully misrepresents or otherwise defrauds or exploits others for money or property.'"); at 743 & n.5 (suggesting without deciding that the Appropriate Action Provision created an enforceable promise: "To the extent that Meta manifested its intent to be legally obligated to "take appropriate action" to combat scam advertisements, it became bound by a contractual duty separate from its status as a publisher."). Given this clear Ninth Circuit guidance, interlocutory review is unlikely to alter the course of proceedings.

Moreover, Meta's argument on the third prong rests on the premise that a resolution of the proposed questions adverse to Plaintiffs would resolve the entire case. Motion at 10. Meta is mistaken. Even in the unlikely event that the Ninth Circuit were to change its view and hold that the Appropriate Action and Removal Provisions are not enforceable promises, the Covenant Claim would remain. That is because the Court has already held that the Covenant Claim is not duplicative of the Contract Claim. MTD Order at 10. As the Court explained, "Meta may have breached the covenant even if it complied with its promise to 'take appropriate action' if its actions were taken with bad faith and intentionally." *Id.* at 10-11. In other words, survival of the Covenant Claim is not dependent on survival of the Contract Claim since the Covenant Claim is tied to intentional frustration of the purpose of provisions of the TOS and COS, not an actual breach of

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

those provisions. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 802 (N.D. Cal. 2019) (even if Meta did not violate literal terms of contract, Meta's frustration of contract's purpose stated covenant claim); *see also Doe*, 690 F.Supp.3d at 1086 n.10 (covenant claim not duplicative because it is based on allegations that Meta abused its power). Moreover, the scope of factual discovery in this case will not be altered by interlocutory review since evidence relating to Meta's knowledge of scam advertising, its enforcement efforts, its revenue-driven incentives, and its handling of scam reports remains relevant to the Covenant Claim. Accordingly, an interlocutory appeal would not meaningfully reduce the burden or cost of discovery.

Because dismissal of the Contract Claim would not resolve the Covenant Claim, Meta has not shown that interlocutory appeal would minimize the total burdens of litigation on the parties and the judicial system under the third prong. *See Bloom*, 2022 WL 1122835, at *2-4 (where plaintiffs sought interlocutory appeal of only certain claims, an appeal would not materially advance the ultimate termination of the litigation); *Medlock v. Taco Bell Corp.*, 2014 WL 6389382, at *2 (E.D. Cal. Nov. 14, 2014) (same); *Hanni v. Am. Airlines, Inc.,* 2008 WL 5000237, at *7 (N.D. Cal. Nov. 21, 2008) (same).[7]

In addition, a reversal of the Court's ruling on unconscionability would only cap recoverable damages at $100, rather than prevent Plaintiffs' claim from proceeding at all. Motion at 7. Discovery would still be required, and Meta would still face some liability. *See Realtek Semiconductor Corp. v. LSI Corp.*, 2013 WL 3568314, at *3 (N.D. Cal. July 12, 2013) ("The *possibility* of avoiding some liability does not comport with the purpose of [Section 1292(b)].") (emphasis in original). Thus, even a complete victory for Meta on its Questions would not

---

[7] In contrast, cases cited by Meta involved pure questions of law that would resolve the entire case. *See, e.g.*, *Mehedi v. View, Inc.*, 2024 WL 3748012, at *2 (N.D. Cal., Aug. 8, 2024) ("Article III standing issue could resolve the entire case"); *Roth v. Foris Ventures, LLC*, 2022 WL 21777087, at *2 (N.D. Cal., Aug. 19, 2022) ("determinations would resolve this entire case"); *Gillespie v. Centerra Services International, Inc.*, 2022 WL 18584762, at *2 (C.D. Cal., Oct. 26, 2022) ("Should the Ninth Circuit determine that Fort Irwin is a federal enclave, Plaintiff's FAC would be dismissed"). In *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681 (9th Cir. 2011), the question certified did not concern interpretation of the terms of the relevant contract but rather the pure legal question of whether *any* contract to which a defendant is a party, filed in conjunction with SEC reporting requirements and promising specific conduct by the defendant, can be used as the foundation for a securities fraud action by a nonparty to the contract. *Id.* at 687.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

eliminate the need for substantial merits discovery, expert analysis, class briefing, and trial preparation.

### IV.     The District Court, Despite Finding All Three Prongs of a 1292(b) Analysis is Satisfied, May Still in its Discretion Deny Certification

Even assuming Meta can meet all three requirements in Section 1292(b), the Court still has discretion to deny the Motion. *See Doe v. Meta Platforms, Inc.*, 2024 WL 4375776, at *1 (N.D. Cal. 2024) ("Even where the party seeking to certify an issue for interlocutory review meets its burden to show that each of the three requirements are satisfied, "a district court's decision to grant or deny certification is entirely discretionary."); *Margulies v. Tri-Cnty. Metropolitan Transportation District of Oregon*, 2014 WL 12918939, at *2 (D. Or., March 13, 2014) ("even when a party has shown that all three certification requirements are satisfied, a district court may exercise its discretion to deny certification"); *see also Glendale*, 2013 WL 12250532, at *4 (exercising discretion to deny request for interlocutory appeal in "ordinary contract dispute"). This discretionary authority rests on the same principles that underlie the final judgment rule, especially where the proposed issues turn on specific facts, would not resolve the case, and would not simplify the proceedings. *See Katz v. Avanir Pharmaceuticals*, 2006 WL 8455483, at *2 (S.D.Cal., 2006) (holding certification pursuant to Section 1292(b) is a rare exception to the final judgment rule that generally prohibits piecemeal appeals).

Moreover, Meta waited nearly 50 days to file its Motion after this Court issued the September 22, 2025 Order. While § 1292(b) imposes no explicit limitations period, courts need not entertain delayed requests. *See Brecher v. Citigroup Glob. Markets, Inc.*, 2012 WL 12953433, at *6 (S.D. Cal. Mar. 6, 2012) (denying certification where defendant waited 77 days before filing its request). The delay underscores that Meta did not consider immediate appellate review essential to the efficient progression of the litigation.

**CONCLUSION**

Meta must satisfy all three statutory requirements under Section 1292(b) to obtain interlocutory review, yet as demonstrated above, it satisfies none of them. In light of the Ninth Circuit's instruction that Section 1292(b) be construed narrowly and applied sparingly—and given the absence of any "exceptional circumstances"—the Court should decline to exercise its discretion to grant the Motion.

DATED: December 9, 2025

**LEVI & KORSINSKY LLP**

By: */s/ Mark S. Reich*
Mark S. Reich (admitted *pro hac vice*)
Christopher V. DeVivo (admitted *pro hac vice*)
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: 212-363-7500
Facsimile: 212-363-7171
Email: mreich@zlk.com
Email: cdevivo@zlk.com

Adam M. Apton (State Bar No. 316506)
**LEVI & KORSINSKY LLP**
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Telephone: (415) 373-1671
Facsimile: (415) 484-1294
Email: aapton@zlk.com

*Attorneys for Plaintiffs and the Proposed Classes*

Joshua E. Fruchter (admitted pro hac vice)
**WOHL & FRUCHTER LLP**
25 Robert Pitt Drive, Suite 209G
Monsey, NY 10952
Telephone: (845) 290-6818
Facsimile: (718) 504-3773
Email: jfruchter@wohlfruchter.com

*Additional Counsel for Plaintiffs*

15

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)